James E. Magleby (7247)
  magleby@mcg.law
Christine Greenwood (8187)
  greenwood@mcg.law
Adam Alba (13128)
  alba@mcg.law
**MAGLEBY CATAXINOS & GREENWOOD, PC**
170 South Main Street, Suite 1100
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000
Facsimile:  801.359.9011

Attorneys for Plaintiff Purple Innovation, LLC

---

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PURPLE INNOVATION, LLC,** | **CONSOLIDATED FIRST AMENDED COMPLAINT** |
| **Plaintiff,** | |
| | **AND** |
| **v.** | |
| | **DEMAND FOR JURY TRIAL** |
| **RESPONSIVE SURFACE TECHNOLOGY, LLC, PATIENTECH, LLC, and ROBERT GOLDEN,** | |
| **Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs,** | |
| **v.** | |
| **PURPLE INNOVATION, LLC, GARY DICAMILLO, ADAM GRAY, JOSEPH MEGIBOW, TERRY PEARCE, TONY PEARCE, and JOHN DOE NOS. 1-4,** | **REDACTED** |
| | **Civil No.: 2:20-cv-708** |
| **Counterclaim Defendant and Third-Party Defendants.** | **Honorable Robert J. Shelby** |

In accordance with the Court's Memorandum Decision and Order Granting

Motion to Consolidate, which consolidated into this case a later-filed action styled

*Responsive Surface Technology, LLC v. Purple Innovation, LLC, et al.*, Case No 2:20-

cv-00727-CBB-CMR, Plaintiff Purple Innovation, LLC ("Plaintiff" or "Purple") through

counsel MAGLEBY CATAXINOS & GREENWOOD, PC, submits this Consolidated First

Amended Complaint and Demand for Jury Trial, and alleges and complains against

Responsive Surface Technology, LLC ("ReST"), PatienTech, LLC ("PatienTech"), and

Robert Golden ("Golden") (collectively, "Defendants") as follows:

### INTRODUCTION

1. This case involves 

2. Starting in late 2019,



3.

4.    After the parties

5.    Purple has registered trademarks on its name, "Purple," and the stylized mark Purple, for use with mattresses and related products.  Purple has common law trademark rights in and a pending trademark registration for the mark "Purple Grid™." Purple has patents on its Purple Grid™.

6.    Purple's intellectual property rights also include the trade dress related to its products, include (i) the use of the color purple in conjunction with mattresses, pillows, and seat cushions; (ii) images of the Purple Grid™ material; and (iii) the

appearance, shape, texture, and design of its purple-colored Purple Grid™.

7.      Almost as soon as ████████████████████████

████████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

8.      ████████████████████████████████████

████████████████████████████████████████

████

9.      In November 2020, and despite receiving only 202 Purple Grid™ units, Defendants increased ReST's marketing activities and infringement of Purple's intellectual property rights, including by heavily promoting the "ReST Bed with Purple Grid" (sometimes also the "Purple Grid™ ReST Bed") through a "Black Friday" sale.

10.     The marketing by ReST of the Purple Grid™ ReST Bed was and is a violation of Purple's intellectual property rights, including trademark infringement, trade dress infringement, and patent infringement.

11.     Among other things, ReST has been using Purple's trademarks and trade dress, and its display of Purple's patented products, to generate attention and drive internet traffic to ReST's website.  ReST has done so even though it has accepted more than 202 orders for products with the Purple Grid™, and has thus been deceiving

consumers by selling them products that it cannot deliver (the "Overselling").  In addition to trademark, trade dress, and patent infringement, Defendants' Overselling constitutes (among other additional claims) false advertising and unfair competition.

12. Due to the Overselling, Defendants ReST and PatienTech have not been able to fulfill orders placed by customers.  Rather than truthfully informing consumers that it does not have enough Purple Grid™ to fulfill their orders, Defendants have made false statements to consumers about the reasons for its inability to deliver the Purple Grid™ Rest Bed products, failed to disclose to consumers its Overselling conduct, and falsely claimed that the reason for the delay is the fault of Purple, including by telling a group of consumers that the delay was "because of the issues Purple was having in producing their Grids."

13. On December 11, 2020, the Court issued a Temporary Restraining Order ("TRO") directing that Defendants cease using Purple's intellectual property, including its trademarks.

14. Defendants have failed to comply with the TRO and are therefore in contempt.  Rather than comply with the letter or the spirit of the TRO, Defendants have removed the word "Purple" from its website, but they have continued to use Purple's trade dress, including the exact same images of Purple's patented Purple Grid™ that were used before the TRO.  In addition, Defendants continue to use Purple's trademarks through Google search, and continue the Overselling conduct.

**THE PARTIES**

15. Purple is a Delaware limited liability company with its principal place of

business in Lehi, Utah.

16.     Purple's members are Purple Innovation, Inc., a publicly traded Delaware Corporation with its principal place of business in Utah County, Utah, and a number of individuals, all of whom are citizens of Utah.

17.     Defendant PatienTech is a Delaware limited liability company with its principal place of business in Morning View, Kentucky.

18.     PatienTech's members are (1) Elements of Rest, Inc., a Georgia corporation with its principal place of business in Roswell, Georgia; (2) Takano Co., Ltd., a corporation headquartered in Japan; (3) Rebel Forces, LLC, a limited liability company located in Massachusetts; (4) MV-PT Investors LLC, a Delaware limited liability company with its principal place of business in New York; and (5) and individual citizens of Kentucky, New York, Florida, and Canada.

19.     Defendant ReST is a Delaware limited liability company with its principal place of business in Georgia.

20.     ReST's members are PatienTech and a company known as Hilding Anders US Corp. ("Hilding Anders").  Upon information and belief, Hilding Anders is a Delaware corporation headquartered in Sweden.

21.     Upon information and belief, Defendant Golden is a resident and citizen of Kentucky.

**JURISDICTION AND VENUE**

22.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a) because Defendants and their members are citizens of different states than Plaintiff,

and the amount in controversy exceeds $75,000, excluding interest and costs.

23.    This Court has original jurisdiction over the Lanham Act claims herein under 15 U.S.C. § 1125(a).

24.    This Court has original jurisdiction over the patent, trademark, and unfair competition claims herein under 28 U.S.C. § 1338.

25.    This Court has supplemental jurisdiction over the state law claims herein under 28 U.S.C. § 1367.

26.    This Court has personal jurisdiction over Defendants because they are engaged in regular and substantial business in the State of Utah and the District of Utah.  In addition, Defendant ReST has voluntarily submitted to the Court's jurisdiction by filing a separate lawsuit against Purple and certain individuals in this Court.

27.    This Court also has personal jurisdiction over Defendants under Utah Code Ann. § 78B-3-205(1)-(3) because Defendants have transacted business in Utah, have contracted to supply services or goods in Utah, and have caused tortious injury within the State of Utah.

28.    This Court also has personal jurisdiction over Defendants under ███ ████████████████████████████████████████████████████████ ████████████████████████████

29.    Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to one or more of the claims at issue occurred within this district and Defendants are subject to personal jurisdiction in this Court.

## GENERAL ALLEGATIONS

### The Parties

30.     Purple is a highly successful company headquartered in Utah, with over 1,475 employees.

31.     Purple is focused on developing and bringing to market innovative and technologically advanced comfort products, including mattresses, pillows, cushions, sheets, and related products.  Purple is well known for its products, including the original Purple® Mattress, and for its Hyper-Elastic Polymer® grid, also known as the "Purple Grid™," a gel-based cushion with thousands of air channels that provides a cool and comfortable surface for sleeping or sitting.

32.     ReST and PatienTech manufacture and sell a product sometimes known as the "ReST Bed™" which incorporates what is known as "smart bed" technology.  The technology utilized in connection with the ReST Bed™ includes components referred to as the "pump," "sensor," "bladder," and the "ReST Bed App."  Defendants advertise the bed as "The World's First Smart Bed."

33.     Golden is the founder and Chief Executive Officer of Defendants ReST and PatienTech.

34.     Golden is involved in and directs the day-to-day decisions and management of ReST and PatienTech.

35.     Golden has a direct or indirect financial interest in ReST and PatienTech.

36.     Golden is responsible for the marketing by Defendants ReST and PatienTech, is actively involved in these Defendants' business activities, has the right

and ability to supervise these Defendants' business activities, has personally participated in and directed these Defendants' infringing activity, has authorized and approved these Defendants' infringing activity, and continues to allow and direct these Defendants' infringing activity, despite knowledge of Purple's trademarks, trade dress and patent rights.

### Purple's Trademarks

37.     Purple owns U.S. Trademark Reg.  No.5,659,565 and U.S. Trademark Reg. No. 5,6598,66 (the "Registrations"), for the use of the stylized mark PURPLE and the standard character mark PURPLE in conjunction with goods and services related to mattresses.

38.     Since the date of issuance of the Registrations, the Purple marks have been continuously used in interstate commerce, and notice has been given to the public that the marks are registered trademarks by affixing notice provided in 15 U.S.C. § 1111.

39.     Purple also has common law trademark rights, including for the mark "Purple Grid™", which refers to the distinctive Hyper-Elastic Polymer® grid developed by Purple (and upon which Purple has multiple patents, as described below).

40.     A trademark application is pending for the mark "Purple Grid™."

41.     The Purple marks are inherently distinctive when used in connection with Purple's goods and services.

42.     Due to the continual use of the marks by Purple, the marks have come to indicate a single source of Purple's goods and services.

**Purple's Patents**

43.     United States Patent No. 7,964,664 (the "'664 Patent"), entitled "Gel with Wide Distribution of MW in Mid-Block," was duly and legally issued by the United States Patent and Trademark Office on June 21, 2011.  Purple is the owner of the '664 Patent. A true and correct copy of the '664 Patent is attached hereto and incorporated herein by reference as Exhibit 1.

44.     United States Patent No. 8,919,750 (the "'750 Patent"), entitled "Cushioning Elements Comprising Buckling Walls and Methods of forming Such Cushioning Elements," was duly and legally issued by the United States Patent and Trademark Office on December 30, 2014.  Purple is the owner of the '750 Patent.  A true and correct copy of the '750 Patent is attached hereto and incorporated herein by reference as Exhibit 2.

**Purple's Trade Dress**

45.     Purple has more than one trade dress.  For purposes of this action, however, Purple brings claims related to (i) the use of the color purple in conjunction with mattresses; (ii) images of grid material for mattresses; and (iii) the appearance, shape, texture, and design of its purple-colored Purple Grid™ for mattresses (collectively, the "Purple trade dress" or "Purple's trade dress").

46.     As noted, Purple is well known for its original Purple® Mattress, and for its Hyper-Elastic Polymer® grid, also known as the Purple Grid™, a gel-based cushion with thousands of air channels that provides a cool and comfortable surface for sleeping or sitting.

47.     Purple has always used purple as the color for the Purple Grid™, and a purple color scheme for its advertising and marketing of its products in general.

48.     The Purple Grid™ has also always been prominently featured in Purple's marketing and advertising.

49.     Perhaps the best-known example of the role of the Purple Grid™ in Purple's marketing and advertising is found in what is sometimes termed the "Goldilocks video," a humorous video that can be found on YouTube and which helped propel Purple to its early success.  [https://www.youtube.com/watch?v=4BvwpjaGZCQ].

50.     Sometimes titled "How to Use a Raw Egg to Determine if Your Mattress is Awful," the Goldilocks video prominently features the Purple Grid™, which first appears at the ninth-second of the 3 minute, 58 second video.  The Purple Grid™ is shown in conjunction with what is sometimes known as the "egg test," as follows:



[https://www.youtube.com/watch?v=4BvwpjaGZCQ at 17].

51.    Purple's website "purple.com" has also consistently focused upon and displayed the Purple Grid™.

52.    The importance of the Purple Grid™ to Purple's market position is demonstrated by the slogans "No Other Mattress Can Compare" and "Nobody else has our Grid," contained in the main mattress page of Purple's website:



[https://purple.com/mattresses].

53.    Each of the mattresses currently sold on the website includes an image of the Purple Grid™, including the original Purple Mattress®, the Purple Hybrid, and the Purple Hybrid Premier:



[https://purple.com/mattresses/purple-bed].

54.    Similarly, the Purple Grid™ is prominently featured on the page for "Kid Mattresses":

## Only the Purple Grid™



**Eliminates Pressure**

The Grid is both soft and supportive and will give your kid the same No Pressure Support demonstrated in our egg drop video!



**Instantly Adapts**

No matter their sleep style, the Grid adapts and responds to their movement.



**Sleeps Cool**

Our temperature-neutral gel and 1,400+ air channels keep your kid comfortably cool all night long.

[https://purple.com/bedding/kids].

55.     The Purple Grid™ is also the subject of a video on purple.com, titled

"What is the Purple Grid?":



We developed our groundbreaking hyper-elastic gel over 30 years and we have over 30 patents behind it. Originally designed for use in hospitals and wheelchairs, we adapted this unique pressure-relieving material for our beds – we call it the Purple Grid.

The Grid solves the problems normal mattresses create that prevent great sleep. It's the only comfort innovation that is instantly soft where you want it, firm where you need it, and comfortably cool all night.

[https://purple.com/mattresses/purple-bed].

**The** ████████████████

56.     In late 2019, ████████████████████████

████████████████████████████████████

████████████████████████████████

57.     ████████████████████████████

████████████████████████████████████



58.

59.

60.

61.

62.

63.



64.

65.

66.





72.

73.

74.

75.

76.

77.

78.



79. ██████████████████████████████████████
████████████████████████████████████████
███████████████████

80. ██████████████████████████████
████████████████████████████████████
██████████████

81. ██████████████████████████████████████
██████████████████████████

82. ██████████████████████████████████████
██████████████████████████████████
██████████████████████████████████
████████████████████████████

83. ██████████████████████████████████████
██████████████████████████████████
████████████████████████████████████
██████████████████████████████████
███████████████████████████████████████
███████████████████████████████████████
██████████████████████████████████
████████████████████████████████████
████████████████

84. ██████████████████████████████████



85.

86.

87.

88.

89.

90.

91.



92.

93.

94.

95.

████████████████████████████████████████

**Defendants Falsely Claim a Verbal Agreement Regarding Purple's Toppers**

96.     On August 18, 2020, Golden again emailed Megibow, this time requesting that Purple continue to supply ReST with Purple's toppers for use with the Rest Bed™.

97.     ████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

████████████████████████████████████████

█████████████

98.     On August 19, 2020, Golden emailed Megibow once again, this time falsely asserting that Purple had orally committed to continue to supply the Purple Grid™ toppers and allow ReST to continue to use the Purple brand in the promotion of the ReST Bed.

99.     Defendants' claim that Purple agreed to sell additional Purple Grid™ toppers or to allow ReST to continue to use Purple's intellectual property is unequivocally false.

**Purple's August 24, 2020 Notice Letter**

100.    On August 24, 2020, ████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████



101. Purple also █████████████████████████████████

102. Purple indicated █████████████████████████████

103. Despite Defendants' █████████████████████████

104. For example, ReST heavily promoted the "ReST Bed™ with the Purple Grid" on its website restperformance.com, as shown in the following example captured in October 2020:



105.   As another example, the following is a screenshot from the main page of restperformance.com as of October 2020:



**Purple's Files its Complaint ("*Purple I*")**

106.    On October 13, 2020, Purple filed its first Complaint in this matter ("*Purple I*" or the "First Case").

107.    The Complaint brought claims for ████████████████████ ████████████████████████████████████████████ ████████████████.

108.    Because of the filing of the Complaint, and because Purple was aware that only 202 of the Purple Grid™ toppers had been delivered to ReST ████████████ ████████████████████████████████ ████████████████████████████████████ ████████████████.

**ReST Files a Separate Complaint Against Purple ("*Purple II*")**

109.   Defendants did not, however cease use and infringement of Purple's

intellectual property.

110.   Instead, a few days Purple filed the Complaint in this case, and even

though it was fully aware of *Purple I*, ReST filed a separate, retaliatory action ("*Purple II*"

or the "Second Case") against Purple and certain individuals it designated as "the

Board." [Complaint, *Purple II*, Case No. 2:20-cv-00727, Doc. 22].

111.   In *Purple II*, ReST confirmed in multiple places that it had more orders for

products with the Purple Grid™ than it had units to deliver; that is, ReST confirmed its

Overselling conduct.

112.   For example, ReST admitted as follows:

> 47.   ReST sold, sells, and has received orders for hundreds of
> the Purple-branded ReST Bed™ through direct online sales on ReST's
> website as well as in dozens of retail stores.

> 48.   ReST also arranged for the Purple-branded ReST Bed™ to
> be sold through a popular television shopping channel, where it was
> anticipated that the bed would sell 5,000 units per month for a total of $25
> million in sales through that shopping channel alone.

> 49.   The ReST and Purple partnership was announced through a
> number of media platforms throughout the months of July and August
> 2020, leading to greater demand for the product and a significant sales
> increase for ReST. . . .

[*Purple II* Complaint ¶¶ 47-49].

113.   ReST confirmed that as of October 2020, it did not have any more Purple

Grid™ units to sell:

> 55.   ReST's inability to purchase Purple Grids from Defendant
> Purple at the agreed upon prices and receive those Purple Grids in a
> timely manner has created a significant backlog of unfulfilled orders.

[*Purple II* Complaint ¶ 55 (emphasis added), Doc. 22].

114.   Similarly, ReST stated that:

67.   ReST is unable to construct the Purple-branded version of the ReST Bed™ without the Purple Grids, and therefore ReST is unable to fulfill orders for the Purple-branded version of the ReST Bed™.

. . .

96.   As a result of Defendant Purple's refusal to provide Purple Grids, ReST has been unable to fulfill customer orders and has been unable to fulfill its obligations to advertise and sell the Purple-branded version of the ReST Bed™.

[*Purple II* Complaint ¶¶ 67, 96].

**Defendants' Black Friday Advertising and Continuing Infringement,** ▮▮▮▮▮▮▮
▮▮▮▮▮ **and Other Violations of Purple's Intellectual Property Rights**

115.   Despite ReST's allegations in *Purple II*, establishing that ReST had more orders for Purple Grid™ units than inventory to fill the orders, Defendants embarked upon a new and aggressive marketing campaign to purportedly sell the Purple Grid™ Rest Bed – using Purple's intellectual property – as the holidays approached.

116.   For example, on Tuesday, November 17, 2020, ReST sent out an e-mail blast with a subject line of "Black Friday Sale!," which used Purple's trade dress and marketed among other things a product called the "ReST Original with Purple Smart Beds:"



[2020/11/17 Black Friday Sale E-mail Blast (highlighting added).

117.   After receiving the November 17, 2020 Black Friday Sale e-mail blast,

Purple investigated further and discovered Defendants have continued to heavily

market the Rest Bed™ with Purple Grid™ using Purple's name and intellectual

28

property, including images of Purple's patented products.

118.   For example, the ReST website marketed the "ReST Original Smart Bed with Purple," including as follows:



[2020/11/18 restperformance.com].

119.   Indeed, ReST continued to dedicate a large portion of its website to marketing the Rest Bed with the Purple Grid™, prominently displaying Purple's patented grid – and also acknowledging Purple's common law trademark rights to "Purple Grid™" by including the "™" symbol:



[2020/11/18 restperformance.com/purple-grid].

120.   ReST also purchased top-spot listings on Google:

Ad · www.restperformance.com/ ▼   (404) 671-9397

**ReST Bed™ - Now Made With Purple Grid**
Now featuring **Purple** Grid™ that allows for the most personalized sleep experience possible.
Senses pressure and automatically responds in real-time for five individual body zones.
**Black Friday:** Up to $1,000 off Your ReST Bed™ · Ends Nov 27

**Mattress Buying Guide**
The Do's & Don'ts of How to Choose
The Best Mattress for You

**Compare Mattresses**
Compare Top Mattress Brands &
Discover What's Right for You

**Customer Reviews**
Read what ReST Customers Say
About the ReST Performance Mattress

**Back and Neck Pain**
ReST Provides the Exact Support
You Want, Where you Want

[2020/11/18 Google search results].

121.   A Google search on a mobile device similarly revealed that ReST was marketing a "ReST Bed  - Now Made With Purple Grid":



[2020/11/18 Google search results].

122.    ReST's use of Purple's intellectual property has also allowed ReST and its

Purple-related marketing to appear prominently in organic search results.

**Defendants Refuse to Cease Use of Purple's Intellectual Property,** ████████
████████████████████████████████

123.    As noted, ████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████

124.    Independently, ████████████████████████████████

████████████████████████████████████████████████████

████████████████████

125.    In addition, on Wednesday, November 18, 2020, the day after discovering

ReST's Black Friday email blast featuring the "ReST Original with Purple Smart Bed,"

Purple sent a cease and desist letter demanding that ReST cease the use of Purple's name and trademarks.  Purple requested a response by Friday, November 20, 20202.

126.    On Friday, November 20, 2020, Defendants' counsel replied, stating that Defendants would not stop using Purple's name or trademarks.

127.



128.

> "<u>Upon termination or expiration</u> of this Agreement, <u>[ReST] shall immediately discontinue all use of Purple's intellectual property rights</u> except as may otherwise be agreed in writing by [ReST] and Purple."

[Ad Spend Agreement § 1.21 (emphasis added), Ex. 4 to Motion for TRO].

> "<u>Upon termination of this Agreement or upon the request of either party</u>, the other party will discontinue the use of the name 'Purple' or 'ReST' and thereafter will not use the other party's name or trademarks in any manner unless agreed in writing by the parties."

[Ad Spend Agreement § 1.23 (emphasis added), Ex. 4 to Motion for TRO].

**Defendants' False Statements**

129.    As noted, Defendants continued to market products using the Purple name, trademarks, patented design, and trade dress, even though doing so meant it was taking orders and money from customers for products that Defendants did not have to sell, i.e., Overselling.

130.    Defendants thus confused and deceived customers purchasing the Purple Grid™ Rest Bed into believing that Defendants did, in fact, have the capacity to fulfill the orders and deliver the products that the consumers had paid for.  But this was not Defendants' only deceptive conduct in conjunction with its misuse of Purple's intellectual property.

131.    In addition, Defendants made false and disparaging statements about Purple, telling customers who have placed orders for or expressed interest in purchasing the Rest Bed™ with Purple Grid™ that ReST would have product to ship in late December, and falsely blaming Purple for any delays in shipment.

132.    For example, in an email sent by ReST's customer service department to a purchaser of the Purple Grid™ Rest Bed, ReST stated as follows:

**ReST Bed Update**
1 message

Sarah Byrd <sarah.byrd@restperformance.com>                    Fri, Nov 20, 2020

Dear ReST Customer,

We wanted to follow up with you now that we have a better idea on when your bed will ship out. ==Your order was originally delayed because of the issues Purple was having in producing their Grids.== We have finally overcome these issues, and we now have a better idea on when your bed will ship out. As of now, ==your bed is expected to ship by the END OF DECEMBER.==

Since we have encountered a bit more of a delay than we expected, we are going to refund you $200 for being so patient with us. We feel confident that your bed won't encounter another delay.

Thank you for being a valued customer. We will be sending you an email confirmation when your bed ships with a tracking number. You don't need to do anything at this time. We just wanted to provide you with an update and refund of $200.

Have a great Thanksgiving,

The ReST Team

133.    Upon information and belief, ReST sent at least twenty-four (24) identical emails to customers, and made similar statements in response to other customer inquiries, such as through online chats or telephone conversations with its customer service department.

**The TRO Motion and TRO**

134.    On November 23, 2020, Purple filed a Motion for Temporary Restraining Order and Preliminary Injunction ("TRO Motion").

135.    The TRO Motion was briefed by the parties, and argued to the Court on Friday, December 11, 2020.

136.    On the evening of that same day, December 11, 2020, the Court issued a Temporary Restraining Order (the "TRO").  [TRO, ECF 63].

137.    Paragraph 8 of the TRO provides as follows:

8.      Therefore, under Rule 65 of the Federal Rules of Civil

34

Procedure and 15 U.S.C. § 1116(a), Plaintiff is entitled to a temporary restraining order and Defendants are ordered as follows:

     a.    Defendants are ordered to immediately discontinue all use of Purple's intellectual property rights including Purple's name, brand, and the Marks. Excepted from this order are necessary, neutral references to Purple's name and Marks made in customary and regular invoices or related communications with customers related to fulfilling existing orders.

     b.    Defendants are ordered immediately to cease marketing, promoting or advertising any product utilizing or integrating any Purple product, including but not limited to the Rest Bed™ incorporating the Purple Grid™. Any current marketing, promoting, or advertising utilizing Purple's intellectual property, including Purple's name, brand, and the Marks, including use on Defendants' website and Google ads, must be withdrawn, removed, or corrected by no later than Monday, December 14th at 12:00 p.m. (Midnight) (EST).

     c.    Defendants are enjoined from making any statements concerning Purple, its name, its brand, or its Marks that implies any continuing relationship between the companies. Defendants further are enjoined from making any statement to customers, or potential customers, stating or implying that Purple is the source of any delay or inability to fulfill Defendants' customer orders.

138.    The requirements of paragraph 8 of the TRO went into effect at midnight Eastern Standard Time on Monday, December 14, 2020.  [TRO ¶ 8.b].

139.    The TRO applies not only to the named Defendants, but also to those persons acting in concert with them:

     9.    In accordance with Rule 65(d)(2), this Order is binding on Defendants and their officers, agents, servants, employees, and attorneys, as well as persons who are in active concert or participation with Defendants and/or Defendants' officers, agents, servants, employees, and/or attorneys.

[TRO ¶ 9].  Such persons include, without limitation, Robert Golden.

**The Preliminary Injunction Order**

140.    On December 18, 2020, Defendants stipulated to entry of a preliminary injunction order with the same terms as the TRO.

141.    On December 18, 2020, the Court entered a Preliminary Injunction Order (the "Preliminary Injunction").

**Defendants Violate the TRO and Preliminary Injunction , and
Continue to Infringe Purple's Intellectual Property**

142.    Rather than comply with the Court's TRO, or the Preliminary Injunction, the Defendants implemented a careful plan to undermine and skirt the language, spirit, and intent of the TRO.

<u>The ReST Website</u>

143.    Specifically, although the Defendants removed the word "Purple" and the mark "Purple Grid™" from its website, they have continued to use the purple color scheme, including in conjunction with the Purple Grid™, continued to sell or offer for sale the Purple Grid™ (albeit under a different name), and continued the Overselling conduct by continuing to offer for sale and take orders for a product that it did not have.

144.    Defendants simply changed the name of the product from the "ReST Bed with Purple Grid™" to the "Rest Gel Grid," and continued to use the exact same images of the Purple Grid™ that had previously been on the site:



[2020/12/15 5:07 p.m. capture of https://restperformance.com/product/rest-bed-with-gel-grid/].  These images reflect infringement of Purple's patents and trade dress.

145.    The Rest Gel Grid homepage is virtually identical to the images previously used to promote the ReST Bed with Purple Grid™ from October 2020:



146.    Similarly, after the TRO was entered the Defendants simply changed the name of the product from the "ReST Bed with Purple Grid™" to the "Rest Gel Grid" on the "Buy Now" page of the website, but continued to use the exact same images of the Purple Grid™ that had previously been on the site:



[2020/12/15 5:07 p.m. capture of https://restperformance.com/product/rest-bed-with-gel-grid/].  These images reflect infringement of Purple's patent rights, and its trade dress.

147.    The Buy Now page is virtually identical to the images promoting the ReST Bed with Purple Grid™ from October 2020:



[2020/11/18 11:30 am capture of https://restperformance.com/product/rest-bed-with-purple-grid/].

<u>Personal Computer Internet Google Search</u>

148.   After the TRO became effective, Defendants continued internet marketing

through Google, which for search results from a personal computer still includes

Purple's name and its trademarks Purple and Purple Grid™:



[2020/12/15 Google Search Results for "rest bed with purple," 4:50 p.m.].  These search

results and images reflect infringement of Purple's trademarks, patent rights, and its

trade dress.

<u>Mobile Device Google Search</u>

149.   After the TRO became effective, Defendants continued internet marketing

through Google, which for search results from a mobile device still includes Purple's name and its trademarks Purple and Purple Grid™:



[2020/12/15 Google Search Results for "rest bed with purple," 4:52 p.m.].  These search results and images reflect infringement of Purple's trademarks, patent rights, and its trade dress.

**FIRST CAUSE OF ACTION**



150.    Purple incorporates by reference each of the preceding paragraphs as if fully set forth herein.

151.

152.

153.

154.

155.

156.



**SECOND CAUSE OF ACTION**

157.    Purple incorporates by reference each of the preceding paragraphs as if set forth fully herein.

158.

159.

160.

161.

162.

163.

164.

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

███████████████████████████████████████████████

████████████████████████

### THIRD CAUSE OF ACTION

████████████████████████████████████████████████████

165.    Purple incorporates by reference each of the preceding paragraphs as it

set forth fully herein.

166.    ████████████████████████████████████████

███████████████████

167.    █████████████████████████████████████████████

168.    █████████████████████████████████████████████

█████████████████████

169.    ████████████████████████████████████████████

██████████████████████████████████████

170.    ███████████████████████████████████████████

█████████████████████████████████████

171.    ████████████████████████████████████████

████████████████████████████████████████████████████

██████████████████████████████████████

172.    ████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████



**FOURTH CAUSE OF ACTION**
**(Declaratory Judgment – All Defendants)**

173.    Purple incorporates by reference the preceding paragraphs.

174.    The Court, pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, has the power to issue declaratory judgments determining rights, status, and other legal relations of the parties.

175.    There is a justiciable controversy between Defendants and Purple, including without limitation ███████████████████████████████████

176.    Purple and Defendants have interests that are adverse.

177.    Purple has legally protectible interests in the issues, ██████████

██████████████████████████████████████

178.    The issues presented are ripe for judicial determination.

**FIFTH CAUSE OF ACTION**
**(Lanham Act Trademark Infringement – All Defendants)**

179.    Purple incorporates by reference the preceding paragraphs.

180.    Defendants were obligated to cease the use of Purple's trademarks by at least August 11, 2020.

181.    Purple has valid trademarks entitled to protection, including in the standard mark "Purple," the stylized Purple mark, and the "Purple Grid™."

182.    The Marks are federally registered or valid common law marks, have acquired fame and distinctiveness, and are associated in the mind of the public exclusively with Purple.

183.    ████████████████████████████████

████████████████████████████████████████

█████████████████

184.    ████████████████████████████████████

███████████████

185.    Defendants' use of Purple's trademarks in commerce has caused and is likely to cause confusion and mistake in the mind of the public and dilutes Purple's brand.

186.    Defendant Golden is actively involved in and has the right and ability to supervise the business and marketing activities of Defendants ReST and PatienTech.

187.    Defendant Golden has personally participated in, directed, authorized and

approved the infringing activities of Defendants ReST and PatienTech.

188.    Accordingly, Defendant Golden is personally liable for the infringement of Purple's trademarks, including for all damages arising therefrom.

189.    As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

190.    The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

191.    Purple has been damaged by Defendants' conduct in an amount to be determined at trial, and is entitled to recover (1) Defendants' profits, (2) any damages sustained by the Plaintiff, and (3) the costs of the action.  Including because this is an exceptional case, Purple is also entitled to an award of attorney fees, pre- and post-judgment interest, and all costs.

### SIXTH CAUSE OF ACTION
### (Injunction – All Defendants)

192.    Purple incorporates by reference the preceding paragraphs.

193.    Defendants have violated Purple's rights and have otherwise acted in an unlawful manner, as set forth in the preceding causes of action, including as reflected in the TRO Motion and the TRO itself.

194.    Purple has a substantial likelihood of prevailing on the merits of its claims, including the trademark ▮▮▮▮▮▮▮▮▮▮ claims as identified in the TRO Motion and the TRO itself.

195.    Absent injunctive relief, including the relief already reflected in the TRO

but also additional relief directed at Defendants' post-TRO conduct, Purple will suffer irreparable harm, including but not limited to injury to its goodwill, and/or a loss of business in an amount that is difficult or impossible to quantify.

196.   An injunction requiring ███████████████████████████

███████████████████████████████████████████

████████████████████

197.   The threatened injury to Purple far outweighs whatever damage an injunction would or could cause Defendants, who would not be prohibited from engaging in other lawful activities.

198.   There is a substantial likelihood that Purple will prevail on the merits of the claims for which injunctive relief is sought, including as reflected in the TRO Motion and the TRO itself.

199.   Therefore, under Rule 65 of the Federal Rules of Civil Procedure and 15 U.S.C. § 1116(a), Purple is entitled to a temporary restraining order and preliminary injunction that includes, at a minimum, the following relief:

(a)   The relief already reflected in the TRO.

(b)   An order that Defendants cease their post-TRO violation of the letter and spirit of the TRO, that Defendants cease the use of Purple's trade dress, and that Defendants cease marketing or offering for sale Purple's patented products.

(c)   Corrective advertising or corrective statements to attempt to alleviate harm caused by the Overselling and other deceptive conduct by

Defendants, including conduct yet to be discovered.

(d) ██████████████████████████

██████████████████████████████████████

███████████████████████████████████

███████████████

## SEVENTH CAUSE OF ACTION
### (Common Law Trademark Infringement – All Defendants)

200.    Purple incorporates by reference the preceding paragraphs.

201.    Purple has common law trademark rights in "Purple Grid™."

202.    Purple has a protectable interest in the Purple Grid™ trademark, the Defendants' have used the mark in commerce, and there is a likelihood of consumer confusion.

203.    Defendant Golden is actively involved in and has the right and ability to supervise the business and marketing activities of Defendants ReST and PatienTech.

204.    Defendant Golden has personally participated in, directed, authorized and approved the infringing activities of Defendants ReST and PatienTech.

205.    Accordingly, Defendant Golden is personally liable for the infringement of Purple's trademarks, including for all damages arising therefrom.

206.    As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

207.    Purple has been damaged by Defendants' conduct in an amount to be determined at trial, and is entitled to recover (1) Defendants' profits, (2) any damages

sustained by the Plaintiff, and (3) the costs of the action.  Including because of the willful

nature of Defendants' conduct, Purple is also entitled to an award of attorney fees, pre-

and post-judgment interest, and all costs.

208.    Defendants' conduct was and is willful and malicious or intentionally

fraudulent conduct, or conduct that manifests a knowing and reckless indifference

toward, and a disregard of, the rights of others, and thus Purple is entitled to an award

of punitive damages.

**EIGHTH CAUSE OF ACTION**
**(Federal Unfair Competition, False Designation of Origin, and Deception as to**
**Affiliation, Sponsorship or Approval Under 15 U.S.C. § 1125(a) – All Defendants)**

209.    Purple incorporates by reference the preceding paragraphs.

210.    Purple has trademark and other rights in "Purple Grid™" under 15 U.S.C.

§ 1125(a).

211.    Defendants have used the Purple Grid™ mark in commerce, both as a

false designation of origin, false or misleading description of fact, and a false or

misleading representation of fact, which is likely to cause confusion, or to cause

mistake, or to deceive as to the affiliation, connection, or association of ReST and its

products with Purple and its products, and as to the origin, sponsorship, or approval of

ReST and its products by Purple.

212.    Defendants' conduct is likely to cause confusion, mistake or deception as

to the source, origin, affiliation, connection or association of ReST's products, in

violation of 15 U.S.C. § 1125(a)(1).

213.    Defendant Golden is actively involved in and has the right and ability to

supervise the business and marketing activities of Defendants ReST and PatienTech.

214.    Defendant Golden has personally participated in, directed, authorized and approved the infringing activities of Defendants ReST and PatienTech.

215.    Accordingly, Defendant Golden is personally liable with Defendants ReST and PatienTech for unfair competition, including for all damages arising therefrom.

216.    As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

217.    The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

218.    Purple has been damaged by Defendants' conduct in an amount to be determined at trial, and is entitled to recover (1) Defendants' profits, (2) any damages sustained by the Plaintiff, and (3) the costs of the action.  Including because this is an exceptional case, Purple is also entitled to an award of attorney fees, pre- and post-judgment interest, and all costs.

## NINTH CAUSE OF ACTION
### (Trade Dress Infringement Under 15 U.S.C. § 1125(a) – All Defendants)

219.    Purple incorporates by reference the preceding paragraphs.

220.    Purple's trade dress is inherently distinctive and/or has become distinctive through secondary meaning.

221.    Purple's trade dress is nonfunctional.

222.    Defendants' use of Purple's trade dress has caused and will cause confusion or a likelihood of confusion among consumers as to the source or origin,

and/or the origin, sponsorship, or approval of ReST and its products by Purple.

223.  Defendant Golden is actively involved in and has the right and ability to supervise the business and marketing activities of Defendants ReST and PatienTech.

224.  Defendant Golden has personally participated in, directed, authorized and approved the infringing activities of Defendants ReST and PatienTech.

225.  Accordingly, Defendant Golden is personally liable for the infringement of Purple's trade dress, including for all damages arising therefrom.

226.  As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

227.  The knowing, intentional and willful nature of the acts set forth herein renders this an exceptional case under 15 U.S.C. § 1117(a).

228.  Purple has been damaged by Defendants' conduct in an amount to be determined at trial, and is entitled to recover (1) Defendants' profits, (2) any damages sustained by the Plaintiff, and (3) the costs of the action.  Including because this is an exceptional case, Purple is also entitled to an award of attorney fees, pre- and post-judgment interest, and all costs.

## TENTH CAUSE OF ACTION
### (False Advertising Under 15 U.S.C. § 1125 – All Defendants)

229.  Purple incorporates by reference the preceding paragraphs.

230.  Including by the Overselling conduct and statements blaming Purple for its inability to deliver product, Defendants have made material false or misleading representations of fact and material omissions and failures to disclose.

231.   Defendants' false statements and omissions were made in connection with the commercial advertising or promotion of its product, and were made in commerce.

232.   Defendants' false statements and omissions were and are likely to cause confusion or mistake as to the origin, association or approval of ReST's products.

233.   Defendant Golden is actively involved in and has the right and ability to supervise the business and marketing activities of Defendants ReST and PatienTech.

234.   Defendant Golden has personally participated in, directed, authorized and approved the false advertising activities of Defendants ReST and PatienTech.

235.   Accordingly, Defendant Golden is personally liable with Defendants ReST and PatienTech for false advertising, including for all damages arising therefrom.

236.   As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

237.   Purple has been damaged by Defendants' conduct in an amount to be determined at trial, and is entitled to recover (1) Defendants' profits, (2) any damages sustained by the Plaintiff, and (3) the costs of the action.  Including because this is an exceptional case, Purple is also entitled to an award of attorney fees, pre- and post-judgment interest, and all costs.

### ELEVENTH CAUSE OF ACTION
### (Deceptive Trade Practices Under Utah Code § 13-11a-3)

238.   Purple incorporates by reference the preceding paragraphs.

239.   In the course of their businesses, Defendants have engaged in the

following deceptive practices, each of which is an independent violation of Utah Code

§ 13-11a-3:

(a)     passed off their goods as those of another (i.e., Purple);

(b)     caused a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(c)     caused likelihood of confusion or of misunderstanding as to affiliation, connection, association with, or certification by another;

. . .

(e)     represented that goods or services have sponsorship, approval, characteristics, benefits, and qualities that they do not have, and/or that Defendants and their products have sponsorship, approval, status, affiliation, or connection that they do not have;

. . .

(g)     represented that Defendants' goods or services are of a particular standard, quality, or grade, and/or that their goods are of a particular style or model, when in fact they are goods of another;

. . .

(h)     disparaged the goods, services, or business of another by false or misleading representation of fact;

. . .

(i)     advertised goods or services or the price of goods and services with intent not to sell them as advertised;

(j)     advertises goods or services with intent not to supply a reasonable expectable public demand, without clearly and conspicuously disclosing a limitation of the quantity available

. . .

(t)     engaged in other conduct which creates a likelihood of confusion or of misunderstanding.

240.   Defendant Golden is actively involved in and has the right and ability to

supervise the business and marketing activities of Defendants ReST and PatienTech.

241.    Defendant Golden has personally participated in, directed, authorized and approved the deceptive trade practices of Defendants ReST and PatienTech.

242.    Accordingly, Defendant Golden is personally liable for engaging in deceptive trade practices, including for all damages arising therefrom.

243.    As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

244.    Purple is entitled to an order that Defendants promulgate corrective advertising by the same media and with the same distribution and frequency as the advertising found to violate Chapter 11a of the Utah Code, Truth in Advertising.

245.    Purple has been damaged in an amount to be proven at trial.  Purple is also entitled to an award of attorney fees, pre- and post-judgment interest, and all costs.

## TWELFTH CAUSE OF ACTION
### (Common Law Unfair Competition – All Defendants)

246.    Purple incorporates by reference the preceding paragraphs.

247.    Defendants' actions constitute passing off, palming off, imitating, and conduct causing or likely causing confusion or deception, including Defendants' misuse of Purple's intellectual property, including its name, common law and registered trademarks, its trade dress, and its patent rights.

248.    As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

249.    Defendant Golden is actively involved in and has the right and ability to supervise the business and marketing activities of Defendants ReST and PatienTech.

250.    Defendant Golden has personally participated in, directed, authorized and approved the unfair competition of Defendants ReST and PatienTech, despite his personal knowledge of Purple's trademark rights.

251.    Accordingly, Defendant Golden is personally liable with Defendants ReST and PatienTech for unfair competition, including for all damages arising therefrom

252.    Purple has been damaged by Defendants' conduct in an amount to be determined at trial, and is entitled to recover (1) Defendants' profits, (2) any damages sustained by the Plaintiff, and (3) the costs of the action.  Including because of the willful nature of Defendants' conduct, Purple is also entitled to an award of attorney fees, pre- and post-judgment interest, and all costs.

253.    Defendants' conduct was and is willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others, and thus Purple is entitled to an award of punitive damages.

**THIRTEENTH CAUSE OF ACTION**
**(Patent Infringement – All Defendants)**

254.    Purple incorporates by reference the preceding paragraphs.

255.    Pursuant to Defendants' statement that ███████████████████

████████████████████████████████████████████████

████████████████████████████████████

256.    Including as admitted in ReST's own marketing and advertising,

Defendants marketed and sold a product that includes Purple's patented products, such as the ReST Smart Bed™ with the Purple Grid™, and now is marketing and offering for sale the "Rest Gel Grid," which continues to use the exact same images of the Purple Grid™ that had previously been on the site:

257.   Defendants are infringing, contributing to the infringement of, and/or inducing others to infringe the '664 patent by making, manufacturing, promoting, marketing, advertising, distributing, offering for sale and selling and/or causing to be offered or sold the Purple Grid™ Rest Bed and now the Rest Gel Grid that infringes at least the following claim of the '664 Patent literally and/or under the doctrine of equivalents: Claims 1, 5, and 8.

258.   Defendants are infringing, contributing to the infringement of, and/or inducing others to infringe the '750 patent by making, manufacturing, promoting, marketing, advertising, distributing, offering for sale and selling and/or causing to be offered or sold the Purple Grid™ Rest Bed and now the Rest Gel Grid that infringes at least the following claim of the '750 Patent literally and/or under the doctrine of equivalents: Claims 1 and 16.

259.   Defendant Golden is actively involved in and has the right and ability to supervise the business and marketing activities of Defendants ReST and PatienTech.

260.   Defendant Golden has personally participated in, directed, authorized and approved the infringing activities of Defendants ReST and PatienTech, despite his personal knowledge of Purple's trademark rights.

261.   Accordingly, Defendant Golden is personally liable with Defendants ReST

and PatienTech for patent infringement, including for all damages arising therefrom

262.    As a direct and proximate cause of Defendants' actions, Purple has suffered and will suffer irreparable harm, and is entitled to preliminary and permanent injunctive relief, including as set forth in the Sixth Cause of Action.

263.    Defendants have willfully infringed the '664 Patent and the '750 Patent.

264.    Defendants' actions make this an exceptional case within the meaning of 35 U.S.C. § 285, entitling Purple to an award of attorney fees and to treble damages.

265.    Purple has suffered and will continue to suffer substantial damage to its business, including, without limitation, lost profits, loss of business reputation, loss of business opportunities, and loss of market share, by reason of Defendants' acts of patent infringement.  Purple is entitled to recover from Defendants damages adequate to compensate for the infringement, together with interest and costs as fixed by the court.  The Court should increase the award by three times the amount of damages.

## PRAYER FOR RELIEF

WHEREFEORE, Purple respectfully requests the Court enter judgment against Defendants as follows:

1.      On each cause of action, for the relief pleaded and requested, including for damages sufficient to compensate Plaintiff for Defendants' wrongful conduct and infringement; for a declaratory judgment as requested; for injunctive relief as requested; for exemplary, enhanced or punitive damages; for an award of pre-judgment and post-judgment interest and costs.

2.      For such other further relief to which Purple may be entitled in law and in

equity.

DATED this 8th day of February, 2021.

MAGLEBY CATAXINOS & GREENWOOD, PC

James E. Magleby
Christine Greenwood
Adam Alba
*Attorneys for Plaintiff Purple Innovation, LLC*

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff Purple Innovation, LLC demands a trial by jury on all issues so triable.

DATED this 8th day of February, 2021.

MAGLEBY CATAXINOS & GREENWOOD, PC

James E. Magleby
Christine Greenwood
Adam Alba
*Attorneys for Plaintiff Purple Innovation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MAGLEBY CATAXINOS &

GREENWOOD, PC, 170 South Main Street, Suite 1100, Salt Lake City, Utah 84101, and

that pursuant to Rule 5(b), Federal Rules of Civil Procedure, a true and correct copy of

the foregoing **CONSOLIDATED FIRST AMENDED COMPLAINT** was delivered to the

following this 8th day of February, 2021, by:

[X] CM/ECF System

[ ] Electronic Mail

Tracy H. Fowler
   tfowler@swlaw.com
Annika L. Jones
   aljones@swlaw.com
SNELL & WILMER L.L.P.
15 West South Temple, Suite 1200
Salt Lake City, Utah 84101-1004

M. Bradford Sanders
   BradSanders@SandersLPA.com
Thomas C. James Jr.
   TomJames@SandersLPA.com
SANDERS & ASSOCIATES LPA
8041 Hosbrook Road, Suite 315
Cincinnati, Ohio 45236

*Attorneys for Defendant*

                                        /s/ H. Evan Gibson