```
 1                IN THE UNITED STATES DISTRICT COURT

 2                        DISTRICT OF UTAH

 3                        CENTRAL DIVISION

 4

 5    PURPLE INNOVATION, a Delaware   )

 6    limited liability company,      )

 7              Plaintiff,            )

 8    vs.                             )  Case No. 2:20-CV-708RJS

 9    RESPONSIVE SURFACE TECHNOLOGY,  )

10    a Delaware limited liability    )

11    company, et al.,                )

12              Defendants.           )

13    _____)

14

15
              BEFORE THE HONORABLE ROBERT J. SHELBY
16            --------------------------------------

17                      January 6, 2021

18

19              Zoom Video Show Cause Hearing

20

21                     REDACTED TRANSCRIPT
                       -------------------
22

23

24

25
```

```
1
2                     A P P E A R A N C E S
3

4
     For Plaintiffs:           JAMES E. MAGLEBY
5                              ADAM ALBA
                               CHRISTINE T. GREENWOOD
6                              170 South Main Street
                               Suite 1100
7                              Salt Lake City, Utah

8

9

10

11
     For Defendants:           THOMAS C. JAMES, JR.
12                             8041 Horsbrook Road
                               Suite 315
13                             Cincinnati, Ohio

14                             ANNIKA JONES
                               15 West South Temple
15                             Suite 1200
                               Salt Lake City, Utah
16

17

18

19

20

21

22   Court Reporter:           Ed Young
                               351 South West Temple
23                             Room 3.302
                               Salt Lake City, Utah 84101-2180
24                             801-328-3202
                               ed_young@utd.uscourts.gov
25
```

```
1    January 6, 2021                              3:00 p.m.

2                    P R O C E E D I N G S

3

4         THE COURT:  We'll go on the record and we'll call

5    case number 2:20-CV-708.  This is Purple Innovation versus

6    Responsive Surface Technology and others.

7             Why don't we take a moment and make our

8    appearances first.  Should we?

9             Mr. Magleby, for the plaintiffs.

10        MR. MAGLEBY:  Yes, Your Honor.  Jim Magleby on

11   behalf of the plaintiff Purple Innovation, L.L.C.  Also with

12   me here are Christine Greenwood and Adam Alba of my office,

13   and then we have a client representative, James Larson.

14        MR. JAMES:  Your Honor, good afternoon.  I am Tom

15   James.  I represent the defendants, Responsive Surface

16   Technology and Patientech, L.L.C.  Rob Golden, who is my

17   clients' representative, is also here present in the Zoom

18   courtroom.

19             THE COURT:  Thank you.

20        MR. JAMES:  I should add we have local counsel

21   present as well and she may wish to introduce herself.

22        MS. JONES:  Annika Jones also here.  Good

23   afternoon.

24             THE COURT:  Welcome.  Good afternoon, everyone.

25             Let me begin with a reminder that it is unlawful
```

1    to record federal court proceedings and use them for any

2    purpose.  There is one official record of federal court

3    proceedings and it is the one being prepared by our court

4    reporter.  What an afternoon it has been and that is going

5    to be the next subject.  Anyway, just an admonition that it

6    is impermissible to record these proceedings by audio or

7    video.

8            Let me just say I worked on this case into the

9    evening last night and we had a busy morning this morning.

10   This afternoon, if I am just candid, I became distracted, at

11   least, if not distressed by the events that are unfolding in

12   our nation's capital, and so the comments that I'm going to

13   share with you today are comments that I have been thinking

14   about for the last day or so, at least since receiving

15   Purple's reply memorandum yesterday.

16           I am afraid they won't be as organized or as

17   eloquent as they would have been if I had a little more

18   fortitude and focus this afternoon and I want to start there

19   actually.  I am reminded too often that I have come to court

20   on days like today, and I am reminded as we open court about

21   the privilege of our democracy.  I'm reminded about the

22   statements that I share with our prospective jurors when

23   they answer their summons to come to court and to serve as

24   jurors.

25           And most relevant probably for purposes of today,

1    in civil cases I talk to our jurors about the Seventh

2    Amendment to the Constitution and the fact that our nation

3    was the first to guarantee to citizens the right to come to

4    court and to have civil disputes peacefully resolved by

5    members of the community and what a rare and extraordinary

6    right that is.  We are rightly the envy of much of the world

7    for our commitment to the rule of law.  All of you and

8    everyone who comes into this court and courts around the

9    country can expect that their disputes will be decided

10   fairly and impartially according to established rules and

11   laws.  It is something that we I think too often take for

12   granted.

13          So turning to the dispute before us today, I would

14   like to take a moment at the outset and see if I can

15   summarize where we are and how we got here and then I have

16   some questions.  This is the part that I think would have

17   been more organized and I hope more eloquent had I had a

18   different afternoon, so my apologies and I beg your

19   indulgence and patience.

20          The parties here had a business relationship, for

21   a while at least, and it began to deteriorate or did

22   deteriorate starting in about August of last year.  I'm

23   going to have some of the dates a little bit off and some of

24   the time line incorrect I'm sure.  My apologies.

25          My recollection from the papers and the briefing

1    on the motion for temporary restraining order was that

2    Purple became aware at some point in August and into

3    September and more so in October about ReST's conduct [XXXX

4    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

5    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

6    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]   All of that

7    led to Purple filing suit in October.

8              Purple waited until the Monday before Thanksgiving

9    to file an emergency application for a temporary restraining

10   order.  Counsel for ReST observed that at a hearing

11   Wednesday night, the night before Thanksgiving, on an

12   expedited emergency basis as requested by the plaintiff, and

13   ReST's counsel observed that the timing seemed suspect.  I

14   said we would go one step at a time and we would see what we

15   learned along the way.  We had expedited briefing from the

16   defendants and their counsel, including work over the

17   Thanksgiving holiday I'm sure, to prepare a response to the

18   T.R.O., and we had a lengthy hearing on Friday, December the

19   11th.  It was a Friday and we went into the night and the

20   timing of that hearing is the Court's fault, not Purple's

21   fault.  It was a consequence of the Court's availability.

22             That T.R.O. sought extraordinary relief from this

23   Court on the basis that the defendant, ReST, and there are

24   two defendants and I just refer to them as one, but was

25   engaging in commercial practices that were likely to cause

1    irreparable injury using Purple's trademark, trade name and

2    brand on its website and in connection with an online

3    marketing campaign in advance of black Friday, which Purple

4    alleged and maintained ReST was also [XXXXXXXXXXXXXXXXXXXXX

5    XXXXXXXXXXXXXXXXXXXXXX] and selling product that included the

6    Purple grid, and Purple maintained was purporting to sell

7    product that it did not have to sell and, as a result, was

8    further injuring Purple's goodwill and market reputation.

9          The defendants at our T.R.O. hearing advanced some

10   legal defenses that I did not think were meritorious, and

11   for that reason and for the reasons I explained in a lengthy

12   oral ruling that night, were insufficient to overcome the

13   showing that I concluded Purple had made that it was likely

14   to succeed on [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] and

15   its trademark infringement claim.  I was satisfied under the

16   circumstances that Purple had shown a likelihood of

17   irreparable harm if the defendants were not enjoined.

18         I ordered on that night, and it was a Friday

19   night, I ordered that ReST bring its marketing into

20   compliance with the Court's order prohibiting the use of

21   Purple's trade name, trademark, brand, and that it stop

22   selling or marketing for sale any products that included or

23   incorporated Purple's product.

24         That order was entered on Friday night,

25   December 11th, and we now know that the defendants

1    immediately undertook efforts to come into compliance with

2    that order, including having employees who, during the

3    holiday season and while traveling, undertook extensive and

4    timely efforts to ensure compliance over the course of the

5    weekend when the defendants did not enjoy access to some of

6    their outside marketing personnel and others.  We know that

7    based on the sworn testimony received from ReST and its

8    representatives that it believed it was in compliance by

9    Monday, December 14th.

10         The next day, December 15th, we know that

11   representatives of Mr. Magleby's firm or representatives of

12   Purple, somebody took screen captures of some portions of

13   ReST's website and did some online searches that revealed at

14   least one Google advertisement that Purple believed was in

15   violation of the Court's T.R.O.

16         We now know that for weeks preceding that date,

17   and at least several days after that date, some employees of

18   Purple were accessing without authorization or permission

19   Google advertising accounts for the defendant.

20         I should say both before and at the hearing on

21   Friday the 11th for the T.R.O., the defendants argued that

22   Purple was unable to establish irreparable harm, at least in

23   part, because it had waited to file the emergency

24   application.  The defendants again argued that Purple

25   appeared to be engaged in some sharp practices with respect

1    to the timing of that application.  And you'll recall at the

2    hearing I addressed that issue in my ruling and we talked

3    about it in oral argument, and I found that while there were

4    delays, I was satisfied, at least at that time, that they

5    were not significant enough or sufficient to overcome the

6    plaintiff's showing of irreparable injury, and I would not

7    withhold the issuance of a T.R.O. merely on the basis of the

8    timing of the filing and the time that had passed since

9    Purple became aware of at least some of the conduct that

10   forms the basis for the application for the T.R.O.

11           So we fast-forward and I think we were on the 15th

12   of December when someone associated with the plaintiff found

13   evidence that it believed revealed the defendants' failure

14   to comply with the language of my temporary restraining

15   order.  The plaintiff sat on their hands for eight more days

16   and waited until approximately noon the day before Christmas

17   Eve to file another emergency motion.  That is the one

18   seeking an order to show case why the defendants should not

19   be held in contempt for violating the Court's T.R.O.

20           Based on the prima facie showing in the motion

21   submitted by Purple, I was satisfied that it at least

22   merited a response from ReST and, over Purple's objection,

23   concluded that the defendants would be entitled to the same

24   eight days, at least, for their response that the plaintiffs

25   gave themselves before they filed their motion.  What that

1     meant ultimately, again, the day before Christmas Eve, was

2     in order that the defendants respond by December 31st, New

3     Year's Eve, which is precisely what they did.  It is clear

4     to me from that response that the defendants have undertaken

5     significant and earnest efforts to comply with the Court's

6     orders.

7              I am deeply concerned about the reply that we

8     received from Purple.  Let me just say that I appreciate

9     that everyone on this call knows more about this case and

10    the facts of this case than I do.  You all know more about

11    this dispute and I am mindful of that and I am always

12    careful about forming opinions or drawing conclusions about

13    things that I don't have personal firsthand knowledge about.

14             I am beginning to form some deep concerns about

15    whether Purple has been operating in good faith in this

16    case, and I come to the bench today at least thinking about

17    whether it would be appropriate and whether I should invite

18    ReST to file a motion for attorneys' fees and costs relating

19    to this motion for an order to show cause or whether, having

20    obtained this injunction in equity, whether I should

21    dissolve the preliminary injunction as a result of Purple's

22    conduct and practices in this case thus far.

23             I am concerned about the timing of the motions.  I

24    am concerned about the overall scheme and time line of this

25    dispute, and I'm concerned about the burden that it has

1   placed on the defendants and their counsel.  I'm concerned
2   about the tone and tact in some respects taken by Purple.  I
3   understand commercial disputes, and I was involved in many
4   of them in private practice and have seen a good number, at
5   least in my years on the bench, so I understand something
6   about the nature of commercial litigation.

7          As I look at the contempt motion before the Court
8   now, it is extraordinary.  It is extraordinary.  Purple has
9   recommitted itself to this in its reply, to my surprise.
10  Having obtained a temporary restraining order on the
11  strength of its showing that it would likely prevail on its
12  trademark infringement claims [XXXXXXXXXXXXXXXXXXXXXXXXXXXX],
13  it now wants to use the broad language that it supplied to
14  the Court to obtain in its temporary restraining order,
15  broadly referring to intellectual property rights, as a
16  basis for this Court to sanction a party for violation of
17  patent claims that have not been pled or not before the
18  Court for trade dress injuries under the Lanham Act, neither
19  of which are pled, neither of which Purple has attempted to
20  establish with any specificity.  And while technically both
21  constitute potentially intellectual property rights and
22  thereby may technically fall within the broad language of
23  the temporary restraining order, were certainly not what the
24  Court and the parties talked about in the briefing and at
25  the hearing on the temporary restraining order.

1          Purple has not come forward with patents, claims

2    that they contend that the defendants are infringing,

3    evidence or any attempt to show patent infringement, and

4    while they argue about trade dress, I was quite surprised,

5    at least in the reply, that Purple didn't come forward with

6    evidence of its trade dress if it was going to advance an

7    argument on that basis.  And so I think there is nothing

8    there that I can tell, nothing that would merit sanctions at

9    least.

10          And on the advertising claim, confronted with

11    evidence that its own employees were accessing, without

12    authorization, surreptitiously the defendants' Google

13    advertising accounts for purposes undisclosed during the

14    course of this litigation, and instead of providing any

15    explanation or even a statement that it would investigate,

16    it blames ReST for the advertisements that Purple itself

17    created, as I understand on the evidence before me, that ran

18    this long because Purple's employees didn't have a

19    termination date.

20          I understand from the sworn evidence before me

21    that the defendants were unaware of those advertisements,

22    had no knowledge of them and would have had no reason to go

23    looking for them to take them down in compliance with the

24    Court's order.  And when confronted with evidence that its

25    own employees had engaged in what is potentially criminal

1    conduct, I suppose, though I will tell you I didn't look at

2    the statute and I have formed no opinion about that, at

3    least it was unauthorized access to an electronic account,

4    and rather than say that it was concerned and would

5    investigate or find out what happened, it criticized ReST

6    for not supplying more information about Purple's misconduct

7    and, again, invited this Court to sanction the defendants.

8              One moment, please.  Just hold on.

9              MR. MAGLEBY:  Your Honor, I think he has put us --

10             THE COURT:  Sorry.  I just needed a moment.

11             Mr. Magleby, I would like to begin with some

12   questions for you.

13             MR. MAGLEBY:  Sure.

14             THE COURT:  I would like to know whether you,

15   prior to receiving the defendants' opposition memorandum,

16   were aware that any Purple employees were accessing the

17   defendants' Google ad account?

18             MR. MAGLEBY:  No.

19             Your Honor, we have submitted the declaration of

20   Rob Towne with the reply, and what Mr. Towne says is his

21   belief is that because these accounts -- you have basically

22   a master account.  So Mr. Towne has a master Google ad

23   account and somehow any other permission that you have on

24   Google ads, they all link.  So he has got a master account

25   and then there are subsidiary accounts, and what he says in

1   his declaration is that he believes that what that means is

2   any time he signs into his master account to look at Google

3   ads for Purple, as obviously he is allowed to do, that that

4   would trigger a notice or some type of notification to

5   anybody else who is on the account including ReST.

6          But what he also says is if anything had been done

7   to the account or anything had been changed, then there

8   should have been a way, a very easy way for ReST to have

9   captured whatever those changes were or whatever happened.

10   I guess it tracks what happens.  He sets that forth in his

11   declaration.  He says, you know, certainly none of the

12   lawyers and nobody in management at Purple ever told us to

13   do anything with that account and we didn't know it was

14   active until, you know, we got the declarations from the

15   defendants.  I think I have accurately summarized the high

16   points of Mr. Towne's declaration.  Having said that, I

17   don't have it in front of me and I am not reading from it.

18   That is my memory of it.

19          THE COURT:  I do now have it in front of me and I

20   just found it.  It was at the end of the exhibits that I

21   printed.  I have looked through it and it was behind the

22   patent that you supplied.

23          Did I miss the reference to Mr. Towne's

24   declaration in your brief?  If I did, I owe you at least a

25   partial apology.  Is there reference or argument related to

1   the content of his declaration?

2        MR. MAGLEBY:  You know, Your Honor, I was not

3   involved in that reply as I should have been, although I was

4   involved.  I thought there was.

5        THE COURT:  I see it now.  I'm sorry.  It is right

6   before the conclusion.  On page 9 there is reference to his

7   declaration.

8        MR. MAGLEBY:  Let me be clear.  When I say I

9   wasn't involved as I should, I take complete responsibility

10  for everything that you have talked about in terms of how

11  this litigation has been handled and the decisions that were

12  made.  So I in no way mean to throw anybody in my office

13  under the bus.  I am the guy and you're talking to the right

14  guy about those concerns.

15       THE COURT:  If you become aware, Mr. Magleby, of

16  any clarification that needs to be made to the contents of

17  Mr. Towne's declaration, I presume that you'll notify the

18  defendants promptly.

19           In the meantime, why don't we look forward.  I am

20  not, on the record before us, going to hold the defendants

21  in contempt.  It is not close.  I am disappointed that we

22  all went through this exercise, and while there may have

23  been a basis to file this motion -- one of the things I

24  would have done this afternoon, had there been more time, is

25  try to scour the record to see if I could find evidence of

1    communications between Purple's lawyers and ReST's lawyers

2    about Purple's concerns before you came to court.  Knowing

3    what I think I know about you, Mr. Magleby, I presume you

4    tried to address your questions with ReST's counsel before

5    you filed your motion.

6          MR. MAGLEBY:  Unfortunately, Your Honor, I am

7    going to disappoint all of us with that.  I did not.  I can

8    explain and respond to the Court's concerns if that will be

9    useful.  At the same time I don't want to dig myself into a

10   deeper hole.  However the Court would like to proceed I am

11   happy to proceed.  I certainly understand the Court's

12   concerns and I take them very seriously.  I don't think I

13   have ever been the recipient of such strong language from

14   the Court, and I am not saying it is not justified, but I do

15   have answers and reasons for all of it.

16         THE COURT:  I don't know that it is justified, but

17   the concerns that I have were serious enough that in an

18   interest of transparency, and to try to ensure that we were

19   establishing a good tone going forward, I wanted to share

20   them all with you.  I meant what I said when I qualified my

21   comments.  Of course I know less about the facts of this

22   case and this dispute than everybody on this call and I am

23   reticent to form opinions about motivations, especially

24   motivations for counsel, and so I am not making a direct

25   allegation of any kind.

1          In fairness I needed to tell you and everyone on

2     this call that I'm beginning to wonder about good faith.  I

3     can see, in the early stages of this litigation, signs that

4     are not promising for a commercial dispute in terms of

5     fairly and efficiently resolving the disputes that have to

6     be answered here.

7          I thought about canceling this hearing.  I thought

8     about releasing the witnesses in advance of the hearing.  I

9     thought about just issuing a short order, and I didn't think

10    I would be doing anyone service if we didn't have this

11    discussion.

12         I have shared my part.  I am concerned about where

13    we are and where we are headed and, of course, I'm here to

14    serve you and not vice versa.  Let me ask you,

15    notwithstanding what I have said, and I don't want to skip

16    over what you just said a minute ago, Mr. Magleby, and I

17    don't need any further response from you, but, of course,

18    you are welcome to respond if you wish.  Otherwise, I think

19    our time might be better spent looking forward and thinking

20    about what is left in front of us.

21         MR. MAGLEBY:  I am going to resist the temptation

22    to talk.  Like you, Your Honor, I did not -- this afternoon

23    and today has been another crazy day.  I thought 2020 was

24    behind us, so I have had a hard time concentrating.  I don't

25    think it is going to -- I'm just going to ignore my

1    instincts.

2          So I am going to just say again, everything that

3    you have talked about, at least as far as this litigation

4    goes, is from me, not my client, and if there are concerns,

5    that they are appropriately directed to me as counsel.

6          In terms of going forward, we filed a motion for

7    leave to amend.  It was not opposed.  That motion does

8    include trade dress and patent claims in it.  I fully

9    expected Your Honor would ask me how in the world can I

10   grant an order to show cause based upon claims that are in a

11   complaint that I have not allowed you to file yet.  It is a

12   tough answer for me.  I had one ready, but given that the

13   Court is denying the motion, I don't think that we need to

14   watch me try to climb that hill.

15         Our plan would be then to file the amended

16   complaint and proceed with discovery.  We'll keep a close

17   eye on what ReST is doing, and if we think there is a basis

18   for expedited relief, then we'll come to court with a fully

19   supported, backed by evidence approach, and we'll present

20   that to the Court and to counsel, and we'll not do it at an

21   inconvenient time unless the circumstances make it so that

22   it was impossible for us to do it at any other time.  I will

23   give everybody the commitment that I will raise these issues

24   with ReST in advance, unless I think there is going to be

25   blood on the carpet if I do.

1          THE COURT:  Fair enough.

2          So everyone here understands my thinking and

3    rationale, while I used the broad language proposed by

4    Purple in the T.R.O., and I think it has been incorporated

5    into the preliminary injunction referring to Purple's

6    intellectual property, that order in my mind was directed

7    and is directed at the use of Purple's trademark, trade name

8    and brand and efforts to sell or market products that

9    include Purple products.  It did not contemplate other

10   intellectual property.

11         Mr. Magleby, if it becomes Purple's position that

12   there are other claims that would support injunctive relief

13   of some kind, we're going to have to start with the Rule 65

14   factors, and at least the likelihood of success on the

15   merits of a claim relating to that intellectual property in

16   one way or another.  I can't tell you that that is the rule

17   or that it is required.  I can just tell you that that is

18   what I'm going to require before I would enjoin anything

19   related to patents, for example, or production of mattresses

20   or anything of that kind.

21         Your motion for leave to amend your complaint, I

22   saw it came in and I saw it was unopposed.  We have been

23   preoccupied with other cases.  That motion is granted.  Go

24   ahead.

25         The only question in my mind is this.  I think the

1   briefing is complete now on the motion to consolidate but,

2   candidly, I have not read it yet and so I don't know if

3   we'll have a hearing or if I will resolve that motion on the

4   papers and I don't know how it will be resolved.  The only

5   lingering concern in my mind is if the cases are

6   consolidated over ReST's objection we'll have yet another

7   complaint, because we'll have to realign the parties and

8   we'll consolidate the pleadings, but I don't think there is

9   any reason for us to wait on that.  We'll go one step at a

10  time.

11          The motion for leave to file the amended complaint

12  is granted.  Why don't you file that within the next two

13  days.  What is today?  Wednesday.  By the end of the week --

14  file it by Friday and we'll go from there.

15          Why don't we hold off, though, on a scheduling

16  order, unless there is already one in place, until we decide

17  the motion to consolidate so we don't get the two cases out

18  of step and out of sequence.

19          Mr. James, I have not allowed you a chance even to

20  say hi.  You have something that you would like to add?

21          MR. JAMES:  I do, Your Honor.  Thank you.

22          The parties have exchanged a proposed scheduling

23  order, but if the Court wants us to hold off, we're

24  certainly happy to do that.  The reason I was champing at

25  the bit here for a moment is as to the consolidation motion

1    in particular, something that we were going to bring to the

2    Court's attention today again, and I think you have been

3    aware of this before, but [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

4    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

5    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

6    XXXXXXXXXXXXX] All of the claims in this case we contend fall

7    in that universe.

8              [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

9    XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

10   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

11   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

12   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

13   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

14   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX] although we are

15   happy to confer with Mr. Magleby first to try to get

16   everybody to agree upon that, and I would like us to have a

17   good working relationship here so that no one has to bother

18   the Court with unnecessary arguments over things, but that

19   is certainly looming.

20          The claims in the other case, on the other hand,

21   [XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

22   XXXXXXXXXX]  Now, if there are questions in this current case

23   as to whether something is within the scope, I do want to

24   observe, and I am not arguing a motion not before you yet,

25   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

1    and under Triple A rules, the arbitrator decides what is

2    within the scope.  So that would be a decision for the

3    arbitrator to make and potentially something could come back

4    to you, but it might be best not to intermingle the cases if

5    that is looming.  I just wanted to make that point.

6    Otherwise, I appreciate all of your comments earlier.

7          THE COURT:  I anticipate, Mr. James, that when I

8    scour your opposition to the motion to consolidate, that you

9    have included some argument about that.

10         MR. JAMES:  I believe so.  I was not on board at

11   the time that was filed, Your Honor, but yes, I believe that

12   that is --

13         THE COURT:  We have spoken XXXXXXXXXXXXXXXXXXXXXXX

14   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

15   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

16   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX

17   XXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXXX]  I am mindful that the

18   other outstanding motion that needs to be addressed is that

19   motion to consolidate.  I think the sooner the better

20   probably in view of what you all have in front of you and

21   what you're doing.  I can't tell you for sure when we'll get

22   to it, but as quickly as we can.

23         My practice is to require the parties to engage in

24   their discovery without waiting while we resolve preliminary

25   motions and not presume the outcome of those motions, and

1  yet in this case I don't think we'll be long.  I think for

2  at least two reasons it makes sense probably for us to

3  figure out whether the cases are going to be consolidated or

4  not and whether one or both will be heard in federal court

5  or somewhere else.  Before we get too far into discovery,

6  let's figure out what rules are going to apply and where you

7  will be.  I will commit to both of you that we'll try to get

8  to the consolidation motion as quickly as we can.  I think

9  that is an indirect way of me ordering a stay in the case

10  until we resolve those issues.

11          I appreciate your feedback, Mr. James.

12          MR. JAMES:  Thank you.

13          THE COURT:  What else is going on and what else

14  can I do to help?

15          Mr. Magleby?  You're thinking I have been plenty

16  of help already.  There is no more help of that kind today.

17          MR. MAGLEBY:  Not at all, Your Honor.  Not at all.

18  This is what we do, and in thinking about what you said at

19  the beginning about the rules we have and that we follow,

20  and advantages and benefits we have with the court system,

21  and this is how we resolve difficult issues and I can't

22  think of anything else.

23          THE COURT:  Mr. James?

24          MR. JAMES:  I had a lot I was planning to offer,

25  but I don't think we need to at this point.  I know

1    Mr. Golden is on the call here representing my client and he

2    was eager to tell you what is going on and we'll have to

3    take that opportunity at some other point in time I think.

4              Thank you.

5              MR. MAGLEBY:  Your Honor, just so I understand, I

6    think we're just going to all sit tight, at least in this

7    case, until the Court decides to either set a hearing on the

8    motion to consolidate or gives us other direction.

9              THE COURT:  I appreciate you asking that question.

10   I was imprecise in my language.  I said a stay and I don't

11   really mean a stay.  For example, if ReST wants to file a

12   motion to compel arbitration and if there are other issues

13   that need to be addressed that are legal issues, I am not

14   saying we won't take them up.  I mean let's not launch into

15   discovery.  Let's not get started down that path until we

16   know where we are headed.

17             Thanks for asking for that clarification.

18             MR. MAGLEBY:  Understood.

19             THE COURT:  All right.  I was sure that there was

20   one more thing.

21             MR. MAGLEBY:  The minute we hang up you'll

22   remember it, as will I.

23             THE COURT:  Well, I won't keep you any longer than

24   we already have.  Counsel on both sides, I appreciate you

25   accommodating expedited briefing schedules and making

1   yourselves available at inconvenient times thus far in the

2   hearing and I appreciate, as always, your prompt attention

3   to these matters.

4         I hope you all remain safe and well in these

5   extraordinary and challenging times.

6         We'll be in recess.  Thank you, everyone.

7         MR. MAGLEBY:  Thank you, Your Honor.

8         MR. JAMES:  Thank you, Your Honor.

9         (Proceedings concluded.)

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25