1              IN THE UNITED STATES DISTRICT COURT

2          FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

3

4
   PURPLE INNOVATION, a              )
5  Delaware limited liability       )
   company,                         )
6                                   )
              Plaintiff,            )
7                                   )
        vs.                         )   Case No:  2:20cv709RJS
8                                   )
   RESPONSIVE SURFACE               )
9  TECHNOLOGY, a Delaware           )
   limited liability company,       )
10 et al.,                         )

11            Defendants.
   _____

12

13

14

15

16

17
              BEFORE THE HONORABLE ROBERT J. SHELBY
18
                    August 31, 2021
19
              ZOOM ORAL RULING HEARING
20

21

22

23

24              Reported by:
           KELLY BROWN HICKEN, RPR, RMR
25                801-521-7238

1

```
 1                        APPEARANCES OF COUNSEL

 2

 3    FOR PLAINTIFFS:            MAGLEBY CATAXINOS & GREENWOOD

 4                              BY:  JAMES E. MAGLEBY

 5                                   ADAM ALBA

 6                                   Attorneys at Law

 7                              170 SOUTH MAIN STREET, STE 1100

 8                              SALT LAKE CITY, UTAH

 9

10    FOR DEFENDANTS:            SNELL & WILMER

11                              BY:  TRACY FOWLER

12                                   Attorney at Law

13                              15 WEST SOUTH TEMPLE, STE 1200

14                              SALT LAKE CITY, UTAH

15

16

17

18

19

20

21

22

23

24

25
```

```
1                SALT LAKE CITY, UTAH, TUESDAY, AUGUST 31, 2021

2                              *   *   *   *   *

3                THE COURT:  We'll go ahead and call Case

4      Number 2:20-CV-708.  It's our Purple Innovation vs. ReST and

5      others case.  Counsel, let me invite you to take a moment and

6      make your appearances, if you would, please.  For the

7      plaintiff?

8                MR. MAGLEBY:  Your Honor, Jim Magleby and Adam Alba

9      on behalf of the plaintiff Purple.  And we have client

10     representatives James Larson and Craig Kleinman observing.

11               THE COURT:  Thank you.

12               MR. FOWLER:  Your Honor, this is Tracy Fowler with

13     Snell and Wilmer.  I'm appearing for the Patientech, ReST and

14     Golden defendants.  And Mr. Golden is also in attendance

15     today.

16               THE COURT:  Okay.  Thank you.  All right.  At the

17     outset, let me just say as I often before an oral ruling, I

18     won't ask either of you to prepare and submit a draft order.

19     We will place on the docket a minute entry in the next few

20     days referencing the transcript of this hearing as the Court's

21     ruling on the motion to compel arbitration and stay

22     proceedings, Docket 111.  So you can rest your hands, and I

23     think I always endeavor to be reasonably complete even in our

24     oral rulings.  And so I'll just tell you in advance this is a

25     30-page ruling that I'm about to read to you.  It's going to
```

1    take a little while.  Relax, get lots of water and some

2    snacks, and I'll be happy to answer any questions you may have

3    at the end.

4    ███████████████████████████████████████████████████████

5    and infringement of the intellectual property rights.  Purple

6    Innovation brings this action against defendants Responsive

7    Surface Technology, LLC, that we've all been calling ReST,

8    PatientTech and Robert Golden.  One week after filing this

9    lawsuit Purple ███████████████████████████████████████████

10   ███████████████████████████████████████████████████

11   █████████████████████

12              After mediation discussion broke down.  The

13   defendants then ███████████████████████████████████████

14   ████████████████████████████████████████        Purple

15   refused to arbitrate arguing that the defendants had waived

16   their right by engaging in litigation conduct.  And now before

17   the Court, as I said, after having received oral argument,

18   after the motion was completely briefed is the motion to

19   compel arbitration and stay proceedings, Docket 111, filed by

20   the defendants.

21              The central issue presented to the Court is whether

22   the defendants are entitled ██████████████████████████████

23   ████████████████████████████████████████████████████████

24   The court held a Zoom hearing on the motion on May 25 this

25   year, Jim Magleby appearing for Purple and Tracy Fowler

1    appearing for the defendants.  And at the end of that hearing

2    I took the motion under advisement.  As I said at the outset,

3    we noticed this hearing for the purpose of providing you an

4    oral ruling on the defendant's motion, and for the reasons I'm

5    about to explain defendant's motion will be granted.

6              First the background.  And the facts I'm about to

7    relate are drawn from the parties' briefing on the motion and

8    they're supplemented, the facts are, by Purple's Consolidated

9    First Amended Complaint, Docket 129; defendants' corresponding

10   Answer, Counterclaims and Third-Party Claims, Docket 142.  And

11   I'll just note that all of the docket numbers correspond to

12   the sealed un-redacted versions of the filings.

13             I'll also note that my analysis, I'm required in my

14   analysis to consider the timing, sequence and nature of the

15   parties' litigation conduct prior to the time that the

16   defendants invoked the right to arbitration.  And for this

17   reason I'm about to relate in some detail the factual and

18   procedural record of the case paying particular attention to

19   which party acted and when.

20             Beginning in late 2019, █████████████████████

21   ███████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████████████████████████████████████████

24   ████████████████████████████████████  And let me just

25   note here at the outset, the defendants filed their answer to

1    the Consolidated First Amended Complaint Counterclaims and

2    Third-Party Claims, that's a document, that's the name of it,

3    on February 26th, 2012.  It's Docket 142.  The counterclaims

4    are filed in the same document as the answer and defenses, and

5    paragraphs from each section are numbered separately all

6    beginning with Paragraph 1 in each section.  In other words,

7    the document has three separate paragraphs bearing the number

8    of Paragraph 1.

9            For clarity, throughout my oral ruling, I will cite

10   to the portion of the filing that is at issue.  For example,

11   I'll refer to the answer portion of that document as the

12   answer at Paragraph X.  The counterclaim as the counterclaim

13   Paragraph X and the like, even though they're both part of the

14   same document, Document 142.

15           In January 2020 ReST and PatientTech █████████

16   ███████████████████████████████████████████████

17   ██████████████████████████████████████████████████

18   ██████████████████████████  pertains to alternative dispute

19   resolution and contains an arbitration provision.  I'm reading

20   here █████████████      It's Docket Number 19-1.

21           In relevant part ████████████████████████████████

22   ████████████████████████████████████████████

23   ████████████████████████████████████████████

24   ██████████████████████████████████████████████████

25        ████████████████████████████████████

1 ████████████████████████████████████████

2 ████████████████████████████████████████████

3 ███████████████████████████████████████

4 ███████████████████████████████████████████████

5 ████████████████████

6          On June 30, 2020, the parties entered into an

7 additional agreement known as the Ad Spend Agreement.  And the

8 defendants allege that the parties later entered into a third

9 verbal agreement that the defendants called a Supply

10 Agreement.

11          With respect ████████████ plaintiffs allege

12 defendants began ███████████████████████████████

13 ████████████████████ I'm citing here to the complaint at

14 Paragraph 7.  I guess I should have said Supply Agreement and

15 its references the allegations about that are found in the

16 counterclaim of Paragraph 8.  And I think I misstated it.  I

17 think the defendants contend and maintain that the Supply

18 Agreement was entered into around about the same time as the

19 Ad Spend Agreement.  On October 13, 2020, Purple filed suit

20 against ReST and PatientTech for ████████████████ and

21 infringement of its intellectual property rights.

22          And I will refer to that complaint and that action

23 throughout this oral ruling as Purple I.  And I'm citing here

24 to Docket 1, the original complaint, and Docket 111, the

25 defendants' motion to compel arbitration.

1          Purple later amended its complaint to add Robert

2     Golden, cofounder and CEO of PatientTech and CEO of ReST, as

3     an additional defendant.  That's Docket 117.

4          On October 20, one week after filing its initial

5     complaint, ReST -- excuse me -- Purple █████████████████████

6     █████████████████████████████████████████████████████

7     █████████████████████████████ I'm citing here the motion to

8     compel, Paragraph 4.  The next day, ReST filed a separate

9     complaint, a separate lawsuit that I'll refer to as Purple II,

10    naming as defendants Purple and several other board members

11    and officers ███████████████████████████ I'm citing here

12    the opposition to the motion at Paragraph 6; also Docket 157,

13    the defendants' reply memorandum, at Paragraph 2.

14          In Purple II, ReST alleged that Purple breached the

15    Ad Spend Agreement and the Oral Supply Agreement.  Notably

16    ReST ████████████████████████████████████

17          After receiving Purple's demand for mediation in

18    Purple I, the defendants agreed to mediate Purple's claims

19    ███████████████████ and negotiations began.  I'm citing here

20    Paragraph 5 of the motion.  Over the next month or so, the

21    parties corresponded regarding the proposed mediation.  Much

22    of this is set out in the motion at Paragraph 5 and

23    Docket 139, the opposition, in Paragraphs 8 through 10.

24    Mediation discussions continued until Purple failed to respond

25    to a November 17, 2020, e-mail from defendants concerning the

1    location and cost arrangements for the mediation.  Citing the

2    motion at Paragraph 5, the opposition, Paragraphs 10 and 14.

3    And I'll note that we have the correspondence that you've all

4    submitted helpfully at Docket 111-4 Exhibit A to the

5    declaration of counsel.  That's the e-mail.

6              On November 20, 2020, Purple moved to consolidate

7    Purple II into this action, Purple I.  I granted that motion

8    by order dated January 22nd, 2021.  It's Docket 114.  Excuse

9    me.  That's the motion.  My order is Docket 120.  ███████████

10   ████████████████████████████████████████████████████████████

11   █████████████████████████████████████████████████████████

12   ██████████████████████████████████████████████████████████████

13   ████████████████  Again, the order at Docket 120.  I'm reading

14   here from Page 5.

15             Between November 23rd and December 23rd, of 2020

16   while Purple's motion to consolidate was pending Purple filed

17   a number of other motions.  On November 23rd, Purple filed a

18   motion for temporary restraining order against the defendants,

19   which I later granted in part.  That's Docket 16 is the

20   motion, Docket 63, my order.

21             On December 2nd, Purple filed a motion to dismiss

22   certain of the claims in Purple II.  That's Docket Number 41

23   in the other case.  On December 21st, Purple filed a motion

24   for leave to amend its complaint at which the defendants did

25   not oppose.  That's motion Docket 76.  And on December 23rd,

1    Purple filed a motion for order to show cause related to

2    defendants' conduct respecting the temporary restraining order

3    that I entered.  That motion, Docket 77.

4         On multiple occasions while responding to Purple's

5    motions, defendants raised the arbitrability of the Purple I

6    claims ████████████████████████████████████  And

7    that's set out in the reply memorandum in Paragraphs 14

8    through 17.

9         Finally, during a hearing on January 6 of this

10   year, defendants notified Purple that more than 60 days had

11   now passed without reaching a settlement through mediation and

12   ██████████████████████████████  I'm citing here the

13   motion at Paragraph 6 and the opposition Paragraphs 43 and 44.

14        Purple responded six days later on January 12

15   arguing that the defendants had waived their right to

16   arbitration by among other things filing the Purple II action.

17   And this is described in Docket 111-5, which are the January

18   e-mails; the motion at Paragraph 7 and the opposition,

19   Paragraph 45.

20        In addition, Purple argued that to the extent that

21   the Purple I claims were subject to arbitration, the Purple II

22   claims must now also be arbitrated, as well.  That's also set

23   out in the January e-mails, Docket 111-5.  Based on Purple's

24   refusal to submit to arbitration defendants filed the instant

25   motion on May 25.  As I said, this year we received oral

1    argument from the parties and I took the motion under

2    advisement.

3            Turning to the Court's analysis, the parties here

4    do not dispute the existence or validity ███████████████

5    ████████████████████████████████████████████████████

6    ████████████████████████████████████████████████████████

7    ████████████████████████████████████████████████

8    ████████████████████████████████████████████████

9    ████████    Defendants further argue judicial proceedings

10   including trial should be stayed and in resolution of

11   arbitration.  Purple opposes the motion insisting that the

12   defendants have ███████████████████████████████████████████

13   ███  by manipulating the judicial process and engaging in

14   litigation conduct.

15           I will begin as always by focusing first on the

16   applicable legal standard that governs waiver to the right to

17   arbitration and then turn to Purple's arguments in favor of

18   waiver beginning with the legal standard.

19           Waiver by litigation conduct is presumptively for

20   the court to decide.  I'm citing here Born vs. Progrexion

21   Teleservices, one of my earlier decisions, 2020 Westlaw

22   4674236.  Courts in the 10th Circuit employ a six-factor test

23   called the Peterson test or Peterson factors to determine

24   whether a right to arbitration has been waived.  I'm citing

25   here the 10th Circuit decision In Re: Cox Enterprises from

1    2015.

2              Those factors are these:  First, whether the

3    party's actions are inconsistent with the right to arbitrate;

4    second, whether the litigation machinery has been

5    substantially invoked and the parties were well into

6    preparation of a lawsuit before the party notified the

7    opposing party of an intent to arbitrate; third, whether a

8    party either requesting arbitration enforcement close to --

9    either requested arbitration enforcement close to the trial

10   date or delayed for a long period before seeking a stay;

11   fourth, whether a defendant seeking arbitration filed a

12   counterclaim without asking for a stay of the proceedings;

13   fifth, whether important intervening steps, for example,

14   taking advantage of judicial discovery procedures not

15   available in arbitration, had taken place; and finally,

16   whether the delay affected, misled or prejudiced the opposing

17   party.  That's all in <u>Peterson vs. Shearson/American Express</u>,

18   a 1988 decision from the 10th Circuit.

19             In evaluating those factors, the 10th Circuit has

20   instructed that I am not to employ a mechanical process in

21   which each factor is assessed and can decide the greater

22   number of the favorable factors prevail.  That was explained

23   in <u>In Re: Cox</u>, Page 1116.  I am instead told that these

24   factors reflect certain principles that should guide courts in

25   determining whether a party has waived its right to

1      arbitration.  Here I'm citing <u>Hill vs. Ricoh Americas Corp.</u>,

2      from the 10th Circuit 2010.

3              And the 10th Circuit has further stated that an

4      important consideration in assessing waiver is whether the

5      party now seeking arbitration is improperly manipulating the

6      judicial process.  That's <u>In Re: Cox</u>, Page 1116.  An important

7      consideration is maintenance of the combined efficiency of the

8      public and private dispute resolution systems.  That's from

9      Hill at Page 774.

10             Here, it is Purple that bears the burden of

11     persuasion as it is the party claiming that the right to

12     demand arbitration has been waived.  Hill set out the standard

13     for the burden at Page 775.  In assessing whether that burden

14     has been satisfied I'm required to give substantial weight to

15     the strong federal policy encouraging the expeditious and

16     inexpensive resolution of disputes through arbitration.

17     That's a quote from Hill, Page 775.

18             For the reasons that I'm going to -- now about to

19     explain, I find that Purple's arguments are insufficient to

20     establish waiver.

21             I find the background in this case to be

22     significant in considering Purple's arguments in a proper

23     light.  Therefore, before engaging in a detailed analysis, I

24     will first review the parties' conduct and discuss Purple's

25     waiver arguments at a more general level to place them in the

1     appropriate factual context.  And then I will proceed to apply

2     the specific Peterson factors from the 10th Circuit.  So more

3     generally.

4             Immediately after filing this lawsuit Purple

5     invoked by reference █████████████████████████████████

6     ███████████████████████     I'm citing here the motion at Page 4.

7     As I've already stated that provision includes the 60-day

8     mediation period followed by mandatory arbitration of any

9     resolve, controversy or claim.  ██████████████████████████

10    ████████████     Defendants agreed mediation was appropriate, and

11    the parties engaged in preliminary negotiations.

12            Just weeks later Purple failed to respond to

13    defendants' communication concerning mediation arrangements,

14    citing Motion 5, at 5 in the opposition at Paragraphs 10 and

15    14.  Purple then proceeded to file multiple motions with the

16    court before the 60-day mediation period had concluded

17    including a motion seeking a temporary restraining order

18    against the defendants.  I'm citing here from the opposition

19    in Paragraphs 16, 20, 31 and 34 and the reply in Paragraph 11.

20    The defendants were required to oppose this and other motions

21    in order to avoid waiving their important rights.  20 days

22    after the mediation period expired, the defendants sought

23    arbitration pursuant to the same arbitration -- excuse me --

24    alternative dispute resolution provision that Purple first

25    invoked.  I'm citing the motion at Paragraph 6 and 10, the

14

```
 1    Opposition, Paragraphs 43 and 44.

 2                    ████████████████████████████

 3    ████████████████████████████████████████████████

 4    ████████████████████████████████████

 5    ████████████        I'm citing the opposition at Page 4 and Pages 19

 6    and 20.  And more specifically, Purple argues defendants are

 7    barred from invoking the arbitration clause of ███████████████

 8    they responded to Purple's various motions and complied with

 9    several court orders.  This is set out in the opposition,

10    Purple's opposition at Pages 16 through 19.

11                    Purple further argues defendants unjustifiably

12    delayed seeking arbitration even though they were required to

13    wait 60 days before doing so, and Purple's only filings

14    required extensive motion practice before and after the

15    mediation period had expired.  I'm citing the opposition at

16    Pages 19 and 20.

17                    Finally Purple argues defendants waived the right

18    to seek arbitration because they did so after filing a

19    separate lawsuit.  But I will observe that Purple itself

20    ████████████████████████████████████████████████████

21    ██████████████████████

22                    With the benefit of oral argument, it appears

23    Purple's position can be summarized into two general

24    contentions.  First, that the defendants invoked a litigation

25    machinery by filing Purple II and by participating in the
```

1    litigation of Purple I rather than filing a motion to stay in

2    Purple I at the earliest possible time; and second, that

3    defendants should have pursued the Purple II claims as a

4    counterclaim in Purple I and that filing those claims

5    separately as Purple II in the standalone lawsuit was

6    tantamount to improper manipulation of the judicial process.

7         I will briefly explain now in general terms why I

8    conclude that both of those arguments fail and then turn to

9    the Peterson facts.

10        First, as I will discuss in a moment, all of the

11   defendants' litigation conduct identified by Purple with the

12   exception of filing Purple II was in response to Purple's

13   various motions.  Thus, it was Purple and not the defendants

14   that invoked the litigation machinery in Purple I.  Defendants

15   were constrained by court orders and the Federal Rules of

16   Civil Procedure to respond to Purple's motions or otherwise

17   risk losing important legal rights.

18        Purple argues defendants could have prevented all

19   of this by filing a motion to stay at the very beginning of

20   the lawsuit.  But as defendants explained in oral argument and

21   implied in their briefs they had no reason to believe that a

22   stay was necessary because Purple immediately invoked the

23   60-day mediation period and then entered into good faith

24   mediation discussions with the defendants.

25        Second, Purple's arguments with respect to the

1    Purple II filing require me to make presumptions in its favor

2    where it has not carried the burden of persuasion.  Purple's

3    argument that filing Purple II constitutes an invocation of

4    litigation machinery with respect to the claims in Purple I

5    requires me to assume that the defendants could have brought

6    the Purple II claims in arbitration.  But Purple has failed to

7    establish this through legal argument or analysis. ▮▮▮▮

8    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

9    ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

10   ▮▮▮▮▮▮▮▮

11        Similarly, Purple's argument that the Purple II

12   claims should have been filed as counterclaims in Purple I

13   requires me to assume that the Purple II claims were

14   compulsory or otherwise required to be filed in Purple I, and

15   this would itself require an analysis of how to treat separate

16   but related contracts between related parties under Utah law.

17   And again, Purple has failed to invoke this analysis in its

18   papers.  Thus, at a general's level I find Purple's arguments

19   are unavailing.

20        With that contextual backdrop I'll now analyze

21   Purple's arguments more specifically under the Peterson

22   factors and the 10th Circuit standard.  I'll take up first --

23   well, Purple first argues that the Peterson factors compel a

24   finding of waiver.  Purple supports this argument with a list

25   with purported litigation conduct by the defendants.  And as I

1    said, that's found in their opposition brief Pages 16 through

2    19.  This list includes actions taken both in the instant case

3    and in Purple II.  The conduct at issue in Purple I includes

4    submitting an answer to Purple's complaint; refusing Purple's

5    request to consolidate Purple I and Purple II; opposing

6    Purple's motion to consolidate; opposing Purple's motion for a

7    TRO; attending a hearing on November 25th, 2020, that was our

8    TRO status and scheduling conference the night before

9    Thanksgiving; attending a hearing on December 11th, 2020,

10    which was the TRO hearing; and working with Purple to

11    schedule, prepare a schedule, rather, for Purple I; oh, also

12    filing a joint notice of preliminary injunction and not filing

13    an opposition to Purple's motion for leave to amend.

14          And I'll just say here briefly that it's curious

15    that Purple -- that the defendant -- Purple argues that the

16    defendants invoked the litigation machinery both by in

17    different instances opposing Purple's motions and in other

18    instances by failing to oppose Purple's motions.

19          Purple also complains that the defendants filed a

20    response to Purple's motion for an order to show cause and

21    then attended a hearing on that motion on January 6th of this

22    year.  Purple complains that the defendants requested

23    additional time to file a response to Purple's first amended

24    complaint and refused to attempt to mediate the case in Utah

25    as requested by Purple.

1         The specific conduct at issue in Purple II about

2    which Purple complains is the defendants' filing the lawsuit,

3    the Purple II complaint; working with Purple to create a

4    schedule for Purple II; refusing Purple's request to

5    consolidate Purple I and Purple II; opposing Purple's motion

6    to consolidate; and then serving initial disclosures in

7    Purple II.  So with that list in mind now I'll turn to the

8    Peterson factors beginning with the first factor, whether the

9    defendants' actions are inconsistent with the right to

10   arbitrate.

11        Purple argues defendants' actions that I've just

12   detailed in Purple I and Purple II are inconsistent with the

13   right to arbitrate by appearing willing to litigate this

14   dispute.  The argument is laid out on Page 16 of the

15   opposition brief.  According to Purple the defendants'

16   willingness to litigate is demonstrated by their consent to

17   jurisdiction and venue, development of a scheduling order,

18   appearances and argument at several hearings, and submission

19   of various filings that I've already recited to the Court.

20        Defendants disagree contending that aside from the

21   instant motion, that is the motion to compel arbitration, any

22   and all substantive litigation conduct on their part resulted

23   from actions they were required to perform under this court's

24   orders or because filings by Purple triggered mandatory

25   response deadlines under the Federal Rules of Civil Procedure.

1    This argument is detailed in the reply at Page 4 and again at

2    Page 10.

3             Defendants argue they took these and other actions

4    such as attending hearings on Purple's various motions simply

5    to protect their rights.  This is at the reply Page 5.  The

6    defendants further maintain they have acted consistently with

7    the right to arbitrate at all times by including -- excuse

8    me -- including by asserting that right multiple times until

9    the 60-day mediation period expired, and they were permitted

10   finally to request arbitration ████████████████████  This

11   is the reply Paragraphs 14 through 18 and at Page 10.

12            And I agree with the defendants.  The defendants'

13   actions in this case are not inconsistent with the right to

14   arbitrate.  Citing language from the 10th Circuit:  A party

15   considering arbitration must do all it could reasonably have

16   been expected to do to make the earliest feasible

17   determination of whether to proceed judicially or by

18   arbitration even if that means just mentioning the prospect of

19   arbitration.  That is a quote from Strong vs. Davidson, a 2018

20   decision from the 10th Circuit.  ████████████████████████

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ████████████████████████████████████

24            Prior to that time, the most defendants could

25   reasonably do is mention the prospect of arbitration in the

1    language of the 10th Circuit and reserve their right to invoke

2    arbitration, if necessary at the appropriate time.  Again,

3    referring to Strong at Page 682.

4              And this is exactly what defendants did.

5    Specifically defendants raised the right to arbitration of

6    Purple's claims in their answer to Purple's amended complaint,

7    in their opposition to Purple's motion to consolidate and at

8    the January 6, 2021, hearing on Purple's motion for an order

9    to show cause.  This is all detailed in the reply memoranda at

10   Paragraphs 14 through 18.  Still Purple argues defendants

11   should have filed a motion to stay earlier in the case.

12             But the fact that the defendants did not

13   immediately file a motion to stay is not itself inconsistent

14   with pursuing its right to arbitrate, especially when the

15   parties agreed to mediate and negotiations were already

16   underway.

17             As to the mediation Purple argues defendants acted

18   inconsistently with the right to arbitrate by imposing

19   numerous hindrances on the mediation process.  That argument

20   found on Page 16 of the opposition.  I find it unpersuasive.

21   ████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████

23   ███████████      That is where the parties were unable to resolve

24   their differences through mediation.

25             Moreover, Purple imposed its own hindrances on the

1    mediation process.  Purple failed to respond to defendants'

2    November 17, 2020, e-mail attempting to negotiate the location

3    and cost arrangements for the mediation.  And then Purple

4    proceeded to file four motions over the next month including

5    an application for a temporary restraining order.  For these

6    reasons I find defendants have not acted inconsistent with

7    their right to arbitrate and find that this factor weighs

8    against waiver.

9          Second, I find that defendants have not

10    substantially invoked the litigation machinery or waited until

11    the parties were well into preparation of the lawsuit before

12    notifying Purple of their intent to arbitrate.  This is course

13    the Peterson factor Number 2.

14          Purple points to the previously mentioned list of

15    litigation conduct and argues that defendants have

16    substantially invoked the litigation machinery.  This argument

17    is found on Pages 17 and 18 of the opposition.  And while I

18    agree that defendants participated in the litigation prior to

19    requesting arbitration I part ways with Purple on the issue of

20    whom was invoking the litigation machinery.

21          Purple filed four motions in this case and one in

22    Purple II before defendants requested arbitration.  Defendants

23    responded to those motions, not to try their luck at

24    litigation before deciding whether or not to arbitrate but

25    merely to preserve their rights and comply with court orders

1    and applicable rules.  This argument is well laid out I think

2    in reply in Pages 4 and 5 and again on Page 10.  Indeed, the

3    defendants' first substantive motion filed in either case is

4    this motion, the motion to compel arbitration.  I therefore

5    find the defendants did not substantially invoke the

6    litigation machinery.

7            Moreover, defendants explicitly raised the issue of

8    ███████████████████████████████████████████████████████

9    less than two months after the lawsuit was filed.  This notice

10   came early in the case before the defendants answer Purple's

11   amended complaint, well before they filed any motions with the

12   Court and before any discovery requests were tendered by the

13   parties.  Defendants' request for arbitration came just over

14   one month, I think it's just under one month, after the 60-day

15   mediation period expired.

16           Further, aside from defendants' affirmatively

17   notifying Purple of their intent to arbitrate, Purple was

18   already on notice pending arbitration from the very beginning

19   of this case, as defendants repeatedly point out.  It was in

20   fact Purple that was the first to invoke the arbitration --

21   excuse me --███████████████████████████████████████████

22   ██████████████████ just one week after filing its own lawsuit.

23           ████████████████████████████████████████████████

24   ████████████████████████████████████████████████

25   ████████████████████████████████████████████████

1    Purple was clearly on notice before any litigation conduct
2    took place by either party that these claims were likely to be
3    arbitrated if the mediation was unsuccessful.
4         In my judgment, defendants have not substantially
5    invoked the litigation machinery, the parties were not well
6    into preparation of the lawsuit before defendants notified
7    Purple of their intent to arbitrate, and Purple had notice
8    early in the case.  And for all of those reasons that factor
9    weighs, that Peterson factor weighs heavily against waiver.
10         The third Peterson factor asks whether a party
11   either requested arbitration enforcement close to the trial
12   date or delayed for a long period before seeking a stay.  And
13   here, of course, no trial date had been set, no discovery had
14   occurred, and defendants did not delay for a long period
15   before seeking a stay.  Thus, I find this factor also
16   favors -- excuse me -- weighs against a waiver.
17         The fourth Peterson factor asks whether a defendant
18   seeking arbitration filed a counterclaim without asking for a
19   stay of the proceedings.  Defendants moved to stay proceedings
20   on January 19th, 2021.  It's Docket 111, in the same motion I
21   think as the motion to consolidate.  On February 26th, 2021,
22   defendants filed an answer to Purple's consolidated first
23   amended complaint which included the Purple II claims as
24   counterclaims in this action.  It's Docket 142.  These
25   counterclaims were filed after defendant sought a stay of the

1    proceedings.  Nevertheless, Purple still argues that this

2    factor supports a finding of waiver.  As I previously stated,

3    Purple's argument that defendant should have originally filed

4    the original Purple II claims as counterclaims of Purple I

5    requires me to make legal presumptions in Purple's favor.  But

6    it is Purple that bears the burden of persuasion and has not

7    provided supporting arguments or analysis to show that the

8    Purple II claims were compulsory in nature.  To the extent

9    that is relevant under this factor I incorporate my earlier

10   discussion here.  And now I'll turn to Purple's primary

11   arguments relating to this factor as articulated in its

12   papers.

13         In Purple's view the filing of Purple II amounts to

14   defendants filing a counterclaim before seeking a stay.  This

15   argument is laid out on Page 19 of the opposition memorandum.

16   Specifically Purple argues the allegations and claims in

17   Purple II are substantially similar to the facts and law at

18   issue in this case and the consolidation of Purple I and

19   Purple II makes the Purple II complaint essentially a

20   counterclaim.

21         Defendants oppose this argument on the grounds that

22   its counterclaims were filed after its motion seeking a stay,

23   and its pre-consolidation position was that the Purple II

24   complaint ███████████████████████████████████████████████

25   █████████████████████████████████████████████████████

1    subject to arbitration unlike the claims in Purple I.  All of

2    that is set out in the motion at Page 11.  The reply in

3    Paragraphs 3 and 4 and further on Page 11.

4         Purple provides no authority, and I am not aware of

5    any, for treating defendants' filing of a separate lawsuit as

6    a counterclaim for purposes of assessing waiver under the

7    Peterson factors, especially where the defendants had a good

8    faith basis to believe the secondary lawsuit deals with

9    separate contracts, not subject to the arbitration provisions

10   at issue here.  Still as Purple points out, I did find the two

11   cases involve substantially similar allegations and share

12   facts and legal issues sufficient to warrant consolidation.

13        In addition, the Purple II claims which were later

14   reasserted as counterclaims in defendants' answer were filed

15   nearly three months before defendants moved for a stay.  And

16   can given this unique factual scenario, I find Purple's novel

17   argument here warrants some additional analysis, so bear with

18   me.

19        The 10th Circuit cautions that the Peterson factors

20   are not meant to be applied mechanically, and the list is

21   nonexclusive.  Instead, the Peterson factors in the words of

22   the 10th Circuit, quote, reflect certain principles that

23   should guide courts in determining whether it's appropriate to

24   deem that a party has waived its right to demand arbitration.

25   That's a quote from Hill at Page 773.  With this in mind I

1    looked to the underlying principles identified by the

2    10th Circuit in that case to determine whether defendants'

3    filing of Purple II supports a finding of waiver under the

4    fourth Peterson factor.

5          In Hill the 10th Circuit articulated several

6    principles the court should consider in resolving the issue of

7    waiver and then went on to identify the Peterson factors that

8    were associated with each principle.  For the fourth Peterson

9    factor the 10th Circuit identified an underlying governing

10   principle that, quote:  A party should not be permitted to

11   demand arbitration when it has previously waived its right to

12   arbitrate, where a waiver is an intentionally relinquishment

13   or abandonment of a known right.  That discussion is on

14   Page 773 of the Hill decision.  The court went on to say:  A

15   parties' conduct may evince such an intentional

16   relinquishment.  Filing a counterclaim without seeking a stay

17   for arbitration is one way that a party can indicate an

18   intentional relinquishment of the right to arbitrate.

19          Applying that framework here, the question becomes

20   whether filing Purple II indicates defendants' intentional

21   relinquishment of its right to arbitrate.  I find that it does

22   not.  Despite consolidation, defendants have consistently

23   maintained from the outset that the Purple II claims ███

24   ███████████████████████████████████████████ and that the

25   Purple I claims were subject to arbitration where the

1    Purple II claims were not.  This argument is more fully laid

2    out in the reply in Paragraphs 3 and 4 and Pages 10 and 11.

3    It does not follow that the defendants intentionally

4    relinquished ███████████████████████████████████████

5    ████████████████████████████████████████████████

6    ███████████████████████████████████████

7           Further, even while Purple II is moving forward,

8    defendants repeatedly raised the arbitration for the claims in

9    Purple I.  Still the concept of waiver is not limited to

10   intentional relinquishment of a known right, and the

11   10th Circuit suggests that a party may also relinquish the

12   right negligently.  And that is explained also in Hill,

13   Page 773.  But here the defendants were not negligent in

14   filing a separate lawsuit where they had a good faith basis to

15   do so, and it was permitted under the rules.  For these

16   reasons I conclude that the Purple II filing does not amount

17   to a filing of a counterclaim before seeking a stay for

18   purposes of the fourth Peterson factor.

19          The fifth Peterson factor asks whether an important

20   intervening -- excuse me -- whether important intervening

21   steps, for example, taking advantage of judicial discovery

22   procedures not available in arbitration had already taken

23   place before a party seeks to enforce arbitration.

24          Purple argues defendants' actions identified above

25   with respect to Purple I and Purple II, the litigation

1    conduct, constitutes important intervening steps that reflect

2    defendants' desire to take advantage of the procedures

3    available in litigation rather than arbitration.  This is laid

4    out in the opposition at page 19.  But as I previously noted,

5    all of defendants' conduct in Purple I was in response to

6    motions filed by Purple or orders issued by the Court.  Where

7    defendants took no affirmative action in the case it does not

8    follow that the defendants were attempting to take advantage

9    of litigation procedures not available in arbitration.

10           Further, this factor is primarily concerned with

11   the substantial use of discovery procedures as explained in

12   Hill, Page 774, which had not occurred in this case or in

13   Purple II before it was consolidated.  And for these reasons

14   this factor also weighs heavily against waiver.

15           The sixth and final Peterson factor asks whether

16   the opposing party was affected, misled or prejudiced by the

17   opposing party's delay in seeking arbitration or a stay of the

18   proceedings.

19           Purple argues it was misled by defendants' seeming

20   willingness to proceed with litigation, and explains this on

21   Page 20 of its opposition.  Purple also argues defendants

22   should have demanded arbitration from the beginning of the

23   lawsuit or filed a motion to stay as discussed previously,

24   thereby preventing waste of time and resources on ancillary

25   issues, such as scheduling orders and appearing at hearings.

1          Defendants contend Purple has suffered no prejudice

2     as a result of the defendants' actions because, first, ████

3     ██████████████████████████████████████████████████████

4     ██████ and knew the claims would go to arbitration after the

5     60-day period absent successful mediation first; second,

6     Purple was on notice that defendants asserted their claims

7     were subject to arbitration; and third, this case is in its

8     very early stages.

9          Again I agree with the defendants.  Any prejudice

10    to Purple is at most minimal.  First, based on the actions

11    identified in Purple's opposition defendants' seeming

12    willingness to proceed with litigation was caused almost

13    entirely by Purple's own motion practice.  Second, while

14    Purple has certainly incurred costs thus far in the lawsuit

15    Purple has suffered no prejudice resulting from a delay in

16    defendants seeking arbitration and a stay.  Purple filed this

17    action on October 13th last year and almost immediately

18    demanded mediation. ████████████████████████████████████

19    ██████████████████████████████████████████████████████████

20    ████████████████████████ which means that December 19th of

21    last year was the earliest date defendants could have sought

22    arbitration.

23          Defendants exercised their right 20 days later on

24    January 8th of this year by formally requesting arbitration of

25    Purple's claims.  From the time Purple filed its initial

                                                              30

1    complaint to the time Purple sought arbitration it was less

2    than three months.

3          Further, Purple was on notice that defendants would

4    likely request arbitration because Purple first invoked the

5    dispute resolution provision requiring it, and defendants

6    raised the issue at least three times prior to making their

7    formal request.  These were detailed in the reply memorandum

8    Paragraphs 14 through 17.

9          Since defendants did not delay in seeking

10    arbitration and a stay did not mislead Purple as to their

11    intent to do so, Purple suffered no prejudice under this

12    factor and it weighs against waiver.

13          So having concluded that each Peterson factor

14    weighs against the defendants' waiver of arbitration I'll now

15    turn to Purple's argument that the defendants' actions

16    constitute an improper manipulation of the judicial process.

17    And for the reasons I'm about to explain I conclude that the

18    defendants have not improperly manipulated the judicial

19    process.

20          Purple argues defendants have improperly

21    manipulated the judicial process by waiting to see how the

22    court would rule on Purple's motion for TRO before deciding to

23    seek arbitration.  That argument is laid out on Page 14 of the

24    opposition.  And I agree that waiting to see how a case

25    proceeds in district court before deciding to seek arbitration

1   can be evidence of manipulation of the judicial process.  And

2   in Hill, the 10th Circuit said that other signs of

3   manipulation could include using the courts to obtain

4   discovery unavailable in arbitration or delay in suggesting

5   arbitration until substantial discovery have been completed or

6   until the eve of trial.  But of course none of these are

7   complaints made by Purple here.

8          According to Purple defendants' actions are

9   analogous to those found in two cases and cited by the

10  10th Circuit as examples of improper manipulation of the

11  judicial process.  The first is Hooper vs. Advance America in

12  the Eight Circuit, a 2009 decision.  In Hooper the defendant

13  moved to dismiss the complaint on several grounds and

14  purported to reserve the right to enforce the applicable

15  arbitration clause if the court denied its motion to dismiss.

16  Only after the defendants' motion was denied did it move to

17  stay the case and compel arbitration.  Similarly in

18  Khan vs. Parsons Global, a case from the DC Circuit in 2008,

19  the defendant there responded to the complaint by filing a

20  single motion to dismiss or alternatively for summary judgment

21  or to compel arbitration.  The District Court granted summary

22  judgment, and the DC Circuit later reversed.  Only on remand

23  in the District Court after its summary judgment motion was

24  unsuccessful did the defendant move to compel arbitration.

25          The defendants' persuasively argued that Hooper and

1    Khan are distinct from the circumstances in this case because,

2    first, they deal with affirmative motions by defendants

3    seeking substantive dispositive relief from the Court; and

4    second, these defendants only invoked their rights to

5    arbitration after their earlier requests for relief were

6    denied.  I agree with defendants that this case is distinct

7    from both Hooper and Khan.  It was Purple and not the

8    defendants who sought relief from the court by filing a motion

9    for TRO.  Defendants' motion to compel arbitration was their

10   first affirmative substantive request for relief in this case.

11   I find the significant because it means defendants' motion was

12   not an attempt to, in the language of the 10th Circuit again,

13   take a Mulligan after an earlier request for relief progressed

14   unfavorably.

15        Moreover, the ████████████████████████████████

16   ██████████████████████████████████████████

17   ████████████████████████████████████████████

18   ██████████████████████████  And the defendants raised the

19   issue of arbitration multiple times before then suggesting

20   that they were waiting for the expiration ████████████████

21   ████████████████████████████████████████████

22   This was described persuasively I thought in the reply in

23   Paragraphs 14 through 17.  Unlike Hooper and Khan where the

24   parties were waiting to see how the case was going in court

25   before deciding whether it would be better off there or in

33

1    arbitration, the defendants here were not taking a

2    wait-and-see approach.

3           Similarly I'm not persuaded defendants' filing of

4    Purple II was evidence of manipulating the judicial process as

5    Purple suggests.  Aside from its arguments discussed

6    previously, Purple argues defendants filing Purple II was

7    another attempt to, quote, see how litigation develops before

8    invoking the right to arbitrate.  That's language from Page 16

9    of the opposition.

10          But defendants' position was consistent from the

11   outset, that Purple I was subject ███████████████████████████

12   ████████████████████████████████████████████    Since

13   defendants raised the issue of arbitration multiple times in

14   Purple I prior to invoking the arbitration clause, I will not

15   infer defendants were waiting on anything other than the

16   expiration of the 60-day requirement required to do so.

17          Again, the facts here are not consistent with an

18   inference that defendants were waiting to invoke the

19   arbitration clause until they saw how Purple II would play

20   out.  Therefore, I conclude defendants did not waive their

21   right to arbitrate by improperly manipulating the judicial

22   process.

23          So after consideration of the Peterson factors and

24   relevant guidance from the 10th Circuit on balance I find and

25   conclude that defendants have not waived their right to

1    arbitrate.  And that leaves us with another question to

2    answer.

3            I'll now turn to the arbitrability of Purple's

4    claims and Purple's counterclaims.  Where the American

5    Arbitration Association or AAA, triple A rules, have been

6    incorporated into an agreement, arguments concerning the

7    arbitrability of a dispute must be submitted to the

8    arbitrator.  This is language from Dish Network, LLC, vs. Ray,

9    10th Circuit 2018.  Rule 7(a) of the AAA Commercial

10   Arbitration Rule state, quote:  The arbitrator shall have the

11   power to rule on his or her own jurisdiction, including any

12   objections with respect to the existence, scope or validity of

13   the arbitration agreement or to the arbitrability of any claim

14   or counterclaim, end quote.

15           But a party cannot be required to submit to

16   arbitration any dispute which it has not agreed to submit.

17   That's a quote from Jacks vs. CMH Homes, 10th Circuit 2017.

18   In their briefs the parties agreed that if the court orders

19   arbitration it should do so for all claims in the consolidated

20   action, which includes both Purple's claims and the

21   defendants' counterclaims.  This was discussed in the

22   opposition at Page 20 and in the reply at Page 3 Footnote 2.

23           But during oral argument I asked the parties to

24   submit supplemental brief about the applicability of the

25   motion to compel arbitration to the claims against the

1    individual third-party defendants in Purple II ████████

2    ████████████████          In its supplemental brief defendants

3    appear to argue the claims against Purple should also be

4    stayed pending arbitration.

5          Since Purple was ████████████████ find that

6    Purple's claims against the defendants and the defendants'

7    claims against Purple must be submitted to arbitration with

8    the arbitrator ruling on any objection relating to the claims

9    against Purple.

10         With respect to the third-party defendants, Purple

11   argues these individuals cannot be forced to arbitrate the

12   claims against them because they are ████████████████

13   ████████████████████████████████████████

14   This is in the supplemental brief from Purple at Page 3.  And

15   while there are circumstances where a non-signatory can be

16   bound by an arbitration agreement Purple argues that those

17   exceptions do not apply here.  And I'll point to Inception

18   Mining vs. Danzig, 311 F.Supp. 3rd 1265 from this district in

19   2018 discussing those exceptions.

20         Defendants do not address those exceptions beyond

21   preserving their right to assert them and requesting the

22   opportunity to brief them if I find such analysis is necessary

23   to resolving the motion.  This is in the defendants'

24   supplemental response at Page 2 Footnote 1.

25         I find such analysis is unnecessary where as here

1    defendants also submit that the immediate issues can be

2    resolved by a stay.  Accordingly I conclude the third-party

3    defendants ████████████████████████████████████████████

4    ██████████████████████████████████████

5              This leaves one final issue to be resolved, what to

6    do with the claims against the third-party defendants while

7    the other claims are in arbitration.  And when some claims are

8    not arbitrable, the Court has inherent discretion to determine

9    whether it should stay the entirety of the proceedings pending

10   arbitration or stay only that portion of the proceeding that

11   is arbitrable.  That's a quote from Hill.  Where the court

12   went on to say:  That the trial court must consider the

13   maintenance of the combined efficiency of the public and

14   private dispute resolution systems.

15             In their supplemental briefing -- in its

16   supplemental briefing, rather, Purple argues that the court

17   should allow the claims against the individuals to proceed in

18   parallel with the arbitration of Purple's claims.  Defendants

19   disagree arguing that the claims against the individuals

20   should be stayed pending resolution of the arbitration.

21             Given what I see is a substantial possibility if

22   not a probability that the arbitration will resolve all of the

23   claims at issue in the consolidated cases including those

24   against the individual defendants I agree with the defendants

25   and find that efficiency favors staying the claims against the

1     individual third-party defendants while the other claims are

2     proceeding in arbitration.

3              For all of those reasons the defendants' motion is

4     granted.  The Court orders first, Purple's claims against

5     defendants and defendants' claims against Purple must be

6     ███████████████████████████████████████████████████████████

7     second, the remaining claims against third-party defendants

8     Gary D. DiCammillo, Adam Gray, Joseph Megibow, Terry Pearce,

9     Tony Pearce and the John Does be stayed pending resolution of

10    the arbitration provisions -- or proceedings rather; and

11    finally that the parties file a status report with the court

12    no later than 14 days following a final decision or resolution

13    of the arbitration proceedings.

14             Counsel, thank you for your patience during that

15    lengthy ruling.  Reserving whatever objections you may have

16    are there any questions either of you have about that ruling?

17             Mr. Magleby?

18             MR. MAGLEBY:  No questions from me, Your Honor.

19             THE COURT:  Thank you.  Mr. Fowler?

20             MR. FOWLER:  No, Your Honor.  I think that was very

21    clear.  Thank you.

22             THE COURT:  All right.  I appreciate again all of

23    your patience.  We'll be entering the docket text order or

24    minute entry as I said referring to the transcript of this

25    proceeding as the court's ruling and the basis for the ruling.

1    And we'll likely administratively close the case until we get

2    further notice from you.  But while it's administratively

3    closed, of course, either of you are welcome to file or seek

4    additional relief if it's appropriate in view of the court's

5    ruling.

6              Again, thank you for your time and your patience.

7    I wish you and your clients well in the upcoming arbitration.

8              Court will be in recess.

9              MR. MAGLEBY:  Thank you, Your Honor.

10             MR. FOWLER:  Thank you.

11         (Whereupon, the court proceedings were concluded.)

12                       *   *   *   *   *

13

14

15

16

17

18

19

20

21

22

23

24

25

1   STATE OF UTAH          )

2                          ) ss.

3   COUNTY OF SALT LAKE  )

4           I, KELLY BROWN HICKEN, do hereby certify that I am

5   a certified court reporter for the State of Utah;

6           That as such reporter, I attended the hearing of

7   the foregoing matter on August 31, 2021, and thereat reported

8   in Stenotype all of the testimony and proceedings had, and

9   caused said notes to be transcribed into typewriting; and the

10  foregoing pages number from 3 through 39 constitute a full,

11  true and correct report of the same.

12          That I am not of kin to any of the parties and have

13  no interest in the outcome of the matter;

14          And hereby set my hand and seal, this ____ day of

15  _____ 2021.

16

17

18

19

20          _____
                    KELLY BROWN HICKEN, CSR, RPR, RMR
21

22

23

24

25