**AMERICAN ARBITRATION ASSOCIATION**
**Case No. 01-21-0016-3751**

| | |
|---|---|
| PURPLE INNOVATION, LLC, | ) |
| | ) |
|     Claimant and Cross-Respondent, | ) |
| | ) |
|     vs. | ) |
| | ) |
| RESPONSIVE SURFACE TECHNOLOGY, | ) |
| LLC; PATIENTECH, LLC; and ROBERT | ) |
| GOLDEN, | ) |
| | ) |
|     Respondents and Counterclaimants. | ) |
| | ) |
| _____ | ) |

**FINAL AWARD**

I, THE UNDERSIGNED ARBITRATOR ("**Arbitrator**"), having been designated in accordance with the arbitration agreement in the Master Vendor Supply and Services Agreement entered into as of January 13, 2020 ("**MSA**"), by Claimant Purple Innovation, LLC and Respondents Responsive Surface Technology, LLC and PatienTech LLC, as further described below, and having duly heard the proofs and allegations of the parties, do hereby issue this FINAL AWARD as follows:

## I.    THE INTERIM AWARD AND REMAINING ISSUES

1.    This arbitration was filed in September 2021 by Claimant Purple Innovation, LLC ("**Claimant**" or "**Purple**") against Respondent Responsive Surface Technology, LLC ("**ReST**"); Respondent PatienTech LLC ("**PatienTech**"), the corporate parent of ReST; and Respondent Robert Golden, the CEO of both ReST and PatienTech (collectively, the "**Parties**").[1]

2.    The Interim Award of December 15, 2023 ("**Interim Award**") resolved all issues of liability and damages, except for allocation of fees and costs and pre and post-award interest. I incorporate the Interim Award by reference and repeat only key points here.

---

[1] All defined terms have the same meaning as my Interim Award of December 15, 2023. As noted in paragraph 3 of the Interim Award, Mr. Golden did not sign the MSA and is a respondent solely as to Purple's claims for trademark and trade dress infringement. Thus, "Parties" and "Respondents" include Mr. Golden only in contexts where he is relevant.

3.      The Interim Award awarded a total of $1,988,783 to Purple on its Revenue Share, trademark infringement, and trade dress infringement claims, and denied Purple's other claims. (Interim Award, ¶ 268.)  The Interim Award denied all of Respondents' counterclaims, except that it awarded $5,670.32 to ReST on its Ad Spend Agreement counterclaim.  (*Id.*, ¶ 269.)

4.      The Interim Award stated that I was inclined to deny interest, on the ground that the Parties failed to address interest in their post-hearing submissions, even though Procedural Order No. 29 stated that the Interim Award would decide this issue.  (Interim Award, ¶¶ 228-30.) However, I provided the Parties with an opportunity to address interest in their further submissions on fees and costs, provided that they explained "why this issue was not addressed previously and why there is good cause to address it now."  (*Id.*, ¶ 274.)

5.      Pursuant to Rule 40 of the Commercial Arbitration Rules of the American Arbitration Association (2013) (the "**AAA Rules**"), the Interim Award reopened the hearing for the limited purpose of further proceedings on fees and costs and pre and post-award interest.  The Parties made concurrent submissions on these issues on January 5, 2024.  The Parties made further submissions in response to my requests, as further described in Section III.A below.

6.      On February 8, 2024, I held a videoconference hearing at which counsel for both sides presented argument concerning fees and costs as well as interest.  The Parties confirmed at the end of that hearing that they had nothing further to submit.  I declared the hearing closed on February 10, but reopened the hearing on February 12 to ask Purple to clarify the amount of attorneys' fees it seeks.  After receiving further comments, I declared the hearing closed pursuant to AAA Rule 39 on February 15, 2024.

7.      I set forth below my rulings on interest and allocation of fees and costs.  I conclude by summarizing my rulings on all requests for relief.

## II.    CLAIMANT'S REQUEST FOR INTEREST

### A.      Prior Submissions and Orders Regarding Interest

8.      As noted in the Interim Award, both sides sought an award of interest in their initial pleadings.  (Interim Award, ¶ 228; *see* Purple's December 30, 2021, Statement of Claims at 59; Respondents' July 2, 2023, Second Amended Statement of Counterclaims at 12.)  However, Purple did not specify the interest rate or relevant period, or provide supporting calculations or legal authorities in its pleadings or its prehearing briefs.  Purple also did not present evidence or argument about interest at the merits hearing.  Respondents' damages expert, Barbara Luna,

2

mentioned the federal bankruptcy rate of interest in her expert report, but Purple's damages expert did not address interest in his expert reports or his hearing testimony.  Further, neither side addressed interest during closing arguments.

9.     On the last day of the merits hearing (August 11, 2023), I noted that I would issue a partial award first that decided the merits, including interest, which would be followed by separate submissions on fees and costs.  (Day 10 Tr. at 257:20 258:2.)  I confirmed this procedure in Procedural Order No. 29, which stated in paragraph 2:

> As noted in the attached Procedural Timetable, the Parties have requested a Partial Award that will cover all issues of liability, damages and interest, with a Final Award on allocation of fees and costs to follow, after submissions on fees and costs.

10.     Consistent with the Parties' request for two separate awards, Procedural Order No. 29 attached a timetable that provided for two separate sets of post-hearing submissions:

- A first set of post-hearing submissions that would be followed by an interim award "on liability, damages and interest (all issues other than allocation of fees and costs)"; and

- A second set of post-hearing submissions "on allocation of fees and costs," followed by a "Final Award, including allocation of fees and costs."

11.     Procedural Order No. 29 was clear that arguments on interest should be made in the first set of post-hearing submissions, not the second.  The Parties, however, failed to address interest in their first set of post-hearing submissions in September and October 2023.  Thus, I stated in the December 15 Interim Award that I was inclined to "deny the Parties' claims for interest, in view of their failure to provide supporting calculations or legal authorities."  (Interim Award, ¶ 230.)  I nevertheless stated that the Parties may address interest in their further submissions on costs, but emphasized that "any request for an award of interest should explain why this issue was not addressed previously and why there is good cause to address it now."  (*Id.*, ¶ 274.)

12.     Purple asserts in its January 5, 2024 submission ("**Purple's January 5 submission**") that it is entitled to pre-award interest on Revenue Share damages at the 10% Utah statutory rate, and on trademark and trade dress infringement damages at the Federal Short-Term Rate plus 3%.  Purple relies on a "Rebuttal Expert Report" of its damages expert, Richard Hoffman, that it included with its submission, which calculates interest using the "mid-point" of each period.

13.     Purple argues that there is good cause to award interest despite its failure to address this issue in its first set of post-hearing submissions for two reasons.  First, Purple asserts that Rule 54 of the Utah Rules of Civil Procedure (which is the same as the Federal Rules of Civil Procedure) states that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings."  Purple cites an unpublished Tenth Circuit decision that held that the trial court did not "abuse its discretion" by granting a post-trial motion to award prejudgment interest, even though the plaintiff did not previously request interest.[2]

14.     Second, Purple asserts that it did not waive its right to request interest, given that it made a claim for interest in its Statement of Claim.  Purple asserts that it did not present specific interest calculations in its first set of post-hearing submissions because it "could not calculate the prejudgment interest owed to it until the Arbitrator ruled on its claims and damages."  Purple contends that the hearing transcript shows that it "always understood and intended that it was only *after* the hearing and the interim award that the parties would know the ground for fees and interest, and how to calculate them."  (Purple's January 5 submission at 9 & n.6 (emphasis in original).)

15.     I deny pre-award interest but grant post-award interest for the reasons below.

**B.     Pre-Award Interest**

16.     I find that Purple has not shown good cause to grant pre-award interest for several reasons.  ***First***, as discussed above and noted in the Interim Award, Procedural Order No. 29 was clear that arguments on interest should be made in the first set of post-hearing submissions that preceded the partial award "on liability, damages, and interest," and that the second set of post-hearing submissions would be limited to "allocation of fees and costs."  Despite that fact, Purple's first set of post-hearing submissions included no argument at all regarding interest.  Purple did not explain what interest rate applies or when interest began to accrue, nor did it provide calculations of the amount of pre-award interest it contends is due.  Given the absence of any argument on pre-award interest, the Interim Award could have denied any such award on the ground that Purple had failed to support it.

---

[2]  Purple's January 5 Submission at 8, *citing Dalal v. Alliant Techsystems, Inc.*, 72 F.3d 137, *6 (10th Cir. 1995) (unpublished).  Purple also cites two Kansas district court decisions that relied on *Dalal*, *All Brands Dist. LLC v. Vital Pharm. Inc.*, 2022 WL 3646274, *7 (D. Kan Aug. 24, 2022); and *Rajala v. Gardner*, 2014 WL 4840771, *4 (D. Kan. Sept. 29, 2014).

17.    ***Second,*** the procedures in this arbitration are governed by the AAA Rules, and not by Rule 54 of the Utah or Federal Rules of Civil Procedure.  AAA Rule 47 states, in relevant part (emphasis added):

**(a)**    The arbitrator ***may*** grant any remedy or relief that the arbitrator deems just and equitable and within the scope of the agreement of the parties, including, but not limited to, specific performance of a contract.

\* \* \*

**(d)**    The award of the arbitrator(s) ***may*** include:

   **i.**    interest at such rate and from such date as the arbitrator(s) may deem appropriate;

18.    Rule 47 makes clear that an award of interest is discretionary.  It does not require such an award when a party failed to submit arguments on interest by the deadline set by procedural orders in the arbitration.  Further, even if Utah Rule 54 were assumed to apply, the cases cited by Purple merely find that a court has ***discretion*** to grant a post-trial motion to award interest when the party did not previously request interest.  They do not hold that a court ***must*** award interest, even when a party fails to comply with the deadline to submit evidence and argument on interest.

19.    ***Third***, Purple's argument that it "could not calculate the prejudgment interest owed to it until the Arbitrator ruled on its claims and damages" does not excuse its failure to address interest in its first set of post-hearing briefs.  Procedural Order No. 29 was clear that this subject should be addressed in the first set of post-hearing briefs, not the second set.  If Purple believed that it could not address this subject in its first set of briefs, it should have sought relief from that requirement before submitting those briefs, instead of waiting until after the Interim Award had issued.  Indeed, Procedural Order No. 29 included the following warning in paragraph 3:

   All deadlines shall be strictly enforced.  Any requests for an extension shall be made as far in advance of the deadline as possible, after conferring with the other side, and shall require a strong showing of good cause.

20.    Further, Purple could have presented argument on the interest rate, the period of accrual, and detailed interest calculations in its first set of post-hearing submissions.  Purple also could have asked its damages expert to address interest in his expert reports and during his hearing testimony.  Indeed, expert reports usually address pre-award interest as part of damages.  The precise amount of interest may need to be updated to match the actual damages awarded, but this is a simple mathematical calculation once the interest rate and dates of accrual are determined.

Purple, however, presented no argument or evidence on the interest rate or accrual dates before the Interim Award issued.

21.    **Fourth**, the hearing transcript does not support Purple's assertion that it "always understood and intended that it was only *after* the hearing and the interim award that the parties would know the ground for fees and interest, and how to calculate them."  Purple cites pages 111 to 112 of the Day 10 transcript.  Those pages refer to "initial interest confusion," which is a trademark concept, and to enhanced damages and attorney fees under the Lanham Act.  They do not discuss "interest," in the sense of money added to damages to reflect the time value of money.

22.    Purple also cites page 258 of the Day 10 transcript.  That page refers to interest in the context of the time value of money, but actually cuts against Purple's argument. [3]

> ARBITRATOR KIM:  …And then we·decided that actual cost submissions will be separate.  I'll do a partial [award] first.·  And then so I'm assuming that means when you submitting briefs on costs, you're·arguing – you're presenting evidence on the amount, but·also making arguments as to why costs should be awarded.  In addition, or how they should be apportioned, right.  Of course at that point you'll know my result.
>
> MR. MAGLEBY:  I think -- I can't answer that until I see the result.
>
> ARBITRATOR KIM:  I'm not deciding that now.
>
> MR. MAGLEBY:  Yes.
>
> ARBITRATOR KIM:  My partial award will simply say on the merits here's what I find.  And interest actually -- I almost forgot that.  Interest, I'm not sure how much that's been briefed.  I know Dr. Luna put in an interest rate.  I don't know if Purple put in interest rate.  And, you know, her rate was like the federal bankruptcy rate or something like that.  I mean, the rate prejudgment or postjudgment rate is that what -- I normally use the Utah state --
>
> MR. HORVAT:  I believe that's why she did it that way.
>
> ARBITRATOR KIM:  So if everybody agrees what the interest rate is, that's fine.  I assume that's why she did it but I don't remember seeing anything on that.

---

[3]  Day 10 Transcript at 257:20 to 258:20.  The transcript refers to "partial work" in the second line quoted above, but the context makes clear that this should be "partial award."

23.     The above discussion makes clear that there will be separate submissions on costs, after a partial award is issued on the merits, including interest.  Procedural Order No. 29 confirmed that point by referring to an initial award on "liability, damages, and interest," followed by a separate award on fees and costs.  Given that the initial award would address interest, Purple should have addressed that subject before, and not after, the Interim Award was issued.  Purple has not shown good cause to relieve it from its failure to do so.

24.     *Fifth*, pre-award interest raises factual and legal issues regarding the interest rate and dates of accrual that are ordinarily the subject of expert testimony.  Indeed, Purple included a "rebuttal expert report" with its submission on fees and costs on January 5, 2024.  That report confirms that pre-award interest involves multiple factors and calculations.  Purple's damages expert uses a Utah statutory interest rate for Purple's Revenue Share claim, a federal rate for its Lanham Act claims, and multiple different dates of accrual.

25.     Under the schedule for this arbitration, opening and rebuttal expert reports were due in May 2023, and expert discovery was to be completed by June 9, 2023.  (*See* Procedural Order No. 18, issued May 1, 2023.)  Yet, Purple's damages expert did not address interest in his written reports or during the merits hearing.  Purple should have submitted any expert report on interest in May 2023 and should have presented any expert testimony at the merits hearing that ended on August 11, 2023.  Purple has not demonstrated good cause to allow it to present a new expert report in January 2024.  If that new report were accepted, Respondents would be entitled to submit a rebuttal expert report, which would delay the resolution of this dispute.  That would be contrary to the agreed case schedule and would undermine a primary goal of arbitration, which is to resolve disputes in a fair, efficient, economical manner.  (*See* AAA Rules 21, 23, 32.)

26.     In sum, I deny Purple's claim for pre-award interest because Purple failed to support this claim in its first set of post-hearing submissions, as required by Procedural Order No. 29, and has not shown good cause to allow a new expert report and new arguments on interest after expert discovery has closed, the merits hearing has ended, and the Interim Award has issued.

### C.     Post-Award Interest

27.     Post-award interest differs from pre-award interest in that it does not raise factual issues or require expert testimony and is routinely awarded without specific evidence or argument.  Post-judgment or post-award interest generally accrues at a single rate on the entire amount of damages awarded, from the date of the award until payment is made.  That is a simple calculation.

28.     In contrast, as noted above, pre-award interest often involves different interest rates and periods for different claims and different breaches.  Those issues should ordinarily be the subject of an expert report, so the expert can be cross-examined about interest at trial.

29.     Purple's expert report in this case illustrates the more complicated nature of pre-award interest.  Purple's damages expert calculates pre-award interest on Revenue Share damages, trademark infringement damages, and trade dress infringement damages using different interest periods, interest rates, and damage amounts.  In contrast, Purple's damages expert does not address post-award interest.  Instead, Purple relies in its January 5 submission on 28 U.S.C. § 1961(a), which provides for post-judgment interest on a money judgment "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding."

30.     Post-award interest also differs from pre-award interest, in that not imposing post-award interest "would provide the other side with an incentive to delay payment," as noted in paragraph 230 of the Interim Award.

31.     AAA Rule 47(d)(i) authorizes an award of "interest at such rate and from such date as the arbitrator(s) may deem appropriate."  In view of the above factors, I exercise my discretion under Rule 47 to require post-award interest to be paid, even though Purple did not specify a rate of post-award interest until its second set of post-hearing submissions.

32.     In view of the discretion conferred by Rule 47, I may refer to federal or state interest rates, but am not bound by them.  The 1-year Treasury rate has fluctuated from about 4.65% to about 5.5% during the past six months and is currently about 5%.  I exercise my discretion to award interest at the fixed rate of 5% per annum.  Thus, I rule that Purple is entitled to post-award interest at the simple rate of 5% per annum on the net damages award of $1,983,112.68, from the date that this Final Award is issued until the date that full payment is received by Purple.

33.     As noted in the Interim Award, Respondents ReST and PatienTech are jointly and severally liable to Purple for Revenue Share payments of $1,324,301.  (Interim Award, ¶ 268.B).  In contrast, only ReST (and not PatienTech) is liable to Purple for trademark and trade dress infringement damages of $230,119 plus $434,363, or a total of $664,482.  (Interim Award, ¶¶ 268.C, 268D; *see* ¶¶ 142-43.)   ReST's liability to Purple is offset by the Purple's liability to ReST for $5,670.32 on ReST's Ad Spend Agreement counterclaim,  (Interim Award, ¶ 269.B).  Thus, ReST's net liability to Purple is $658,811.68 ($664,482 - $5,670.32).

34.     In view of the different scope of liability, I clarify that ReST and PatienTech are jointly and severally liable to Purple for Revenue Share payments in the principal amount of $1,324,301, plus post award interest on the unpaid principal at the simple interest rate of 5% per annum from the date this Final Award is issued until the date full payment is received by Purple.

35.     In addition, ReST is liable to Purple for the net principal amount of $658,811.68 plus post award interest on the unpaid principal at the simple interest rate of 5% per annum from the date that this Final Award is issued until the date that full payment is received by Purple.

## III.     ALLOCATION OF FEES AND COSTS

### A.     The Parties' Submissions on Fees and Costs

36.     Purple argues that it is entitled to an award of fees and costs as the prevailing party for several reasons:

- AAA Rule 47 authorizes an award of attorneys' fees if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement.[4] (Purple's January 5 submission at 6.)

- The Lanham Act, 15 U.S.C. § 1117(a) authorizes an award of attorneys' fees and non-taxable costs in "exceptional cases," which are present here (*id.* at 4-6); and

- Rule 54 of the Utah and Federal Rules of Civil Procedure entitles the prevailing party to an award of taxable costs (*id.* at 1-4).

37.     Purple seeks an award of $912,022.50 in fees in the arbitration (after a courtesy discount and credit for fees already paid as sanctions), plus $317,213 in fees in the litigation in the Utah federal court.  That is a total of $1,229,235.50 in attorneys' fees incurred in both cases.

38.     Purple also seeks a total of $428,062.62 in taxable and non-taxable costs in the arbitration, as well as $29,729.35 in taxable and non-taxable costs in the federal litigation, as further discussed in Section III.D below.

39.     Respondents assert in their submission of January 5, 2024 ("Respondents' January 5 submission") that Purple is not entitled to an award of fees and costs because:

---

[4] Purple's January 5 submission referred to AAA Rule 49, which is not the correct rule.  Purple later clarified that it relies on AAA Rule 47, which is the correct rule in the 2013 version of the AAA Rules that controls this arbitration.

- Utah law, which applies substantively to this arbitration, does not authorize an award of attorneys' fees unless provided under a statute or agreement of the parties. Purple's contract claims were brought under the MSA, which does not have an attorney fees provision. (Respondents' January 5 submission at 2.)

- Purple was not the "prevailing party" because it obtained only a fraction of the amount it sought (*id.* at 2);

- This is not an "exceptional case" under the Lanham Act, and even if it were, any fee award should be limited to the Lanham Act claims (*id.* at 3-4);

- Arbitration fees and expenses should be allocated equally between the Parties under AAA Rule 47(c), because the case ended in a "draw" (*id.* at 5-8).

40.     On January 6, 2024, I asked the Parties to submit supplemental briefs regarding whether it is appropriate to award attorney fees for the federal litigation, and which may also reply to other arguments in the other side's January 5 brief. Purple and Respondents submitted supplemental briefs on January 12 and January 14, and submitted further legal authorities on January 19, 2024. In response to Respondents' request, I held a videoconference hearing on February 8, 2024. I declared the hearing closed on February 15, 2024, after Purple replied to my request for clarification regarding the amount of attorneys' fees that it seeks.

41.     The Parties' further submissions repeat and expand on the basic arguments set forth above. Respondents asserts that entitlement to attorney fees is a substantive issue governed by Utah law, and not by AAA Rule 47. Respondents also challenge some of the fees and costs claimed by Purple, such as fees and expenses related to the federal litigation, as well as fees related to Purple's summary judgment motions and to its trademark expert.

42.     Purple asserts that numerous courts have held that Rule 47 authorizes an award of attorneys' fees when, as here, both sides have request such an award. Purple also contends that all of its claimed fees and costs are reasonable.

43.     I first address whether I have authority to award attorneys' fees and then whether I should do so and the appropriate amount. I conclude by discussing allocation of arbitration costs.

### B.    Authority to Award Attorneys' Fees

44.    As noted above, the AAA Rules authorize an award of attorneys' fee "if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement." (AAA Rules 47(d)(ii).)

45.    Numerous courts have held that Rule 47 (or the equivalent rule in other versions of the AAA Rules) authorizes an award of attorneys' fees where all parties have requested an award of fees, even if no statute authorizes such an award.  For example, the New York Supreme Court Appellate Division relied on Rule 47 in rejecting a challenge to a fee award, emphasizing that "the power to award attorneys' fees can arise from the submission of the dispute under the rules of a given organization, like the AAA, if the rules themselves authorize the fees."  *Steyn v. CRTV, LLC*, 103 N.Y.S.3d 415, 421 (2019) (citations omitted).  The court cited *Matter of Goldberg v Thelen Reid Brown Raysman & Steiner LLP*, 52 NY App. Div. 3d 392, 392-393 (1st Dept 2008), which held that "mutual demands for counsel fees in an arbitration proceeding constitute, in effect, an agreement to submit the issue to arbitration, with the resultant award being valid and enforceable."

46.    Similarly, the Eighth Circuit affirmed a fee award based on AAA Rule 47, agreeing with plaintiff that "if parties bound by the AAA Commercial Rules request attorneys' fees, the arbitrators before whom they appear are empowered to award such fees.  *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 713 (8th Cir. 2011).  Numerous other courts have likewise held that the AAA Rules authorize an award of attorneys' fees when all parties have requested such as award and have agreed to arbitrate in accordance with the AAA rules. [5]

---

[5]  *Affordable Care, L.L.C. v. McIntyre*, No. 22-60245, 2023 WL 3620755, at *3, n. 4 (5th Cir. May 24, 2023) (unpublished) (AAA Rule 47 authorizes fee award where the parties' contract incorporated the AAA Rules and both sides "requested an award of attorney fees in their arbitration pleadings"), *cert. denied,* 144 S. Ct. 380 (2023); *Limited v. Indyzen, Inc.*, 851 F. App'x 54, 55–56 (9th Cir. 2021) (unpublished) (fee award did not exceed arbitrator's powers under AAA Rule 47, given that all parties, including the party ordered to pay fees, requested a fee award); *Warner Bros. Recs. v. PPX Enterprises, Inc.*, 776 N.Y.S.2d 269, 270 (N.Y. App. Div. 2004) (agreement between the parties did not specifically provide for attorneys' fees, but the arbitration clause did incorporate the Commercial Arbitration Rules of the American Arbitration Association, which authorize a fee award where all parties have requested such an award); *Dunhill Franchisees Tr. v. Dunhill Staffing Sys., Inc.*, 513 F. Supp. 2d 23, 33 (S.D.N.Y. 2007) (:arbitration clause in the Agreements provides that the parties are to submit any disputes arising under the Agreements to binding arbitration in accordance with the AAA's Commercial Rules, of which Rule 43(d) provides that '[t]he award of the arbitrator (s) may include: an award of attorneys' fees if all parties have requested such an award or it is authorized by law or their arbitration agreement'").

11

47.     Here, all Parties requested a fee award in their pleadings.  Purple sought an award of attorneys' fees and arbitration costs in the one-page Demand for Arbitration it filed on September 1, 2021.  Purple repeated that request in the more detailed Statement of Claims it filed on October 12, 2021, as to each of its eleven claims for damages.  (Purple's  Statement of Claims, ¶¶ 144, 152, 160, 171, 179, 190, 200, 209, 217, 224, 234.)[6]

48.     Similarly, Respondents sought an award of attorneys' fees and costs in the one-page Answer they filed on September 21, 2021.  Respondents repeated that request in the more detailed Answering Statement and Counterclaims that they filed on January 14, 2022 (page 19); their March 27, 2021, Amended Statement of Counterclaims (page 17); and the Second Amended Statement of Counterclaims that they filed on July 2, 2023 (page 12), shortly before the merits hearing began.

49.     Respondents do not dispute that all Parties requested an award of attorneys' fees.  At the February 8 hearing, Respondents conceded that the Parties' requests would ordinarily authorize an award of attorneys' fees under AAA Rule 47(d)(ii) and the cases cited above.

50.     Respondents assert, however, that AAA Rule 47(d)(ii) does not apply in this case, because Procedural Order No. 1 states: "By agreement of the Parties and Order of the Arbitrator," "Utah law will be applied substantively to the arbitration," and "Arbitration procedures will be governed by the AAA Rules and the procedural orders and other directions issued by the Arbitrator."  (Procedural Order No. 1, ¶¶ 1, 2.)  Respondents contend that Procedural Order No. 1 excludes the application of AAA Rule 47(d)(ii) because entitlement to attorneys' fees is substantive rather than procedural in nature.

51.     Respondents rely on court decisions that treat entitlement to attorneys' fees as a substantive right in other contexts, including (1) whether entitlement to attorneys' fees is a substantive right governed by state law in a federal diversity case under the *Erie* doctrine; (2) whether entitlement to attorneys' fees is a substantive right for the purpose of choice-of-law analysis; and (3) whether entitlement to attorneys' fees is a substantive right for the purpose of determining whether a statute applies retroactively or prospectively only.  *See, e.g.*, *Northon v. Rule*, 637 F.3d 937, 938-39 (9th Cir. 2011) (Oregon anti-SLAPP statute that authorizes fee award protects substantive rights and hence applies in diversity case under the *Erie* doctrine); *1600 Barberry Lane 8 v. Cottonwood Residential*, 2021 UT 15, 493 P.3d 580, ¶¶ 29-30 (Utah Supreme Court 2021) (entitlement to fees is a substantive right for choice-of-law analysis); *Water Damage*

---

[6] Purple did not specifically request a fee award on its twelfth and thirteenth claim for declaratory and injunctive relief, but has not pursued those claims.

*Express v. First Prot. Ins. Co.*, 336 So.3d 310, 3134 (Fla. App. 2022) (statute limiting right to attorneys' fees involves substantive rights and hence applies prospectively only).[7]

52.     I reject Respondents' argument for several reasons.  **First**, this case does not involve the *Erie* doctrine, choice-of-law analysis, or retroactive application of a statute.  Rather, the issue is whether AAA Rule 47 authorizes a fee award when all parties have requested it.  The cases cited by Respondents do not involve arbitrations, AAA Rule 47, or any similar rule of an arbitral institution.  They do hold that entitlement to fees is a substantive right, but in contexts that are very different from this case.  Therefore, they shed no light on the critical issue of whether AAA Rule 47 authorizes a fee award when all parties have requested it.  In contrast, Purple has cited numerous cases that hold that AAA Rule 47 authorizes a fee award when all parties have requested it.

53.     **Second**, Procedural Order No. 1 states:  "Arbitration procedures will be governed by the AAA Rules and the procedural orders and other directions issued by the Arbitrator."  (Procedural Order No. 1, ¶ 2.)   "Arbitration procedures" is a broad phrase that reasonably encompasses all procedures in the arbitration, including those for awarding attorneys' fees.  Attorneys' fees is a collateral matter that concerns events **after** the arbitration begins; it differs from the parties' substantive claims for breach of contract and other wrongful conduct that took place **before** the arbitration.  It is not reasonable to interpret Procedural Order No. 1 as meaning that "Arbitration procedures will be governed by the AAA Rules," **except** that Rule 47(d)(ii) does not apply.  Nor is it reasonable to interpret the reference in Procedural Order No. 1 to the substantive law of Utah as meaning that AAA Rule 47(d)(ii) does not apply.  If such a carve-out had been intended, it should have been stated explicitly.

54.     **Third,** Respondents' argument about Rule 47(d)(ii) conflicts with their own position that entitlement to arbitration costs is governed by AAA Rule 47(c), which states that costs shall be allocated as the arbitrator deems appropriate.  (*See* Respondents' January 5 Submission at 5.)  Respondents suggest that Rule 47(c) applies as to allocation of costs, but Rule 47(d)(ii) does not apply as to allocation of attorneys' fees.  Respondents have provided no basis for such a peculiar result.  If such a result had been intended, Procedural Order No. 1 should have said so explicitly.

55.     **Fourth**, even if Utah law were assumed to apply, Utah law does not prohibit an award of attorneys' fees when the parties agreed to incorporate arbitral rules that authorize such

---

[7]  Respondents cite numerous other cases in their January 19, 2024, Summary of Authorities Regarding Attorneys' Fees and Costs, all of which fall into one of the three categories above.  None of those case address whether attorneys' fees may be recovered in an arbitration pursuant to AAA Rule 47 or a similar arbitral rule.

an award when requested by all parties.  On the contrary, as Respondents note, Utah law allows an award of attorneys' fees if "provided under a statute or a contract between the parties." (Respondents' January 5 submission at 1-2 (citation omitted).)

56.     Purple, ReST and PatienTech agreed in the MSA to resolve disputes ███████████ █████████████████  (MSA, § 12.11.b.)  Mr. Golden did not sign the MSA as an individual, but did not object to AAA arbitration.  (January 19, 2022, Procedural Order No. 1, ¶ 8 (parties have no objections to arbitral jurisdiction)).  By agreeing to resolve disputes under the AAA Rules, the Parties incorporated those rules into their contract, including Rule 47(d)(ii).  Thus, the Parties agreed that the arbitrator may award attorneys' fees when, as here, all Parties have requested such an award.  In view of that agreement, awarding attorneys' fees is consistent with Utah substantive law.  It is also supported by the numerous cases cited above that reached a similar result.

57.     In sum, I find that I have the power to award attorneys' fees because the Parties agreed in the MSA to resolve disputes pursuant to the AAA Rules, and Rule 47(d)(ii) authorizes such an award when, as here, all Parties have requested an award.  That authority is not negated by the general statement in Procedural Order No. 1 that the AAA Rules govern arbitration procedures and Utah law applies substantively.  Further, awarding fees is consistent with Utah law, which authorizes an award pursuant to the parties' agreement, which is reflected here by the parties' agreement to resolve disputes pursuant to arbitral rules that authorize a fee award.

58.     Because I find that the AAA Rules authorize an award of attorneys' fees, I find that it is not necessary to address Purple's alternative argument that it is entitled to a fee award because this is an "exceptional case" under the Lanham Act.  I express no view on whether this case is "exceptional" for the purpose of an award of fees under the Lanham Act.

## C.     Prevailing Party and Amount of Attorneys' Fees

59.     As the Interim Award noted, factors relevant to allocation of fees and costs include "the degree of success of each side on each of the claims and counterclaims," and "the conduct of the parties during the arbitration."  (Interim Award, ¶ 271.)

60.     Respondents contend that attorneys' fees should not be awarded even if I have the power to do so, because Purple received only a fraction of the amount it sought and is hence not a "prevailing party."  Respondents also challenge the reasonableness of some of the fees claimed by Purple, such as fees related to the federal litigation and to Purple's summary judgment motions.

61.     Purple asserts that it is the prevailing party because it had a much higher "success rate" than Respondents, as illustrated by the chart below.  Purple also contends that all of its claimed fees are reasonable.

|  | Amount Sought | Amount Recovered | Success Rate |
|---|---|---|---|
| **Purple** | $5,572.064 | $1,988,783 | 35.7% |
| **ReST** | $49,895,000 | $5,670.32 | 0.01% |

62.     I agree with Purple that it is entitled to an award of fees as the prevailing party. While Purple did not prevail on all of its claims, it had a much higher success rate than Respondents.  As a result, Purple is entitled to receive a total net principal amount of $1,983,112.68 ($1,988,783 - $5,670.32).  Given the large net award for Purple, I find that that Purple is the prevailing party on its claims against Respondents ReST and PatienTech.

63.     As to the amount of fees, I agree with Respondents that awarding in this arbitration the fees that Purple incurred in the Utah federal litigation would not be appropriate.  The AAA Rules do not explicitly address whether fees incurred in court litigation may be awarded, but Rule 47(c) states that the arbitrator may apportion the "costs" in Rules 53, 54, and 55, which concern AAA administrative fees, arbitrator compensation, and other arbitration expenses.  The limitation of recoverable costs to the arbitration implies that a similar limitation applies to attorneys' fees.

64.     The two court decisions cited by Purple do not support its argument that fees should be awarded for the Utah litigation.  In *Zecca v Monterey Condo. Assoc. Inc.*, 2020 WL 2177053, *5 (N.J. 2020), the court held that the arbitrator did not exceed his authority by awarding counsel fees because AAA Rule 47 "clearly and unambiguously allows the arbitrator to award counsel fees when both parties request fees."  Purple relies on the court's statement that the issue of counsel fees "was addressed by the trial court before the matter was referred to arbitration," but the court does not specifically state that the arbitrator awarded fees both the arbitration and the prior litigation.  Further, the court made that statement to emphasize that the plaintiff (which was the party opposing the arbitrator's fee award) had requested that "an award of counsel fees be included in the arbitration" at the hearing on defendant's motion to compel arbitration.  *Id.* *2.

65.     Purple's other case, *LiveWire Ergogenics, Inc. v. JS Barkats PLLC*, 645 F.Supp.3d 290 (S.D.N.Y. 2022), is also inapposite.  The court affirmed an AAA arbitral award that held that a law firm (JS Barkats PLLC or JSB) had committed malpractice and breached its fiduciary duties to its former clients (the "LiveWire parties"), and hence should reimburse their clients for legal

15

fees incurred in related litigation.  *Id.* at 293, 295-96.  The arbitrator awarded the litigation fees as damages for malpractice.  *Id.* at 300-01 (noting that damages for malpractice may include "litigation expenses incurred in an attempt to avoid, minimize, or reduce the damage caused by the attorneys' wrongful conduct") (citations omitted).  Purple does not assert a similar claim here.

66.    Further, even if it were assumed that an arbitrator may award attorneys' fees incurred in related litigation, I do not consider such an award appropriate.  The Utah court is more familiar with the Utah litigation and is in a better position to decide issues such as whether the litigation is an "exceptional case" for the purpose of fees under the Lanham Act, and the reasonableness of fees and costs incurred in that litigation.  Accordingly, I decline to award fees related to the Utah litigation, without prejudice to Purple requesting the Utah federal court to award fees and costs related to that litigation.  Counsel stated during the February 8 hearing that the Utah litigation has been stayed but is still pending.  I express no view on whether Purple is entitled to an award of fees and costs related to the Utah litigation, which is an issue for the Utah court to decide.

67.    As to Respondents' argument that some of the fees that Purple incurred in this arbitration should not be awarded, I consider partial success to be one factor that is relevant to the amount of a fee award.  I have decided, however, to award Purple all of the $912,022.50 in fees that it has claimed for the arbitration (after a courtesy discount and a credit for fees already paid as sanctions) for several reasons.

68.    ***First***, while Purple did not prevail in on all of its claims, the claims on which it did not prevail raised factual issues that overlapped with the claims on which it did prevail.  For example, Purple's claim for a ███████████████████████████ initial payment raised the critical issue of which side, if any, was at fault for the termination of the MSA.  While I decided that neither side was at fault, the issue of fault was also raised by Respondents' arguments that they were entitled to tens of millions of dollars that they would have received if the deal had proceeded, and that Purple's improper termination of the MSA entitled them to use Purple's trademark and trade dress.  Because many of the same issues would have needed to be litigated even if Purple did not assert a claim for a partial refund of its initial payment, I conclude that it is not appropriate to reduce the fee award to reflect the denial of that claim.

69.    ***Second,*** Respondents made grossly inflated damage demands that likely increased the fees that both sides incurred.  Respondents initially demanded nearly $50 million in damages.  Respondents provided no plausible basis for that exorbitant demand.  Indeed, Respondents withdrew many of their claims and reduced their damage demand to about $8.4 million before the merits hearing in August 2023.  Further, the merits hearing showed that most of Respondents'

alleged damages were based on unsupported speculation by Respondent Robert Golden, the principal of both ReST and PatienTech. Respondents recovered only about $5,000 in damages, which is nearly 10,000 times less than their initial demand.

70.     Respondents argue that Purple also abandoned some of its claims and recovered only a fraction of the amount they sought. Unlike Respondents, however, Purple had a reasonable basis for the damages that were denied. Further, Purple recovered about 35% of its claimed damages, which is a much higher success ratio than Respondents. Purple did not make exorbitant demands. Purple estimated its damages as "at least $5 million" in its Demand for Arbitration, which is close to the $5.6 million it claimed at the merits hearing in August 2023.

71.     It is difficult to quantify the impact of Respondents' exorbitant demands, but they likely increased the attorneys' fees that both sides incurred. A party faced with counterclaims for $50 million will almost certainly spend more time and money than if faced with counterclaims for $8 million. Further, as Purple's counsel noted at a preliminary hearing, mediation is unlikely to succeed when the other side makes exorbitant demands that dwarf the primary claims. Had Respondents taken a more reasonable position, mediation would have been more likely to succeed.

72.     ***Third***, Respondents not only made exorbitant damage demands, Respondent Robert Golden engaged in truly egregious and blatantly unethical conduct. As discussed in the Interim Award (paragraphs 25-31) and Procedural Order Nos. 20, 23, and 25, Mr. Golden fabricated fake evidence, gave false deposition testimony, and relied on that fake evidence and testimony in opposing Purple's motion for summary judgment. Mr. Golden appears to have acted by himself. There is no evidence that Respondents' counsel or other employees of ReST or PatienTech assisted with or condoned Mr. Golden's creation of fake evidence. Mr. Golden, however, is the principal of ReST and PatienTech, who relied on that fake evidence and fake testimony. The egregious conduct of the principal of ReST and PatienTech is a further reason to require them to reimburse Purple for all of the fees it incurred in the arbitration.[8]

---

[8] Procedural Order No. 25 required Respondents to reimburse Purple immediately for fees directly related to the fake evidence (such as the fees for Purple's motion for sanctions and opposition to Respondents' summary judgment motion), but reserved the right to award additional relief. (Procedural Order No. 25, ¶¶ 77-78.)

73.    Accordingly, I rule that ReST and PatienTech are jointly and severally liable to Purple for the $912,022.50 in attorneys' fees that Purple incurred in this arbitration.[9]  In addition, post-award interest shall accrue on this amount at the simple rate of 5% per annum from the date this Final Award is issued until full payment is made.

74.    I also rule that Respondent Robert Golden is not liable for attorneys' fees because Purple did not prevail on its claim that Mr. Golden is personally liable for ReST's infringement of Purple's trademarks and trade dress.  (Interim Award, ¶¶ 181-84, 218-20.)

### D.    Allocation of Arbitration Costs

75.    AAA Rule 47(c) confers broad discretion to allocate the costs of the arbitration, as set forth below:

> In the final award, the arbitrator shall assess the fees, expenses, and compensation provided in Sections R-53, R-54, and R-55. The arbitrator may apportion such fees, expenses, and compensation among the parties in such amounts as the arbitrator determines is appropriate.

AAA Rules 53, 54, and 55 cover the administrative fees of the AAA, arbitrator compensation, and other arbitration expenses, such as travel expenses of the arbitrator and witnesses.

76.    Thus, AAA Rule 47(c) authorizes the arbitrator to allocate arbitration expenses such as AAA administrative fees and arbitrator compensation and expenses as the arbitrator deems appropriate.  In addition, AAA Rule 47(a) authorizes the arbitrator to award other relief that the arbitrator deems just and equitable and within the scope of the parties' agreement.

77.    Respondents do not dispute that the AAA Rules authorize an award of arbitration costs.  They contend, however, that the arbitration fees should be allocated equally under AAA Rule 47(c), because the case ended in a "draw."  (Respondents' January 5 submission at 5, 8.)

78.    I reject Respondents' "draw" argument for the same reasons that I reject Respondents' argument that Purple is not the prevailing party for the purpose of awarding attorneys' fees.  As discussed above, Purple obtained a net award of $1,983,112.68 and had a much

---

[9]  PatienTech has not argued that its liability for fees should be lower because it was found to be jointly and several liable on Purple's Revenue Share claim only, and not on Purple's trademark and trade dress claims.  I find that imposing liability on PatienTech for all fees is appropriate even though it was not found liable on Purple's trademark and trade dress infringement because PatienTech supplied components of the products that were the subject of those claims.

higher success rate than Respondents (35% in contrast to 0.01%). Further, the claims on which Purple did not prevail raised issues that overlapped with the claims and defenses on which Purple prevailed. In addition, Respondents made exorbitant demands and engaged in unethical conduct that likely increased the fees and costs incurred by both sides. Therefore, Purple is entitled to an award of arbitration costs, as the prevailing party.

79.    Respondents also contend that some of the costs sought by Purple are unreasonable. Purple seeks a total of $430,562.62 in taxable and non-taxable costs in the arbitration, as well as $29,729.35 in taxable and non-taxable costs in the federal litigation, as summarized below.[10]

### Purple's Arbitration Costs

| Type of Cost | Amount |
|---|---|
| **AAA fees and arbitrator compensation and expenses** | **$136,222.50** |
| **Arbitration Taxable Costs** (including hearing and deposition transcripts, witness fees, and service and mailing costs) | $41,274.64 |
| **Arbitration Non-Taxable Costs:** Discovery vendor | $43,025.05 |
| **Expert fees** (after credit for $2,112.50 already paid as sanctions) | $203,373.49 |
| **Hearing Venue** (Marriott Hotel) | $6,666.94 |
| **TOTAL: Arbitration Costs** | **$430,562.62** |

### Purple's Utah Federal Litigation Costs

| Type of Cost | Amount |
|---|---|
| **Federal Court Taxable Costs** (including court filing fees, hearing transcripts, service of process, and court copying costs) | $2,185.05 |
| **Federal Court Non-Taxable Costs** (including discovery vendor and expert fees) | $27,544.30 |
| **TOTAL: Federal Court Taxable and Non-Taxable Costs** | **$29,729.35** |

---

[10]  This summary has been updated to reflect Purple's recent payment of an additional $2,500 in arbitrator compensation, which Purple paid after it submitted its summary of costs.

80.    The AAA fees and arbitrator compensation and expenses sought by Purple are consistent with AAA records, which reflect the following payments from the Parties:

**Summary of Party Payments to the AAA**

| Type of Payment | Claimant | Respondents |
|---|---|---|
| AAA Administrative Fee | $16,222.50 | $16,222.50 |
| Arbitrator Compensation and Expenses | $120,000.00 | $120,000.00 |
| **TOTAL** | **$136,222.50** | **$136,222.50** |

81.    The administrative fees and expenses of the American Arbitration Association totaling $32,445.00 and the compensation and expenses of the Arbitrator totaling $240,000.00 shall be borne entirely jointly and severally by Respondents ReST and PatienTech. Therefore, in addition to the other sums awarded above, ReST and PatienTech shall reimburse Purple the sum of $136,222.50 representing that portion of said fees, expenses, and compensation in excess of the apportioned costs previously incurred by Purple.

82.    As to the other costs sought by Purple, I agree with Respondents that awarding costs related to the Utah federal litigation would not be appropriate. As discussed above, the Utah federal court is more familiar with that litigation and is thus the proper forum for deciding whether to award fees and costs incurred in that litigation. Purple's request for costs related to the Utah litigation is denied, without prejudice to Purple requesting such costs from the Utah federal court.

83.    I also agree with Respondents that Purple should not be awarded the $43,622.54 in fees incurred by its trademark expert, Robert Wallace. As noted at the merits hearing, Mr. Wallace's expert report was defective for multiple reasons and had little, if any, probative value.

84.    I find that with the exception of Mr. Wallace's expert fees, the other costs claimed by Purple for the arbitration are reasonable and should be reimbursed by Respondents. Excluding the $136,222.50 for AAA fees and arbitration compensation and expenses, Purple has claimed a total of $294,340.12 in other costs related to the arbitration, including Mr. Wallace's expert fees of $43,622.54. Thus, I award to Purple a net total of $250,717.58 in other arbitration costs ($294,340.12 - $43,622.54). I also award Purple $136,222.50 for AAA fees and arbitration compensation and expenses, so the total award of costs to Purple is $386,940.08 ($136,222.50 + $250,717.58). Respondents ReST and PatienTech are jointly and severally liable for that amount.

## IV.    DISPOSITION AND RELIEF GRANTED

85.    For the reasons set forth in the Interim Award, I rule as follows on the claims of Claimant Purple Innovation, LLC:

A.    Purple's claim for return of its initial payment of $4 million, minus the value of services and goods received, is DENIED.

B.    Purple's claim for Revenue Share payments is GRANTED IN PART. I rule that Respondents ReST and PatienTech are jointly and severally liable for Revenue Share payments of $1,256,598 plus $67,703, or a total of $1,324,301. To the extent that Purple seeks additional payments, Purple's claim for Revenue Share payments is DENIED.

C.    Purple's claim that ReST infringed its trademarks during the Pre-TRO Period is GRANTED IN PART. I rule that ReST infringed Purple's trademarks by using them on its website and in other marketing materials from October 1 to December 13, 2020 ██████████████████ ██████████████████████████████████ ReST is liable to Purple for damages of $230,119 to compensate for that infringement. To the extent that Purple seeks additional damages for the Pre-TRO Period (such as damages for alleged infringement from August 11 to September 30, 2020, or enhanced or punitive damages), Purple's trademark infringement claim is DENIED. Purple's trademark infringement claim is also DENIED to the extent that it is asserted against Respondent PatienTech and Respondent Golden.

D.    Purple's claim that ReST infringed its trade dress during the Post-TRO Period is GRANTED IN PART. I rule that ReST infringed Purple's trade dress by using an image of a purple-colored grid to promote its ReST Bed with ReST GelGrid that was virtually identical to the image that it had previously used to promote the ReST + Purple bed. I also rule that ReST is liable to Purple for damages of $434,363 to compensate for that infringement. To the extent that Purple seeks additional damages (such as enhanced or punitive damages), Purple's claim for trade dress infringement during the Post-TRO Period is DENIED. Purple's trade

dress infringement claim is also DENIED to the extent that it is asserted against Respondent PatienTech and Respondent Golden.

E.  Purple's other IP Claims are DENIED AS MOOT because they are duplicative of Purple's trademark and trade dress infringement claims, and Purple cannot recover the same damages more than once.

F.  Purple has withdrawn other claims that were previously asserted.  For the avoidance of doubt, any and all other claims and requests for relief of Purple are DENIED, except as granted in the Interim Award and/or in this Final Award.

86.  For the reasons set forth in the Interim Award, I rule as follows on the counterclaims of Respondents ReST and PatienTech:

A.  The counterclaims of Respondents ReST and PatienTech for fraud and negligent misrepresentation are DENIED.

B.  The counterclaim of Respondent ReST for breach of the Ad Spend Agreement is GRANTED IN PART.  I rule that Purple is liable to ReST for $5,670.32.  To the extent that ReST seeks additional damages on this counterclaim, it is DENIED.

C.  The argument of Respondents ReST and PatienTech that they are entitled to an offset against Purple's claim for return of its initial investment of $4 million is DENIED AS MOOT.  I have denied Purple's claim for return of its initial investment, so there is no award against which an offset could be applied.

D.  Respondents ReST and PatienTech have withdrawn other counterclaims that were previously asserted, and Respondent Robert Golden has not asserted any counterclaims.  Respondents ReST, PatienTech, and Golden have not pursued any request for an award of interest or of fees and costs.  For the avoidance of doubt, any and all other counterclaims and requests for relief of Respondents ReST, PatienTech, and Golden are DENIED, except as granted in the Interim Award and/or in this Final Award.

87.  For the reasons set forth above, the request of Claimant Purple Innovation, LLC for pre-award interest is DENIED because Purple failed to support its request in its first set of post-

hearing submissions filed in September and October 2023, as required by Procedural Order No. 29, and has not shown good cause to relieve it from that failure.

88.    For the reasons set forth above, the request of Claimant Purple Innovation, LLC for post-award interest is GRANTED.  Post-award interest shall accrue at the simple rate of 5% per annum on the unpaid net principal of all amounts awarded to Purple from the date this Final Award is issued until the date that full payment is made to Purple.

89.    For the reasons set forth above, I rule as follows on the request of Claimant Purple Innovation, LLC for an award of attorneys' fees and costs:

    A.    Based on my authority under AAA Rule 47, which applies pursuant to the Parties' agreement to resolve disputes under the AAA Rules, I award Purple a total of $912,022.50 in attorneys' fees incurred in this arbitration, plus $386,940.08 in costs related to this arbitration, or a total of $1,298,962.58 ($912,022.50 + $386,940.08).

    B.    Purple's request for attorneys' fees and costs related to the Utah federal litigation is denied, without prejudice to Purple asking the Utah federal court to award such fees and costs.

    C.    ReST and PatienTech are jointly and severally liable for the $1,298,962.58 in attorneys' fees and costs awarded to Purple in connection with this arbitration.

    D.    Post-award interest shall accrue at the simple rate of 5% per annum on the unpaid principal of the $1,298,962.58 in attorneys' fees and costs awarded to Purple from the date this Final Award is issued until the date that full payment is made to Purple.

90.    In view of the above rulings, Respondent Responsive Surface Technology, LLC and PatienTech LLC are jointly and severally liable to Claimant Purple Innovation, LLC ███████ ███████ in the principal amount of $1,324,301, plus $1,298,962.58 in attorneys' fees and costs, or a total of $2,623,263.58 ($1,324,301 + $1,298,962.58).  Respondent Responsive Surface Technology, LLC and PatienTech LLC are hereby ORDERED to pay the principal amount of $2,623,263.58 to Claimant Purple Innovation, LLC Purple, on a joint and several basis, plus post-award interest that accrues on the unpaid principal at the simple rate of 5% per annum from the date this Final Award is issued until the date that full payment is made to Claimant.

91.     In view of the above rulings, Respondent Responsive Surface Technology, LLC is solely liable to Claimant Purple Innovation, LLC Purple for trademark and trade dress infringement damages of $664,482, or a total net principal amount of $658,811.68, after offsetting the $5,670.32 that Claimant owes to ReST on its Ad Spend Agreement counterclaim.  Respondent Responsive Surface Technology, LLC is hereby ORDERED to pay the net principal amount of $658,811.68, to Claimant Purple Innovation, LLC, plus post-award interest that accrues on the unpaid principal at the simple rate of 5% per annum from the date this Final Award is issued until the date that full payment is made to Claimant.

92.     All other claims, counterclaims and requests for relief of Claimant Purple Innovation, LLC and Respondents ReST, PatienTech, and Golden are DENIED, except as granted in the Interim Award or in this Final Award.

I hereby certify that this Final Award is made in Utah as of March 8, 2024.

Grant L. Kim, Arbitrator