Stephen P. Horvat (#6249)
Joseph W. Moxon (#17281)
**ANDERSON & KARRENBERG**
50 West Broadway, Suite 600
Salt Lake City, Utah 84101-2035
Telephone: (801) 534-1700
shorvat@aklawfirm.com
jmoxon@aklawfirm.com

*Attorneys for Defendants Responsive Surface*
*Technology, LLC, PatienTech, LLC and Robert Golden*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURPLE INNOVATION, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>RESPONSIVE SURFACE TECHNOLOGY, LLC; PATIENTECH, LLC; ROBERT GOLDEN; et al.<br><br>    Defendants. | **MOTION TO VACATE, MODIFY, OR CORRECT ARBITRATION AWARD**<br><br>**Case No. 2:20-cv-00708-RJS-CMR**<br>**Judge Robert J. Shelby**<br>**Magistrate Cecilia M. Romero**<br><br>**(<u>REDACTED VERSION</u>)** |

# TABLE OF CONTENTS

Page

INTRODUCTION and RELIEF REQUESTED ..........................................................................1

STATEMENT OF THE CASE...............................................................................................1

A.      FACTUAL BACKGROUND ..................................................................................1

        1.      Defendants ReST and PatienTech ................................................................1

        2.      The MSA............................................................................................2

        3.      Development of the 2020 Bed and Obligations Undertaken and Promises
                Made After the MSA Was Signed ................................................................3

        4.      Purple's Abrupt Termination of the Relationship........................................4

B.      FEDERAL COURT LITIGATION ........................................................................5

C.      ARBITRATION ..................................................................................................7

        1.      The Parties Agree to Apply Utah Law to All Substantive Matters in the
                Arbitration..........................................................................................7

        2.      Discovery and Motion Practice...................................................................8

        3.      The March 3 Email and Sanctions Imposed on Defendants .................................8

        4.      The Rob Wallace Report and Testimony........................................................9

        5.      Pre-Hearing Filings ................................................................................10

        6.      The Interim Award.................................................................................12

        7.      The Attorney Fee and Cost Proceedings.......................................................12

                a.      Purple's Submission on Fees and Costs...........................................12

                b.      Supplemental Submissions ...........................................................13

                c.      Final Award ..............................................................................15

ARGUMENT ..................................................................................................................16

I.      THE COURT SHOULD VACATE, MODIFY, AND/OR CORRECT THE AWARD
        TO THE EXTENT IT GRANTS ATTORNEY FEES AND NON-TAXABLE COSTS
        TO PURPLE ..........................................................................................................16

        A.      The Arbitrator Exceeded His Powers and Ruled on a Matter Not Submitted
                in Awarding Attorney Fees ...................................................................... 16

        B.      The Fee and Cost Award Shows a Manifest Disregard for the Law and
                Evident Bias ............................................................................................21

        C.      The Arbitrator Refused to Hear Pertinent Evidence ...............................22

II.     THE COURT SHOULD VACATE THE AWARD TO PURPLE FOR TRADE
        DRESS INFRINGEMENT BETWEEN DECEMBER 14, 2020 AND AUGUST 2,
        2021.....................................................................................................................23

CONCLUSION ..............................................................................................................26

## INTRODUCTION and RELIEF REQUESTED

Defendants Responsive Surface Technology, LLC, and PatienTech, LLC, move the Court for an order vacating, modifying, and/or correcting portions of the Final Arbitration Award entered in favor of Plaintiff Purple Innovation LLC ("Purple").  Vacation, correction, and/or modification are required under the Federal Arbitration Act for several reasons.  First, the Arbitrator exceeded his powers and ruled on matters not submitted to him in awarding Purple $1.3 million in attorney fees and non-taxable costs as the "prevailing party."  Fees and costs were awarded under Rule 47 of the AAA Commercial Rules.  But the parties had agreed that all substantive matters would be governed by Utah law, and that the AAA Rules would only govern "arbitration procedures." Attorney fees and non-taxable costs are matters of substance, not procedure.

The Arbitrator also awarded Purple over $660,000 in damages for trade dress infringement that reflected a manifest disregard for the law and partiality and thus should be vacated under 9 U.S.C. § 10(a)(2).[1]

## STATEMENT OF THE CASE

A.    **FACTUAL BACKGROUND.**

1.    **Defendants ReST and PatienTech.**

Defendant Responsive Surface Technology ("ReST") is the developer, manufacturer, and seller of the "ReST Bed," a smart bed that automatically adjusts the air pressure in distinct chambers in response to changes in the user's pressure distribution on the mattress and their

---

[1] Defendants further believe that the Arbitrator erred in denying their counterclaim for fraud and negligent misrepresentation against Plaintiff.  As demonstrated in the Factual Background, Purple deceived Defendants into developing and launching a smart bed with featuring Purple Grid, then pulled the plug on Defendants with no warning and cut off the supply of such grids.  Defendants are not seeking vacation of that portion of the ruling only because of the broad discretion granted arbitrators under the Federal Arbitration Act.

position.  (*See generally* Ex. 46 to the Appendix of Exhibits, filed herewith.)  The ReST Bed features a patented sensor fabric, pump, and air chambers on each side of a queen or king sized bed.  The fabric detects changes in pressure in over 2000 locations on the bed and feeds that information to a control unit, which signals the pumps to inflate or deflate the appropriate chambers.  ReST began selling the ReST Bed in 2016 but started full commercial production and sales in 2018, with dramatic growth through 2019.

ReST is a majority-owned subsidiary of Defendant PatienTech.  ReST licenses the smart bed technology from PatienTech.

**2.      The MSA.**

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████

███████████████████████████████████████████

████████████████████████. Instead, on January 13, 2020, the parties entered into a "Master Vendor Supply and Services Agreement," or "MSA."  (MSA, Ex. 2.)  Among other things, the MSA provided ███████████████████████████████████████████

███████████████████████████████████████████████████

█████████████████████████████████████████

3.      **Development of the 2020 Bed and Obligations Undertaken and Promises Made
        After the MSA Was Signed.**

Almost immediately after execution of the MSA, the parties embarked on a course mar-

kedly different from the one laid out in the MSA. ████████████████████████████

**4.    Purple's Abrupt Termination of the Relationship.**

███████████████████████████████████████████████████

███████████████     On August 10, Megibow informed ReST that the acquisition was off, that

no further development work would occur, and that Purple would not commit to supplying

additional grids to ReST – even though Purple had just induced ReST to commit its entire

marketing to the 2020 Bed barely a month earlier.[2]

  On August 11, ReST provided a Notice of Termination to Purple.███████████████

███████████████████████████████████████████████████

████████████████████████████████████████.

## B.   FEDERAL COURT LITIGATION.

  Despite the arbitration provision in the MSA, Purple filed this action on October 13, 2020.

(ECF 1, 7.)  After a TRO was granted directing ReST to cease using Purple's trademarks in its

advertising[3], ReST immediately went to great lengths to comply, removing all references to Purple

from ReST's website, social media campaigns, and other advertisements.  (ECF ECF 19, 63, 68,

91-2 ¶¶ 14-19.)

---

[2] ████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

[3] ReST did not dispute using Purple trademarks in its advertising, but defended on the ground that
because ReST still had ReST Beds with Purple Grids in its inventory, ReST had a right to use such
trademarks under the first sale doctrine.  The Arbitrator ultimately agreed that ReST had an implied license
to market the Purple Grids while it was selling that product, but that such sales had stopped by the end of
September 2020.  (Interim Award, Ex. 49, ¶ 146.)

On December 23, 2020, however, the day before Christmas Eve, Purple filed a motion asking the Defendants to be held in contempt for supposedly violating the TRO.[4]  (ECF 77.)  At a hearing on January 6, 2021, the Court stated that it was forming "deep concerns about whether Purple has been operating in good faith in this case."  (Ex. 31 at 10.)  Noting Purple's filings on the eve of holidays, the Court stated that "I am concerned about the timing of the motions.  I am concerned about the overall scheme and time line of this dispute, and I'm concerned about the burden that it has placed on the defendants and their counsel.  I'm concerned about the tone and tact in some respects taken by Purple."  (*Id.* at 10-11.)  The Court described Purple's contempt motion as "extraordinary.  It is extraordinary."  (*Id.* at 11.)  The Court also concluded that Purple had been attempting to use "broad language that it supplied to the Court to obtain in its temporary restraining order … as a basis for this Court to sanction a party for violation of patent claims that have not been pled or not before the Court for trade dress injuries under the Lanham Act, neither of which are pled, neither of which Purple has attempted to establish with any specificity."  (*Id.*)  The Court denied the motion for contempt.

On January 19, 2021, Defendants moved to compel arbitration.  (ECF 109-111.)  The Court granted the motion on August 31, 2021.  (ECF 190.)

---

[4] Purple had sought to have Defendants held in contempt for supposedly continuing to use Purple's trademarks in certain Google ads.  But Defendants' investigation revealed that <u>Purple</u> had actually run the ads at issue (before the August MSA termination) and never turned them off.  (ECF 91-2 ¶¶ 21-26; ECF 91-1 ¶¶ 12-19.) Purple also sought a contempt sanction for supposedly infringing Purple patents, but Purple had not even filed a claim for patent infringement.

C.     **ARBITRATION.**

1.     **The Parties Agree to Apply Utah Law to All Substantive Matters in the Arbitration.**

The case proceeded to arbitration, with Purple filing claims and Defendants filing counterclaims.  (Ex. 32, 33.)  As mentioned before, the MSA had provided that it would be construed and governed by Utah law.  During arbitration, the parties immediately confirmed this and went further, agreeing that Utah law would apply to <u>all</u> substantive matters in the arbitration.  On December 14, 2021, in advance of the preliminary hearing conference, the parties emailed their joint Proposed Scheduling Order.  (Ex. 34.)  In that proposed order, the parties jointly agreed that "the Federal arbitration statute/act will apply in the Arbitration and ***Utah law will be applied substantively to the arbitration***."  (*Id.* ¶ 1 (emphasis added).)

On January 19, 2022, after the preliminary hearing conference, Procedural Order 1 was issued, which included the following directive:

> **By agreement of the Parties** and Order of the Arbitrator, the following is now in effect:
>
> 1.  **Applicable Law**: The Federal arbitration statute/act will apply in the Arbitration and Utah law will be applied substantively to the arbitration.
>
> 2.  **Arbitration Procedures and Place of Arbitration**: Arbitration procedures will be governed by the AAA Rules and the procedural orders and other directions issued by the Arbitrator. The place and legal seat of the arbitration is the area of Lehi, Utah.

(Proc. Order 1, Ex. 35, at 1 (emphasis added).)  As will be shown below, both parties knew that by agreeing that Utah law would apply "substantively to the arbitration," and that only "arbitration procedures" would be governed by the AAA Rules, the standard American Rule would apply to

- 7 -

attorney fees and costs, that is, fees and costs would only be awardable as authorized by contract[5] or statute.

### 2.  Discovery and Motion Practice.

For the next fifteen months or so, the case proceeded through discovery and motion practice.  Defendants were required to file motions to compel Purple to produce documents pertaining to Purple's ███████████ and due diligence and to force Purple to produce a 30(b)(6) witness.  (Ex. 36-38.)

On April 24, 2023, Purple filed four proposed summary judgment motions.  (Ex. 39.)  The combined filings totaled over 120 pages, plus exhibits.  Defendants were forced to respond to each of the proposed motions.[6]  The Arbitrator refused to grant Purple leave to actually file the motions because Purple had not established that any of the four motions were likely to succeed.[7]  (Ex. 40.)

### 3.  The March 3 Email and Sanctions Imposed on Defendants.

One of the documents Defendants produced and relied in opposition to one of the proposed summary judgment motions purported to be an email dated March 3, 2020, from Robert Golden to Joe Megibow, confirming the terms the parties had verbally agreed on for Purple to supply Purple Grids to ReST for two years.  (*See generally* Procedural Order 25, Ex. 41.)  On May 12,

---

[5] Obviously, fees would also be allowed if provided by the parties' contract.  But the MSA contains no attorney fee provision, and Purple has never claimed that the MSA provided for prevailing party fees and costs.

[6] One of Purple's summary judgment motions sought dismissal of Defendants' counterclaims on the ground that Defendants' 30(b)(6) witness supposedly could not testify about Defendants' damages in sufficient detail.  But two months earlier, when Defendants had asked Purple to designate a 30(b)(6) witness to testify about damages, *Purple refused on the ground that damages were not properly the subject of 30(b)(6) testimony*.

[7] To be sure, Purple also succeeded on motions to compel against Defendants, and Defendants filed unsuccessful motions as well.  Defendants are not presenting these facts to point fingers, but rather to show one reason that the attorney fee award was improper, in that it requires <u>Defendants</u> to pay the attorney fees Purple incurred for these motions.

Purple presented a report from a forensic expert concluding that the March 3 Email was a forgery. Purple subsequently moved for sanctions against Defendants.

In response, Defendants stated that they would not contest the expert's conclusion that the document was a forgery. Defendants voluntarily withdrew their claim for breach of the purported supply agreement. Defendants also agreed that sanctions would be appropriate to compensate Purple for any consequences Purple had suffered in as a result of the production or use of the March 3 Email. But Purple sought <u>terminating</u> sanctions as well: a finding of liability on Purple's claims and dismissal of Defendants' counterclaims.

Defendants argued that terminating sanctions were inappropriate, primarily on the ground that the March 3 Email, while egregious, pertained only to the claim for breach of the verbal supply agreement. The Arbitrator agreed that the March 3 email did not affect the merits of the remaining claims and counterclaims and declined to award terminating sanctions.[8]

### 4.     The Rob Wallace Report and Testimony.

Among Purple's claims was one for trade dress infringement, asserting that even after ReST modified its website in response to the TRO, ReST website continued to infringe on Purple's trade dress. To support this claim, Purple submitted an expert report from Rob C. Wallace. (Ex. 43.) Mr. Wallace had conducted two consumer surveys and concluded that (i) a purple-colored grid has secondary meaning and is associated with the Purple company, and (ii) ReST's post-TRO

---

[8] Defendants were ultimately ordered to compensate Purple for all fees and costs incurred in connection with the March 3 Email, including those incurred for the proposed summary judgment motion addressing the supply agreement, those incurred for the forensic expert, and those incurred in pursuit of the Motion for Sanctions. Pursuant to the Procedural Order 25, Defendants paid Purple $58,362. Defendants do not contest this ruling and do not contest Purple's arguments regarding the legitimacy of the purported March 3 Email. Defendants do maintain, however, that any additional sanction would be inappropriate and give Purple an improper windfall.

website created a likelihood of confusion as to the affiliation of ReST's goods with Purple. These surveys were ridiculously flawed, however, presenting a mix of images to participants that no consumer would ever see. Defendants moved to preclude the testimony, and while the Arbitrator allowed it, he concluded that Mr. Wallace's surveys and testimony were unreliable and non-persuasive and specifically excluded $44,000 in costs Purple paid to Mr. Wallace from Purple's cost award.[9]

### 5.   Pre-Hearing Filings.



_____

[9] The Arbitrator did not, however, reduce Purple's fee award by any of the fees Purple incurred in connection with Mr. Wallace.

[10] In its opening statement at the hearing, Purple asserted that the evidence would show

Purple concluded by saying, "The foregoing amounts do not include costs, attorney fees, and punitive damages which Purple expects to recover **under 15 U.S.C. § 1117(a) and or Utah Code § 78B-5-825(1).**"[11]  (*Id.* at 17 (emphasis added).)

While Purple cited the Lanham Act and the Utah bad faith statute as sources for attorney fees and costs, Purple did not cite the MSA or Rule 47 of the AAA Commercial Rules.

Defendants' pre-hearing filing acknowledged that ████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

█████████████████████████████████████████████████████

██████████████████████████████████

After reviewing Purple's Prehearing Brief, Purple was directed to file a clarifying "Confirmation of Claims."  (Ex. 48.)  That filing explained that Purple was seeking attorney fees under Purple's ninth cause of action (Utah Deceptive Trade Practices Act) and under the "exceptional case" provision of the Lanham Act.  (*Id.* at 10.)  Purple concluded, "Finally, to the extent not awarded on other grounds, Purple reserves the right to seek recovery of its fees under Utah's bad faith fee statute, Utah Code § 78B-5-825(1)."  (*Id.* at 11.)

---

[11] Utah Code § 78B-5-825(1) is the provision that allows a trial court to award attorney fees if it finds that an action or defense was without merit and was not brought or presented in good faith.

Once again, Purple did not indicate that it believed it would have a right to fees or costs as a prevailing party under Rule 47.

6.      **The Interim Award.**

The Arbitrator issued his Interim Award on December 18, 2023.  (Interim Award, Ex. 49.) As Defendants had conceded, the Arbitrator held that Defendants ReST and PatienTech were liable for $1.2 million for ███████████████████████████████████████. The Arbitrator denied Purple's claim for ██████████████████████████. The Arbitrator also denied Purple's claim for ████████████████████████. On the Lanham Act claims, the Arbitrator found ReST (but not PatienTech) liable for $662,000 in profits for trademark and trade dress infringement.

Thus, Purple received less than one-third of the amount Purple had sought.  Also, the Arbitrator rejected Purple's claims for enhanced damages under the Lanham Act, punitive damages, and personal liability on Mr. Golden.

The Arbitrator found Purple liable for breaching the Ad Spend Agreement, but awarded only minimal damages of $5,000.  The Arbitrator denied Defendants' remaining counterclaims.

7.      **Fee and Cost Proceedings.**

a.      **Purple's Submission on Fees and Costs.**

At the Arbitrator's direction, the parties filed their Fee and Cost Submissions on January 5, 2024.  Despite only receiving $1.9 million, one-third of the damages it had sought, Purple requested over $1.6 million in fees and costs.  (Ex. 50, 53.)

Purple's submission confirms that Purple knew, as Defendants did, that the parties had not agreed to prevailing party attorney fees:

First, Purple argued that it was entitled to $43,000 in taxable costs under Rule 54(d) of the Utah and Federal Rules of Civil Procedure.  (*Id.* at 3-4.)

Second, Purple spent two full pages arguing that it was entitled to $1.2 million in attorney fees under the Lanham Act because (i) the Lanham Act authorizes fees in an "exceptional" case, and (ii) the case was "exceptional."  (*Id.* at 4-6.)

Third, Purple added a four-sentence argument that Purple was also entitled to fees under "AAA Rule 49."  (*Id.* at 6.)

Fourth, Purple argued that it was entitled to over $337,000 in non-taxable costs under the Lanham Act, again because the case supposedly met the "exceptional case" standard.  (*Id.* at 6-7.) Purple did <u>not</u> request non-taxable costs under Rule 47.

Purple did not present invoices to support its request for fees.  Instead, Purple presented a spreadsheet showing the total hours each attorney billed each month, with only a brief description of the work performed.  (Ex. 53.)  Purple did not allocate its fees to any particular claim or any portion of any claim.  Thus, there is no way to determine what fees Purple incurred on its own claims versus Defendants' counterclaims, or successful versus unsuccessful claims, or successful versus unsuccessful motions.

### b.    Supplemental Submissions.

The parties submitted their f submissions on the evening of Friday, January 5.  By noon the next day, the Arbitrator had already decided Purple was entitled to fees under Rule 47 because fees were "a procedural matter.  (Ex. 52.)  The Arbitrator asked Purple to distinguish between fees incurred before arbitration (*i.e.*, while in federal court) and those incurred for the arbitration itself.

The Arbitrator also invited Purple to file a brief argument to establish a basis for recovering fees incurred before the arbitration began.

Remarkably, the Arbitrator even invited Purple to seek <u>additional</u> costs for the arbitration, because the amount Purple had sought "appears to be less than the amount billed by AAA." Purple took full advantage of this opportunity, submitting a revised cost request that included $77,500 in arbitration costs Purple had not included in its first submission. (*Compare* Ex. 53 and 54.)

Even then, Purple *still* did not assert a right to non-taxable costs under Rule 47.

The Arbitrator allowed Defendants to submit a three-page response to Purple's supplemental submission. (Ex. 55.) Defendants pointed out that the parties had agreed that "Utah law will be applied substantively to the arbitration," and attorney fees were a substantive matter, not procedural.

Defendants also specifically requested an evidentiary hearing. Defendants pointed out that Purple's claim for fees should be treated like any other seven-figure claim. Defendants asked that Purple submit more detail on its fees sufficient to show what work was done on what portions of the case. And Defendants asked for an opportunity to cross-examine Purple's witnesses on the issues of whether costs and fees were truly reasonable and necessary.

The Arbitrator responded by email, indicating that while he would allow an hour of oral argument by Zoom, he was "not inclined to hold an evidentiary hearing." (Ex. 56.) The Arbitrator also allowed the parties to submit additional legal authorities, stating that he was "particularly interested in any legal authorities that address whether [Rule 47] confer[s] discretion on the arbitrator to award fees and costs … even if the governing law of the contract does not allow such

an award." (*Id.*)  In their responsive filing, Defendants submitted eighteen cases, from Utah and elsewhere, holding that attorney fees were "substantive" in a number of contexts.

### c.   Final Award.

The Arbitrator issued his Final Award on March 8.  (Ex. 58.)  The Arbitrator awarded Purple every dollar of attorney fees Purple claimed to have incurred in connection with the arbitration, with no reduction for fees Purple incurred for Purple's numerous unsuccessful claims or unsuccessful motions, or the fees Purple incurred in connection with Mr. Wallace's survey, report, and testimony.  The Arbitrator held that ReST and PatienTech were jointly and severally liable for this entire amount, without any allocation or reduction for fees incurred in connection with any particular claim or defendant.[12]

The Arbitrator also awarded Purple all of its taxable *and non-taxable* costs as the prevailing party under Rule 47 (despite Purple's failure to request them), with one exception: The Arbitrator struck the $43,622.54 Purple had paid Mr. Wallace, finding that Mr. Wallace's work "was defective for many reasons and of little probative value."

The Final Award held PatienTech and ReST jointly liable to Purple for $2,623,263.58, with ReST being solely liable for an additional $664,482.

Defendants now ask the Court to vacate the portions of the Final Award granting attorney fees and untaxable costs to Purple and awarding Purple damages for trade dress infringement.

---

[12] Once again, the Arbitrator had denied Purple's Lanham Act claims against PatienTech and Robert Golden individually.

## **ARGUMENT**

I.   **THE COURT SHOULD VACATE, MODIFY, AND/OR CORRECT THE AWARD TO THE EXTENT IT GRANTS ATTORNEY FEES AND NON-TAXABLE COSTS TO PURPLE.**

In the Final Award, the Arbitrator determined that Defendants were jointly and severally liable for attorney fees and non-taxable costs under Rule 47 of the AAA Commercial Arbitration Rules.  The parties expressly agreed, however that the AAA Rules only applied to "arbitration procedures."  Otherwise, "Utah law will apply substantively to the arbitration."  Attorney fees are substantive, not procedural.  Further, the Arbitrator improperly denied Defendants' request for an evidentiary hearing regarding Purple's attorney fee claim.   While hearings are not normally conducted for attorney fees, they were a minimum requirement of due process in this matter because Purple did not submit invoices or other detailed summaries or descriptions of its work.

This portion of the award should therefore be vacated and/or stricken under 9 U.S.C. §§ 10(a)(2), (3), and (4) and 11(b).

### A.   **The Arbitrator Exceeded His Powers and Ruled on a Matter Not Submitted in Awarding Attorney Fees.**

Under Section 11(b) of the Arbitration Act, an award may be corrected or modified where "the arbitrators have awarded on a matter not submitted to them, unless it is a matter not affecting the merits of the decision upon the matter submitted."  9 U.S.C. § 11(b).  Similarly, an award may be vacated "where the arbitrators exceeded their powers."  9 U.S.C. § 10(a)(4).  "In deciding a motion brought under 9 U.S.C.A. §11(b), the Court must decide whether the matter upon which the arbitrators awarded was submitted to them, i.e., placed before them for adjudication under circumstances which afforded the parties adequate notice."  *Sociedad Armadora Aristomenis Panama, S. A. v. Tri-Coast S. S. Co.*, 184 F. Supp. 738, 742 (S.D.N.Y. 1960).   Vacatur under

Section 10(a)(4) is appropriate where the arbitrator "strayed from his delegated task of interpreting a contract." *MEMC II v. Cannon Storage Sys.*, 763 F. App'x 698, 702 (10th Cir. 2019).

It is axiomatic that arbitration is a "matter of contract." *Rent-A-Ctr v. Jackson*, 561 U.S. 63, 67 (2010). Indeed, the very purpose of the Federal Arbitration Act is to give effect to parties' agreements to arbitrate. 9 U.S.C.A. § 2; *AT&T Mobility v. Concepcion*, 563 U.S. 333, 336 (2011). In arbitration, unlike the judicial system, the parties decide for themselves what issues will be arbitrated and what will not, and what standard will govern that arbitration. While courts and judges have broad "judicial powers" granted by state and federal constitutions, arbitrators are private individuals whose powers derive from the parties' agreements.

Here, Purple and the Defendants entered into two agreements addressing arbitrability: the MSA and Procedural Order 1. In the MSA, the parties agreed that while disputes would be subject to arbitration, the parties' rights and obligations would be governed by Utah law. Under Utah law, "a party may recover attorney fees only when provided for by statute or contract—the so-called American Rule.' ... [when] attorney fees claims are grounded in the Agreement[,] [courts] must therefore carefully examine the language of that document; after all, under the American rule, attorney fees 'provided for by contract ... are allowed only *in strict accordance* with the terms of the contract.'" *Butler v. Mediaport Ent.*, 2022 UT App 37, ¶ 51, 508 P.3d 619, 633 (quotation simplified).

To the extent there was any doubt about the powers the arbitrator would have to decide attorney fees, those doubts were resolved when the parties agreed to the provisions of Procedural Order 1. As the order states on its face, its provisions were put into effect "by agreement of the

parties." And this agreement of the parties was clear:  Utah law would apply substantively to the arbitration; the AAA Rules would apply only to "arbitration procedures."

Thus, the scope of the parties' agreement as to arbitrability comes down to substance versus procedure, with substantive matters governed by Utah law, and procedures by the AAA Rules.

A party's right to attorney fees is a matter of substantive law.  *See Barberry Lane 8 v. Cottonwood Residential*, 2021 UT 15, 493 P.3d 580, ¶¶ 29-30 (entitlement to fees is a *substantive* right).  The *Barberry* Court explained, "'Substantive law is defined as the positive law which creates, defines and regulates the rights and duties of the parties and which may give rise to a cause for action.'  Conversely, 'procedural law merely pertains to and prescribes the practice and procedure or the legal machinery by which the substantive law is determined or made effective.'" *Id*. ¶ 24.  Under this reasoning, a fee and cost award is no more procedural than an award of damages: a judgment of [X] dollars has the same effect either way.

*Barberry* was not decided in a vacuum.  Indeed, the court included in its decision a survey of cases nationwide that similarly held, in a variety of contexts, that the matter of attorney fees is substantive in nature, not procedural.  *See, e.g., Midwest Med. Supply Co. v. Wingert*, 317 S.W.3d 530, 536 (Tex. App. 2010); *Miller v. Brightstar Int'l Corp.*, No. 3:20-CV-00313, 2022 WL 17070541, at *6 (M.D. Tenn. Nov. 17, 2022), report and recommendation adopted, No. 3:20-CV-00313, 2022 WL 17420371 (M.D. Tenn. Dec. 5, 2022); *PVI, Inc. v. Ratiopharm GmbH*, 253 F.3d 320, 329 (8th Cir. 2001); *Seattle-First Nat'l Bank v. Schriber*, 51 Or.App. 441, 625 P.2d 1370, 1373 (1981) (citing *Gorman v. Boyer*, 274 Or. 467, 547 P.2d 123 (1976)); *Man Indus. v. Midcontinent Express Pipeline*, 407 S.W.3d 342, 353–54 (Tex. App. 2013); *Boswell v. RFD-TV the Theater,* 498 S.W.3d 550, 560 (Tenn. App. 2016).  The *Barberry* court "[found] persuasive the

reasoning of courts holding that an award of contractual attorney fees is substantive in nature." *Barberry* at ¶ 29, 493 P.3d at 587.

In addition to *Barberry*, Defendants submitted seventeen other cases to the Arbitrator holding that attorney fees were a matter of substantive law.[13]  The Arbitrator acknowledged this authority but held that none of the cases applied because they dealt with issues such as choice of law, the *Erie* doctrine, or statutory retroactivity.  (Final Award, Ex. 58, ¶ 52.)

This reasoning is fallacious for two reasons.  First, all three areas of law deal with the fundamental question of what set of laws, rules, or governing principles apply to a given matter. That is exactly what Procedural Order 1 does.

Second, cases establishing that attorney fees are "substantive" are controlling because they show how to interpret the parties' agreement.  Like any other contract, an arbitration agreement must be interpreted to give effect to the intent of the parties.  The intent of the parties is determined in the first instance by looking at the words the parties used and determining what those words mean.  Once again, Plaintiff and Defendants adopted a distinction between "substance" and "procedure."  To determine what they intended, one must look at what those two words mean.  The cases cited by Defendants show exactly what those two words mean.

---

[13] *See Antaeus Enters. v. SD-Barn Real Estate*, 480 F. Supp. 2d 734, 745 (S.D.N.Y. 2007); *Boyd Rosene & Assocs. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999); *Delta Chemical Corp. v. Lynch*, 979 So,2d 579, 587 (La. App. 2008); *In re Silk*, 937 A.2d 900, 904 (N.H. 2007); *In re Volkswagen and Audi Warranty Extension Litig.*, 692 F.3d 4, 15 (1st Cir. 2012); *Menendez v. Progressive Exp Ins Co*, 35 So.3d 873, 878 (Fla. 2010); *Newman v. Select Specialty Hosp.-Ariz.*, 374 P.3d 433, 438 (Ariz. App. 2016); Northon v. Rule, 637 F.3d 937, 938 (9th Cir. 2011); *Steidley v. Community Newspaper Holdings*, 383 P.3d 780, 789 (Okla. Civ. App. 2016); *Vazquez-Filippetti v. Banco Popular de Puerto Rico*, 409 S. Supp. 2d 94, 98 (D.P.R. 2006); *Water Damage Express v. First Prot. Ins. Co.*, 336 So.3d 310, 313 (Fla. App. 2022); *Wellner v. Director of Revenue*, 16 S.W.3d 352, 355 (Mo. App. 2000).

Moreover, any doubt about what the parties intended by their adoption of Procedural Order 1 is immediately dispelled when one looks at the parties' conduct after the Order was adopted. *See, e.g.*, *Lincoln Electric Co. v. St. Paul Fire & Marine Ins. Co.*, 210 F.3d 672, 686 (6th Cir. 2000) (post-agreement conduct provides compelling evidence of parties' contractual intent).[14] Purple's filings both before and after the hearing leave no doubt that Purple understood that the parties had not authorized the Arbitrator to award fees or non-taxable costs under Rule 47 to the prevailing party. Purple's filings show that Purple was seeking attorney fees under the Lanham Act and Utah's bad faith statute. (Ex. 45, 48, 50.) Purple's attorneys are highly skilled and thorough. If they believed they had a right to prevailing party attorney fees on all claims, their argument would not have focused on the "exceptional case" argument under the Lanham Act."

It is also telling that Purple never even asked for non-taxable costs under Rule 47, only under the Lanham Act. In short, Purple's own filings confirm that they considered attorney fees and costs to be substantive.

An Arbitrator's authority is limited by the boundaries set forth by the parties. If parties to a dispute do not grant an Arbitrator the authority to apply the AAA Rules to attorney fees, and he does it anyway, he has necessarily exceeded his authority and ruled on a matter that was not submitted to him.

---

[14] See also McNeil Eng'g & Land Surveying v. Bennett, 2011 UT App 423, 268 P.3d 854, 860; North Silo Resources v. Deselms, 518 P.3d 1074, 1085 (Wyo. 2022); and Westgate Ford Truck Sales v. Ford Motor Co., 25 N.E.3d 410, 416 (Ohio App. 2014)

**B.      The Fee and Cost Award Shows a Manifest Disregard for the Law and Evident Bias.**

An arbitration award will be vacated when it is based on the arbitrator's "manifest disregard for the law." *ARW Exploration Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) "Requiring more than error or misunderstanding of the law, a finding of manifest disregard means the record will show the arbitrators knew the law and explicitly disregarded it." *Bowen v. Amoco Pipeline Co.*, 254 F.3d 925, 932 (10th Cir. 2001) (internal citation omitted).  Similarly, evident partiality is grounds for vacatur under Section 10(a)(2).

That is exactly what happened here.  The Arbitrator *admitted* in the Final Award that the cases cited by Defendants "hold that entitlement to fees is a substantive right" in Utah and throughout the country.  (Final Award, Ex. 58, ¶ 52.)  But despite being "fully aware of the existence of a clearly defined governing legal principle, [he] refused to apply it, in effect, ignoring it." *Horton, Inc. v. NSK Corp.*, 544 F. Supp. 2d 817, 824 (D. Minn. 2008).  This is exactly the sort of scenario that "evidences a manifest disregard for the law" such that "a court can vacate an arbitration award." *Id.*

The portion of the Final Award addressing this issue is a prime example of a result in search of reasoning.  (Final Award ¶¶ 50-57.)  A good example is the Arbitrator's argument that if the parties did not want Rule 47 to apply, they would have or should have excluded it explicitly.  (*Id.* ¶ 53.)  The question is not whether any <u>particular</u> AAA rule applies.  Rather, the question is what the AAA Rules apply <u>to</u>.  The parties made clear that the AAA Rules apply only to "arbitration procedures."

The Arbitrator knew that.  He manifested that he knew it.  Then he awarded fees and costs under the AAA Rules anyway.

**C.      The Arbitrator Refused to Hear Pertinent Evidence.**

Under 9 U.S.C.A. § 10(a)(3), the Court may vacate an award "where the arbitrator[] …

refus[ed] to hear evidence pertinent and material to the controversy."  This rule will come into play

when such refusal amounts to a "denial of the fundamental fairness of the adjudication."  *E.g.*,

*Areca v. Oppenheimer*, 960 F.Supp. 62 (S.D.N.Y. 1997).  Purple sought over $1.6 million in fees

without submitting declarations, invoices, or other detailed descriptions of the work an opportunity

for cross-examination in order to examine whether and to what extent the fees and costs were

reasonable and reasonably incurred.  The Arbitrator refused.

Defendants recognize that evidentiary hearings are not normally conducted for attorney

fees.  But in those situations, fees are presented through sworn declarations supported by invoices

or other detail sufficient to enable the trier of fact to assess the fee request.  Where a party prevails

on some claims but not others, or where a right to fees only covers certain claims, the party's

evidence must give the trier of fact a basis to determine whether and to what extent the fees were

incurred in connection with successful claims on which fees are recoverable.  *See, e.g.. Foote v.

Clark*, 962 P.2d 52, 55-56 (Utah 1998); *Marcantel v. Michael & Sonja Saltman Fam. Tr.*, 2:16-

CV-250 DBP, 2020 WL 1434477, at *4 (D. Utah Mar. 24, 2020), *on reconsideration in part sub

nom. Marcantel v. Michael*, No. 2:16-CV-250 DBP, 2020 WL 1975238 (D. Utah Apr. 24, 2020).

By allowing Purple to submit brief monthly summaries instead of invoices, and by not

requiring affidavits, and by not allowing cross-examination or an evidentiary hearing, the

Arbitrator deprived Defendants of a fair opportunity to challenge Purple's request for fees and costs.[15] This was improper and provides independent grounds to vacate under Section 10(a)(3).

## II.   THE COURT SHOULD VACATE THE AWARD TO PURPLE FOR TRADE DRESS INFRINGEMENT BETWEEN DECEMBER 14, 2020 AND AUGUST 2, 2021

Finally, the Court should vacate the portion of the Final Award granting Purple $662,000 in damages against ReST for alleged trade dress infringement.  As explained in Section I(B), an award should be vacated where the Arbitrator manifestly disregards the law or otherwise evidences partiality.  9 U.S.C. § 10(a)(2).

The Arbitrator found that ReST violated Purple's trade dress from December 14, 2020 and August 2, 2021 because one layer in a carousel of pictures on a product page several clicks removed from ReST's landing page contained an image of a gel grid that was purple in color.  For that, the Arbitrator awarded Purple *all of ReST's* profits during the *entire* eight-month period.  Given Purple's failure to prove the elements of a Trade Dress claim, the only explanation for this is that the Arbitrator allowed his personal feeling against Defendants to infect his judgment.

Purple never claimed that ReST's website contained Purple's name, logo, or trademark.  Nor did Purple claim that ReST's website featured an image of a Purple bed or other retail product Purple sells.  Rather, Purple's trade dress claim was based entirely on the appearance of a purple-colored grid in one layer in one image (out of nine rotating images) on one page – and not even

---

[15] The Arbitrator had clearly decided to give Purple whatever fees Purple asked for.  Indeed, the Arbitrator even prompted Purple to increase its fee and costs requests by tens of thousands of dollars.  This is clear evidence of bias.  The Arbitrator may have thought he had the power to do so in order to punish Defendants for producing and citing the March 3 Email.  In other words, the Arbitrator imposed a fine against Defendants, payable as a windfall to Purple.  As noted above, Defendants do not defend or justify their filing or use of the Email.  But there was no legal or equitable basis for using that filing as an excuse to award Purple hundreds of thousands of dollars in attorney fees that Purple clearly was not entitled to.

the landing page – of ReST's website[16]:



This graphic shows six layers of the "ReST Bed w/GelGrid," one of which is a grid in a purple color.  There is no evidence that would support a finding that the use of this image in this fashion infringed on any trade dress of Purple's.

To establish a claim for trade dress, a plaintiff must show that the defendant's use of the alleged trade dress creates a "a likelihood of confusion among consumers as to the source of the competing products."  *Gen. Motors Corp.* v. Urban Gorilla, 500 F.3d 1222, 1227 (10th Cir. 2007).  Purple's showing on this issue is so deficient that the Award must be vacated.

To show a likelihood of confusion, i.e., that reasonable, ordinary purchasers were likely to be confused about the source of the "ReST Bed w/ GelGrid" found on "restperformance.com".  Purple must show not merely that there is a possibility that a consumer could be confused about the source of the ReST Bed with GelGrid, but in fact that such confusion is "likely." *E.g.*, *Buca,*

---

[16] These are all still images from the web page, which can be seen at https://web.archive.org/web/20200626181549/https://restperformance.com.  Still images and a hyperlink are provided as Exhibits 59 and 60.

*Inc., v. Gambucci's*, 18 F. Supp. 2d 1193, 1211 (D. Kan. 1998.)  In a trade dress case, the confusion must result "'from the total image and impression created by the defendant's product or package on the eye and mind of an ordinary purchaser.'" *Sally Beauty Co. v. Beautyco*, 304 F.3d 964, 979 (10th Cir. 2002) (citing McCarthy on Trademarks § 8:15.  One must look at the whole picture, not merely individual pieces.  *E.g.*, *adidas America v. Payless Shoesource*, 546 F. Supp. 1029, 1053 (D. Ore. 2008) ("[W]hat is critical is the *overall* appearance of the mark as used in the marketplace, not a deconstructionist view of the different components of the marks.")

The Arbitrator manifestly disregarded these legal principles in determining that there was a likelihood of confusion based on the color of one part of one image in one rotating set of images on restperformance.com.

For the allegedly offending image to even enter into the "eye and mind" of ReST's shoppers, they would have had to visit ReST's own website (which only sold ReST's own beds) with the URL "restperformance.com" and navigate several "clicks" from the ReST homepage to the "ReST Bed w/ GelGrid" product page.[17]  All the while, the R|e|S|T® logo would be affixed to the top of the page.  After arriving on the product page, the shoppers would be exposed to the image carousel, with its nine automatically rotating graphics. If a shopper stopped to watch the carousel in its rotation, he/she would have seen the same R|e|S|T® logo patch – with its white letters on a dark purple field (not similar to Purple's color, and one which ReST undisputedly used for years) in no less than five of the nine images, including the allegedly offending one.

It strains credulity for the Arbitrator to rule that a user of the restperformance.com website,

---

[17] In the arbitration, Defendants submitted a .mov file demonstrating these steps.  Defendants are not sure how to "file" such a file as part of a motion, but will be happy to provide a copy to the Court and Purple.

shopping for a technologically advanced mattress costing thousands of dollars, would be "likely" to think that the ReST Bed w/GelGrid was manufactured or otherwise associated with Purple Innovations or Purple Mattresses.[18]  While we recognize that awards will be vacated on grounds of manifest disregard or partiality only in extreme circumstances, this is one of those circumstances.

## <u>CONCLUSION</u>

Defendants firmly believe that the entire Award is inappropriate and reflects a miscarriage of justice, but at the least, compelling grounds exist to vacate the portions of the Award granting Purple trade dress damages and attorney fees and untaxable costs.

DATED this 19th day of April, 2024

**ANDERSON & KARRENBERG**


*/s/ Stephen P. Horvat*
Stephen P. Horvat
Joseph W. Moxon
*Attorneys for Defendants Responsive*
*Surface Technology, LLC, PatienTech, LLC,*
*and Robert Golden*

---

[18] Indeed, Purple's decision to use the clearly flawed Likelihood of Confusion survey is compelling evidence that Purple knew it could not prove confusion.

## CERTIFICATION OF COMPLIANCE WITH WORD LIMIT

I, Stephen P. Horvat, certify that this Motion to Vacate, Modify, or Correct Arbitration Award contains 7,708 words and complies with DUCivR 7-1(a)(4) and the Order Granting Leave to File Overlength Memorandum.

±