IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURPLE INNOVATION, LLC,<br><br>        Plaintiff,<br><br>v.<br><br>RESPONSIVE SURFACE TECHNOLOGY, LLC; PATIENTECH, LLC; and ROBERT GOLDEN,<br><br>        Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs,<br><br>v.<br><br>PURPLE INNOVATION, LLC; GARY DICAMILLO; ADAM GRAY; JOSEPH MEGIBOW; TERRY PEARCE; TONY PEARCE; and JOHN DOE NOS. 1–4,<br><br>        Counterclaim Defendant and Third-Party Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00708-RJS-CMR<br><br>Chief Judge Robert J. Shelby<br><br>Magistrate Judge Cecilia M. Romero |

Now before court are three motions.  The first is Plaintiff Purple Innovation, LLC's Motion to Confirm Arbitration Award and Enter Judgment (Motion to Confirm) against Defendants Responsive Surface Technology, LLC (ReST), PatienTech, LLC, and Robert Golden.[1]  The second is Defendants' cross-Motion to Vacate, Modify, or Correct Arbitration Award (Motion to Vacate).[2]  The third is Plaintiff's Motion to Release Bond.[3]  For the reasons stated below, the court GRANTS Plaintiffs' Motion to Confirm and DENIES Defendants'

---

[1] Dkt. 203, *Purple Innovation, LLC's Motion to Confirm Arbitration Award and Enter Judgment* (*Motion to Confirm*).

[2] Dkt. 224, *Motion to Vacate, Modify, or Correct Arbitration Award* (*Motion to Vacate*).

[3] Dkt. 244, *Plaintiff's Motion to Release Bond* (*Motion to Release Bond*).

Motion to Vacate.  Furthermore, the court GRANTS Plaintiff's Motion to Release Bond.

## BACKGROUND

In January 2020, Plaintiff, ReST, and PatienTech entered into a Master Vendor Supply and Services Agreement (MSA).[4]  Section 12.11 of the MSA contained a dispute resolution provision requiring the parties to arbitrate "any controversy or claim arising out of or relating to [the MSA], or a breach thereof" via American Arbitration Association (AAA)-administered arbitration and permitted any court with jurisdiction over the dispute to enter "[j]udgment on the award rendered" in arbitration.[5]  In June 2020, the parties also entered into an Ad Spend Agreement.[6]

In October 2020, Plaintiff sued Defendants for various claims related to Defendants' alleged breach of the MSA and misuse of Plaintiff's intellectual property.[7]  Plaintiff also moved for a Temporary Restraining Order (TRO) and a Preliminary Injunction barring Defendants from claiming any relationship to Plaintiff or using Plaintiffs' intellectual property.[8]  The court found Plaintiff was substantially likely to succeed on the merits of its claims against Defendants for breach of contract and trademark infringement and granted both requests.[9]  Relatedly, the court ordered Plaintiff to post a $60,000.00 bond as a security for the TRO and Preliminary Injunction.[10]

---

[4] *See* Dkt. 203-1, *Master Vendor Supply and Services Agreement*.

[5] *Id.* § 12.11.

[6] *See* Dkt. 203-3, *Ad Spend Agreement*.

[7] *See* Dkt. 1, *Complaint and Demand for Jury Trial*.

[8] *See* Dkt. 16, *Motion for Temporary Restraining Order and Preliminary Injunction*.

[9] *See* Dkt. 63, *Temporary Restraining Order*; Dkt. 82, *Preliminary Injunction Order*.

[10] *See Temporary Restraining Order*; *Preliminary Injunction Order*; Dkt. 66, *Notice of Posting of Bond*.

In August 2021, Defendants moved to compel arbitration under the MSA's dispute resolution provision and the court granted Defendants' Motion, ordering the parties to submit to arbitration.[11]  Plaintiff in turn filed a Demand for Arbitration with the AAA,[12] and the arbitration proceeded to a ten-day merits hearing held July 31 to August 11, 2023.[13]  At the hearing, Plaintiff pursued claims for (1) breach of the MSA, (2) trademark infringement, (3) trade dress infringement (4) unfair competition, and (5) false advertising.[14]  Defendants pursued counterclaims for (1) breach of the Ad Spend Agreement, (2) unjust enrichment, (3) fraud, (4) negligent misrepresentation, (5) and promissory estoppel.[15]

On March 8, 2024, the presiding arbitrator issued a Final Award fully resolving the parties' claims and counterclaims.[16]  The Award held ReST and PatienTech jointly and severally liable to Plaintiff for breaching the MSA in the principal amount of $1,324,301.00, plus $1,298,962.58 in arbitration attorney fees and costs, for a total of $2,623,263.58, plus post-award interest of 5% per annum until paid in full.[17]  The Award also held ReST individually liable to Plaintiff for trademark and trade dress infringement in the principal amount of $664,482.00, plus post-award interest of 5% per annum until paid in full.[18]  However, the Award held Plaintiff liable to ReST for breaching the Ad Spend Agreement in the principle amount of $5,670.32, reducing ReST's net liability for trademark and trade dress infringement damages to

---

[11] *See* Dkt. 111, *Motion to Compel Arbitration and Stay Proceedings, Filed by Defendants Responsive Surface Technology, LLC, and PatienTech, LLC*; Dkt. 191, *Official Transcript of August 31, 2021 Oral Ruling Hearing* at 38:3–13.

[12] Dkt. 203-5, *Interim Award on Liability and Damages* (*Interim Award*) ¶¶ 10–14.

[13] *Id.* ¶ 33.

[14] *Id.* ¶ 32.

[15] *Id.* ¶ 31.

[16] *See* Dkt. 203-8, *Final Award*.

[17] *Id.* ¶ 90.

[18] *Id.* ¶ 91.

$658,811.68.[19]  The Award denied all other claims and counterclaims, including Plaintiff's claims against Robert Golden.[20]

On March 22, 2024, Plaintiff filed its Motion to Confirm the Final Award, asking the court to enter Judgment against Defendants consistent with the Award.[21]  On April 19, 2024, Defendants responded by filing their countervailing Motion to Vacate.[22]  The Motion to Vacate challenges the portions of the Final Award holding ReST and PatienTech jointly and severally liable for Plaintiff's arbitration attorney fees and costs and the portion of the Final Award holding ReST individually liable for trade dress infringement.[23]  Both Motions are fully briefed and ripe for review.[24]

More recently, on August 12, 2024, Plaintiff filed its Motion to Release Bond.[25]  Subject to DUCivR 7-1(a)(4)(D), the 14-day deadline for Defendants to respond has passed, and Defendants have not done so.  Accordingly, that Motion is also ripe for decision.

## ANALYSIS

The court begins its analysis of the pending Motions by jointly taking up the Motion to Confirm and Motion to Vacate.  Upon review of the Motions, the court concludes it must enter

---

[19] *Id.*

[20] *Id.* ¶ 92.

[21] *Motion to Confirm* at 6.

[22] *See Motion to Vacate.*

[23] *Id.* at 1; *see also* Dkt 223, *Opposition to Plaintiff's Motion to Confirm Arbitration Award and Enter Judgment* at 2–3.

[24] Dkt. 231, *Reply in Support of Motion to Confirm Arbitration Award*; Dkt. 233, *Response to Motion to Vacate, Modify or Correct Arbitration Award*; Dkt. 238, *Defendants' Reply in Support of Motion to Vacate, Modify, or Correct Arbitration Award.*  The court concludes a hearing is unnecessary and decides the Motions on the papers. *See* DUCivR 7-1(g).

[25] *See Motion to Release Bond.*

judgment consistent with the Final Award.  The court then takes up Plaintiff's unopposed Motion to Release Bond and concludes it should return Plaintiff's $60,000.00 bond.

**I.   The Court Will Enter Judgment Consistent With the Final Award.**

Pursuant to 9 U.S.C. § 9, a provision of the Federal Arbitration Act (FAA), "a court 'must' confirm an arbitration award 'unless' it is vacated, modified, or corrected 'as prescribed' in §§ 10 and 11.  Section 10 lists grounds for vacating an award, while § 11 names those for modifying or correcting one."[26]  This standard "carries no hint of flexibility"; it "tells courts to grant confirmation in all cases, except when one of the 'prescribed' exceptions applied."[27]  And it is the "heavy burden" of the party moving to vacate, modify, or correct an arbitration award to show that one of the exceptions applies.[28]

Consistent with § 9, the court will enter judgment consistent with the Final Award because the parties submitted to AAA-administered arbitration that resulted in an arbitration award, Plaintiff timely moved to confirm the award, and Defendants have not shown any grounds exist to vacate, modify, or correct the award.[29]  Although Defendants argue the court should vacate the Final Award under Sections 10(a)(2), 10(a)(3) and 10(a)(4), or correct the Award under Section 11(b),[30] none of their arguments are meritorious.

---

[26] *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008).

[27] *Id.* at 587; *see also Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1182 (10th Cir. 2000) ("[T]he standard for review of arbitral awards is among the narrowest known to law."); *San Juan Coal Co. v. Int'l Union of Operating Eng'rs, Local 953*, 672 F.3d 1198, 1201 (10th Cir. 2012) ("The Supreme Court has emphasized that vacating an arbitral award is warranted only in extraordinary circumstances.").

[28] *THI N.M. Vida Encantada, LLC v. Lovato*, 864 F.3d 1080, 1084 (10th Cir. 2017).

[29] *See Motion to Confirm* at 5–6.

[30] Dkt. 223 at 2–3; *Motion to Vacate* at 16.

## A.  Section 10(a)(2): Defendants Have Not Shown the Arbitrator Was Partial or Corrupt.

Section 10(a)(2) of the FAA provides the court may vacate an arbitration award "where there was evident partiality or corruption in the arbitrator[] . . . ."  Defendants argue the provision supports vacating the Final Award for two reasons.  First, Defendants argue this provision supports vacating the Award because the arbitrator evidenced a "manifest disregard" for the law in issuing the portion of the Award holding Defendants liable for Plaintiff's arbitration attorney fees and costs.[31]  Second, Defendants argue this provision supports vacating the Award because the arbitrator "allowed his personal feelings against Defendants to infect his judgment" in holding ReST liable to Plaintiff for an additional $658,811.68 in damages.[32]

Regarding Defendants' first argument, Defendants are correct that an award based on a "'manifest disregard' of the law is subject to reversal."[33]  But this standard requires "more than error or misunderstanding with respect to the law."[34]  It requires "willful inattentiveness to the governing law."[35]  And the portion of the Final Award in which the arbitrator discussed his decision to award Plaintiff's arbitration fees and costs demonstrates he paid keen attention to the governing law.  It explains that he invited the parties to submit briefing on the issue,[36] heard oral

---

[31] *Motion to Vacate* at 21.

[32] *Id.* at 23.

[33] *ARW Expl. Corp. v. Aguirre*, 45 F.3d 1455, 1463 (10th Cir. 1995) (quoting *Wilko v. Swan*, 346 U.S. 427, 436–37 (1953)).

[34] *Id.* (quoting *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Bobker*, 808 F.2s 930, 933 (2d. Cir. 1986)).

[35] *Id.* (quoting *Jenkins v. Prudential-Bache Sec. Inc.*, 847 F.2d 631, 634 (10th Cir. 1988)).

[36] *Final Award* ¶ 5.

argument on the issue,[37] determined the law gave him the authority to issue fees and costs,[38] and determined the facts and outcome of the case supported the amount of the Award.[39]

Regarding his authority to issue the Award, for example, the arbitrator specifically found that "the AAA Rules authorize an award of attorneys' fees 'if all parties have requested such an award or it is authorized by law or the parties' arbitration agreement.'"[40]  The arbitrator cited relevant legal authority applying this principle,[41] and noted that both Plaintiff and Defendants requested a fee award in their arbitration pleadings.[42]  The arbitrator also acknowledged and evaluated Defendants' argument that Rule 47 should not apply because the parties and the arbitrator agreed "Utah law [would] appl[y] substantively to the arbitration," and "entitlement to attorneys' fees is substantive rather than procedural in nature."[43]  With respect to this argument, the arbitrator considered Defendants' reasoning point-by-point, but concluded he had the power to award attorney fees because the parties' agreement regarding Utah substantive law did not

---

[37] *Id.* ¶ 6.

[38] *Id.* ¶¶ 36–58.

[39] *Id.* ¶¶ 59–84.

[40] *Id.* ¶ 44 (quoting AAA Rule 47(d)(ii)).

[41] *Id.* ¶¶ 45–46.

[42] *Id.* ¶¶ 47–48.

[43] *Id.* ¶ 50.

"negate[]" his authority under Rule 47 and, in any case, that a fees award was consistent with Utah law.[44]

Defendants' second argument suffers from similar issues.  As an initial matter, the portion of the Final Award holding ReST liable to Plaintiff for an additional $664,482.00 in damages reflects ReST's liability for trade dress and trademark infringement.[45]  However, Defendants' only contest the arbitrator's conclusion that ReST is liable to Plaintiff for trade dress infringement,[46] and trade dress infringement represents only $434,363.00 of ReST's additional liability.[47]

Looking past this problem, Defendants' summarily claim "the only explanation for" the trade dress portion of the Award "is that the [a]rbitrator allowed his personal feeling against Defendants to infect his judgment."[48]  But the arbitrator, in an Interim Award issued prior to the

---

[44] *Id.* ¶¶ 50–57.  Defendants rest their argument on their claim "[t]he Arbitrator *admitted* . . . that the cases cited by Defendants 'hold that entitlement to fees is a substantive right' in Utah and throughout the country."  *Motion to Vacate* at 21.  But Defendants plainly take the arbitrator's statement out of context.  The paragraph of the Final Award containing the quoted statement reads as follows:

> I reject Respondents' argument for several reasons.  First, this case does not involve the Erie doctrine, choice-of-law analysis, or retroactive application of a statute.  Rather, the issue is whether AAA Rule 47 authorizes a fee award when all parties have requested it.  The cases cited by Respondents do not involve arbitrations, AAA Rule 47, or any similar rule of an arbitral institution.  They do *hold that entitlement to fees is a substantive right*, but in contexts that are very different from this case.  Therefore, they shed no light on the critical issue of whether AAA Rule 47 authorizes a fee award when all parties have requested it.  In contrast, Purple has cited numerous cases that hold that AAA Rule 47 authorizes a fee award when all parties have requested it.

*Final Award* ¶ 52 (emphasis added).  Reviewing the arbitrator's statement in context, Defendants' argument presents an injudicious oversimplification of the arbitrator's legal analysis.

[45] *Final Award* at 91.

[46] *Motion to Vacate* at 23.

[47] *Final Award* ¶ 85.  The Final Award held ReST liable for $230,119.00 in trademark damages and $434,363.00 in trade dress damages, offset by Plaintiff's liability for $5,670.32 in breach of contract damages.  *Id.*

[48] *Motion to Vacate* at 23.

8

Final Award, extensively documented a legal and factual basis for his decision to hold ReST liable for trade dress infringement.[49]

More specifically, Defendants contend the arbitrator "manifestly disregarded" caselaw requiring Plaintiff to show "reasonable, ordinary purchasers were likely to be confused" by ReST's use of Plaintiff's trade dress.[50]  But the Interim Award explicitly considered whether Plaintiff "presented sufficient . . . evidence of likely confusion," and citing particular evidence in the record, the arbitrator concluded Plaintiff did.[51]  While Defendants' might disagree with the arbitrator's reasoning, it is not the court's role to question the factual or legal basis of the arbitrator's decision.[52]  And Defendants offer no affirmative evidence the arbitrator was biased, partial, or corrupt.[53]

### B.  Section 10(a)(3): Defendants Have Not Shown the Arbitrator Is Guilty of Misconduct or Misbehavior Prejudicing the Rights of the Parties.

Section 10(a)(3) of the FAA provides the court may vacate an arbitration award "where the arbitrator[] [was] guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced."  Defendants argue the

---

[49] *Interim Award* ¶¶ 185–227.

[50] *Motion to Vacate* at 25.

[51] *Id.* ¶¶ 207–217.

[52] *ARW Expl. Corp.*, 45 F.3d at 1463; *see also Com. Refrigeration, Inc. v. Layton Constr. Co., Inc.*, 319 F.Supp.2d 1267, 1269 (D. Utah 2004) ("Bearing in mind that the parties to binding arbitration have contracted to use arbitration rather than litigation as a means of resolving disputes, and that arbitrators are generally selected for their expertise in a particular area, courts accord maximum deference to an arbitrator's decision.  This deference is given to findings of fact: errors in the arbitrator's findings of fact do not merit reversal.  It is also given to legal conclusions: an arbitrator's erroneous interpretations or applications of law are not reversible." (internal citations, quotation marks, and alternations omitted)).

[53] To the contrary, the arbitrator's ultimate decision to deny much of Plaintiffs' requested relief suggests the arbitrator exercised balanced decisionmaking.  *See, e.g.*, *Final Award* ¶ 85 (denying Plaintiff's "claim for return of its initial payment of $4 million, minus the value of services and goods received" and denying Plaintiff's claims for trademark and trade dress infringement against PatienTech and Golden); *id* ¶ 89 (denying Purple's request for attorney fees and costs related to its litigation activity in his court).

court should vacate the Award subject to this provision because the arbitrator relied on "brief monthly summaries instead of invoices," without "requiring affidavits" or "allowing cross-examination or an evidentiary hearing," in issuing the portion of the Final Award holding Defendants liable for Plaintiff's arbitration attorney fees and costs.[54]  Defendants' allege this procedure denied them "a fair opportunity to challenge Purple's request for fees and costs."[55]

The court is unconvinced.  As Plaintiff's Opposition to Defendants' Motion to Vacate points out, Defendants cite no legal authority in support of its position that the arbitrator's procedure for determining the correct amount of Plaintiff's arbitration fees and costs justifies vacating the Final Award.[56]  Defendants cite *Foote v. Clark*, a Utah Supreme Court opinion, for the principle that a "party seeking fees must allocate its fee request according to its underlying claims," and imply that Plaintiff's "brief monthly summaries" failed to do so.[57]  But even assuming *Foote* applies to the present analysis and condemns the arbitrator's procedure, Defendants do not explain how the faulty procedure prejudiced them.  Specifically, Defendants do not identify which, if any, of the arbitration fees and costs subject to the Final Award the arbitrator wrongly ordered them to pay.

## C.  Section 10(a)(4): Defendants Have Not Shown the Arbitrator Exceeded His Powers or Failed to Issue a Mutual, Final, and Definite Award.

Section 10(a)(4) of the FAA provides the court may vacate an arbitration award "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."  Defendants argue the court

---

[54] *Motion to Vacate* at 22–23.

[55] *Id.* at 23.  *See also id.* at 16 ("While hearings are not normally conducted for attorney fees, they were a minimum requirement of due process in this matter because Purple did not submit invoices or other detail summaries or descriptions of its work.").

[56] Dkt. 233 at 13.

[57] *Motion to Vacate* at 22–23.

should vacate the Award subject to this provision because the arbitrator lacked the authority to issue Plaintiff its arbitration attorney fees and costs.[58]

When assessing the scope of an arbitrator's authority, a "strong presumption requir[es] all doubts concerning whether a matter is within the arbitrators' powers to be resolved in favor of arbitrability."[59]  "Thus, in considering whether [an] arbitrator exceeded his powers, [courts] consider one question: whether the arbitrator arguably interpreted the parties' contract, regardless of whether that interpretation was correct."[60]  When an "arbitrator 'stray[s] from his delegated task of interpreting a contract,' vacatur under § 10(a)(4) is appropriate.  If, however, [an] arbitrator's decision 'has *any* contractual basis, it should not be overturned . . . .'"[61]

Here, Defendants' argument is again uncompelling.  There is ample evidence the arbitrator was at least arguably construing and applying the parties' agreements when he ordered Defendants to pay Plaintiff's arbitration costs and fees.  As previewed in Section I.A, the arbitrator considered and rejected Defendants' argument that the parties' agreement to apply Utah law to substantive elements of the arbitration negated his authority to award Plaintiff its arbitration attorney fees and costs under AAA Rule 47.[62]  First, the arbitrator reasoned the parties' parallel agreement to apply the AAA Rules to "arbitration procedures" reasonably

---

[58] *Id.* at 16–20.

[59] *Hollern v. Wachovia Secs., Inc.*, 458 F.3d 1169, 1174 (10th Cir. 1999).

[60] *THI N.M. Vida Encantada, LLC*, 864 F.3d at 1084.

[61] *MEMC II v. Cannon Storage Sys.*, 763 F. App'x 698, 702 (10th Cir. 2019) (quoting *THI N.M. Vida Encantada, LLC*, 864 F.3d at 1088).  *See also Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 572 (2013) ("All we say is that convincing a court of an arbitrator's error—even his grave error—is not enough.  So long as the arbitrator was 'arguably construing' the contract . . . a court may not correct his mistakes under § 10(a)(4)."); *Hollern*, 458 F.3d at 1172 ("Errors in an arbitration panel's factual findings, or its interpretation and application of the law, do not justify vacating an award."); *Int'l Bhd. of Elec. Workers, Local Union No. 611, AFL-CIO v. Pub. Serv. Co. N.M.*, 980 F.2d 616, 618 (10th Cir. 1992) ("[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," even "serious error does not suffice to overturn his decision.").

[62] *See Final Award* ¶¶ 50–57.

encompassed their agreement to apply the AAA Rules to the issue of arbitration attorney fees.[63]
Second, the arbitrator determined the parties' agreement to the MSA's arbitration provision
effectively "incorporated" the AAA Rules into the MSA.[64]  Whether or not these conclusions are
correct, they make clear the arbitrator's decision "had at least some foundation in the text of the
controlling agreements."[65]

Notably, Defendants seem to accept this point, describing in their argument how the
arbitrator "acknowledged [countervailing] authority but held that none of [it] applied . . . ."[66]
Defendants simply take issue with how the arbitrator interpreted the countervailing authority
and, in turn, the parties' agreements.[67]  Still, Defendants' discontent is not enough to warrant
vacating the Final Award.  Defendants must demonstrate the arbitrator "dispens[ed] his own
brand of . . . justice," and they have failed to do so.[68]

## D.  Section 11(b): Defendants Have Not Shown the Arbitrator Awarded Upon a Matter Not Submitted to Him.

Section 11(b) of the FAA provides the court may modify or correct an arbitration award
"[w]here the arbitrator[] ha[s] awarded upon a matter not submitted to them, unless it is a matter
not affecting the merits of the decision upon the matter submitted."  Defendants' argument in this
respect matches their argument under § 10(a)(4)—they assert the court should correct the portion

---

[63] *Id.* ¶ 53.

[64] *Id.* ¶ 56.

[65] *MEMC II*, 763 F. App'x at 703 (quoting *San Juan Coal Co.*, 672 F.3d at 1201).

[66] *Motion to Vacate* at 19.

[67] *Id.* at 19–20.

[68] *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *Steelworks v. Ent. Wheel & Car Corp.* 363 U.S. 593, 597 (1960)).  Though the court need not evaluate whether the arbitrator's decision to award Plaintiff its arbitration costs and fees was legally correct, the court observes that the arbitrator's decision is generally consistent with relevant caselaw.  *See, e.g., Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1282 (10th Cir. 2017) (citing *C&L Enters., Inc. v. Citizen Band Potawatomi Indian Tribe of Okla.*, 532 U.S. 411, 415, 419 n.1 (2001)).

of the Final Award representing Plaintiff's arbitration fees and costs because the arbitrator lacked the authority to issue such relief.[69]  Accordingly, Defendants' argument fails for all the same reasons.

As indicated at the outset of this analysis, the court concludes none of the exceptions for vacating, modifying, or correcting an arbitration award apply to the Final Award and the court will enter judgment consistent with the Final Award.

## II.   The Court Will Release Plaintiff's $60,000 Bond.

Plaintiff's unopposed Motion to Release Bond seeks the return of the $60,000.00 Plaintiff paid to the Clerk of Court as a security for the court's December 2020 Temporary Restraining Order and Preliminary Injunction.[70]  Recall Defendants did not file an opposition to the Motion.

Federal Rule of Civil Procedure 65(c) provides a court may order a security in connection with a temporary restraining order or preliminary injunction "to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  Thus, the court must release the security when it determines no party was or will be wrongfully enjoined.

The court will order the Clerk of Court to release the bond because the Final Award confirmed the court did not wrongfully enjoin Defendants by issuing the Temporary Restraining Order or Preliminary Injunction.  The arbitrator ruled in Plaintiff's favor on significant issues underlying both orders—namely, Plaintiff's claim against Defendants for breach of the MSA and its claim against ReST for trademark infringement.  Relatedly, the arbitrator awarded more than $1.5 million in damages for Plaintiff's breach of contract and trademark infringement claims.[71]

---

[69] *Motion to Vacate* at 16–20.

[70] *Motion to Release Bond* at 2.

[71] *See Final Award* ¶ 85 (awarding Plaintiff $1,324,301.00 in damages for ReST and PatienTech's breach of contract and $230,119.00 in damages for ReST's trademark infringement).

Defendants have not challenged these portions of the Final Award and the deadline for them to do so has passed.[72]  As a result, there is no longer any need for the court to retain the security.

## CONCLUSION

For the forgoing reasons, the court GRANTS Plaintiff's Motion to Confirm[73] and DENIES Defendants' Motion to Vacate.[74]  Concurrently, the court GRANTS Plaintiff's Motion to Release Bond.[75]  The principal sum initially deposited was $60,000.00.  The payee to receive the disbursement is Purple Innovation, LLC, 123 E 200 N, Alpine, Utah, 84004.

SO ORDERED this 8th of October 2024.

BY THE COURT:

_____
ROBERT J. SHELBY
United States Chief District Judge

---

[72] The FAA requires a party to provide notice of a motion to vacate, modify, or correct an arbitration award to an opposing party within three months of the award.  *See* 9 U.S.C. § 12.  Accordingly, Defendants' deadline to challenge the March 8, 2024 Final Award was in June 2024.

[73] Dkt. 203.

[74] Dkt. 224.

[75] Dkt. 244.

14