Stephen P. Horvat (#6249)
Joseph W. Moxon (#17281)
**ANDERSON & KARRENBERG**
50 West Broadway, Suite 600
Salt Lake City, Utah 84101-2035
Telephone: (801) 534-1700
shorvat@aklawfirm.com
jmoxon@aklawfirm.com

*Attorneys for Defendants Responsive Surface*
*Technology, LLC, PatienTech, LLC and Robert Golden*

---

### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURPLE INNOVATION, LLC,<br><br>Plaintiff,<br><br>v.<br><br>RESPONSIVE SURFACE TECHNOLOGY, LLC; PATIENTECH, LLC; ROBERT GOLDEN; et al.<br><br>Defendants. | **MEMORANDUM OPPOSING MOTION FOR ATTORNEY FEES AND COSTS**<br><br><br>**Case No. 2:20-cv-00708-RJS-CMR**<br>**Judge Robert J. Shelby**<br>**Magistrate Cecilia M. Romero** |

Defendants Responsive Surface Technology, LLC, PatienTech, LLC; and Robert Golden hereby oppose Plaintiff's Motion for Attorney Fees and Costs (ECF 254) to the extent the Motion (i) seeks attorney fees or non-taxable costs, or (ii) seeks taxable costs against Robert Golden individually.  Plaintiff is not entitled to attorney fees or non-taxable costs under the Lanham Act because Purple's Lanham Act claim was not even remotely exceptional.  And Purple is not entitled to taxable costs against Golden because Golden prevailed on Purple's claims against him.

1

## BACKGROUND

A.    **Purple's Lanham Act claims.**

1. Purple's Lanham Act claims sought infringement damages for two distinct time periods: August 11 through December 13, 2020 (the "pre-TRO period), when ReST advertised a "ReST Bed with Purple Grid" on its website; and December 14, 2020, through August 3, 2021 (the "post-TRO period"), when ReST's website did not mention Purple or the Purple Grid at all but had – as part of one image on one screen on one page of its site – a purple-colored grid among a stack of other components. Purple claimed trademark and trade dress infringement for the pre-TRO period, but only trade dress infringement for the post-TRO period. (*See generally* Interim Award on Liability and Damages, Ex. 2 to Pl.'s Motion.)

2. Purple sought disgorgement of profits and enhanced damages on both aspects of its Lanham Act claims. (*Id.*)

3. Purple sought an award against ReST and PatienTech and sought to have Robert Golden found personally liable. (*Id.* at 36, ¶ 142.)

4. While the Arbitrator did make an award of profit disgorgement against ReST, the Arbitrator found that ReST had infringed only for part of the pre-TRO period (and the post-TRO period). (*Id.* at 38, ¶ 150.)

5. The Arbitrator rejected Purple's Lanham Act claim against PatienTech. (*Id.* at 36, ¶ 142.)

6. The Arbitrator rejected Purple's entire Lanham Act claim against Robert Golden individually. (*Id.* at 45, ¶¶ 181-84; *Id.* at 54, ¶¶ 218-220.)

7. The Arbitrator rejected Purple's claims for enhanced damages. (*Id.* at 44-45, ¶¶ 177-180; *Id.* at 55, ¶ 223.)

8.  At the hearing, Purple's primary evidence of "likelihood of confusion" was a survey performed by expert witness Rob Wallace, which the Arbitrator found to be "not properly conducted." (*Id.* at 52, ¶ 207.)

**B.  ReST's alleged litigation misconduct.**

9.  In the Arbitration, ReST and PatienTech pursued a number of counterclaims. (*Id.* at 56-62, *see also* Procedural Order 25, Ex. 3 to Motion, at 2, ¶ 4.)

10. One of these claims was for breach of a claimed "verbal supply agreement" that ReST claimed obligated Purple to supply grids to ReST for two years. (Proc. Order 25 at 2, ¶ 4.)

11. The "March 3 Email" that the Arbitrator found to be fraudulent was related only to that claim, and not to any other claim in the lawsuit, including Purple's Lanham Act claims. (*Id.* at 8, ¶¶ 24-30.)

**C.  Robert Golden prevailed against Purple**

12. The Arbitrator did not enter any award against Robert Golden. (Final Award, Ex. 4 to Motion, at 21-24, ¶¶ 85-92.)

13. In fact, Mr. Golden was ultimately awarded judgment against Purple. (Judgment, ECF 248, ¶ 3.)

## ARGUMENT

**I.  Purple is not entitled to attorney fees or nontaxable costs for its Lanham Act claims because this was not an "exceptional case."**

   **A.  Purple has not shown that the Lanham Act claims were exceptional.**

Under the Lanham Act, attorney fees may only be awarded "in exceptional cases." 15 U.S.C. § 1117(a). To meet this standard, the plaintiff must show that the defendant's infringement was "malicious, fraudulent, deliberate, or willful." *E.g.*, *Fifty-Six Hope Road Music v. A.V.E.L.A.*, 915 F. Supp. 2d 1179, 1185 (D. Nev. 2013). Moreover, even where a case is determined to be

3

"exceptional," fees are discretionary: a court should consider "the nature and extent of relief obtained, the unlawfulness of each defendant's conduct, whether the relevant area of law is unclear, whether infringement or willfulness was a close question, whether each defendant intended to deceive or confuse the public, and whether the plaintiff suffered actual damage." *Id.* at 1186; *see also Octane Fitness v. ICON Health & Fitness*, 572 U.S. 545, 554 n.6 (2014) (courts should consider "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence.")  In *Fifty-Six Hope Road*, the court refused to award attorney fees against most of the groups of defendants, even though the jury found willful infringement.[1] *Id.*

Here, there is no basis to find that Purple's trademark and trade dress claims against ReST were "exceptional."  While the Arbitrator did award profits for Purple on both aspects of its claims, Purple has not cited anything in the Arbitrator's ruling – or anywhere else – suggesting that ReST's infringement meets the standard required for a fee award.  Notably, the Arbitrator declined to award enhanced damages on Purple's IP claims.  Moreover, regarding the trademark portion of the claim, the Arbitrator found that ReST did have an implied license to use the Purple trademarks through a significant portion of the pre-TRO period.  Regarding the trade dress claim, that was clearly a "close call," and there was not even the slightest bit of evidence suggesting that ReST actually created a likelihood of confusion among the buying public by having a single image of a purple-colored grid as one part of a stack of layers on one image in a set of rotating images on one sub-page on ReST's website that prominently featured the R|E|S|T logo on nearly every page.

---

[1] The court awarded fees against one group of defendants that had acted in bad faith and engaged in litigation misconduct regarding the Lanham Act claim.

4

### B. The use of the March 3 Email does not justify an award of fees or costs under the Lanham Act.

Purple does not even claim that there was anything particularly exceptional about the Lanham Act claim. Instead, relying on *Vitamins Online* and *Derma Pen*, Purple argues that fees and nontaxable costs are available under the Act because of supposed litigation misconduct. But even if Purple's allegations were accurate[2], the alleged misconduct had nothing to do with Purple's Lanham Act claims (or ReST's defenses to the Lanham Act claims).

Without minimizing the significance of the event, the March 3 Email was only relevant for ReST's claim for breach of the Verbal Supply Agreement. The March 3 Email had nothing to do with the Lanham Act claims, which were based on the contents of ReST's website and promotions from August 2020 to August 2021. There is absolutely no basis for Purple to claim that the Lanham Act claims were "exceptional" in any way.[3]

### C. Any award would have to be strictly limited.

Even if the Court were to determine that fees and nontaxable costs were awardable under the Lanham Act, any fee award would have to be strictly limited. The IP claims played only a minor part in the parties' litigation. Purple sought over $4.7 million in damages on its MSA claims, but only $636,000 in damages on its IP claims. (*See* Interim Award, Ex. 2 to Motion.) Purple also sought enhanced and punitive damages on the IP claims, of course, but those claims were rejected. The IP claims only accounted for a small portion of the overall case, and the parts on which Purple succeeded were only a portion of the overall IP work.

---

[2] Defendants do not contest Purple's allegations of misconduct regarding the March 3 Email. We context Purple's other allegations of misconduct and note that Purple's other allegations of alleged misconduct are unsupported.

[3] It is also worth noting that Purple based its post-TRO trade dress claim almost entirely on the testimony of Rob Wallace, which was based on a "Likelihood of Confusion Survey" that was so clearly tainted as to be useless. Purple presented this survey and testimony and required ReST to incur cost and expense in engaging a rebuttal expert.

### D. There is no basis for a fee or nontaxable cost award against PatienTech or Robert Golden.

The fee provision of the Lanham Act only allows fees to be awarded to "the prevailing party." 15 U.S.C. § 1117(a). But while Purple prevailed on its Lanham Act claims against ReST, Purple did not prevail on its Lanham Act claims against either PatienTech or Robert Golden individually. Accordingly, there cannot possibly be any basis under the Lanham Act to award attorney fees or nontaxable costs against either PatienTech or Mr. Golden.

## II. Purple is not entitled to taxable costs against Mr. Golden.

Purple did not prevail on any of its claims against Mr. Golden. Accordingly, there is no basis under Rule 54 to award even taxable costs against him.

## CONCLUSION

There was nothing exceptional about any aspect of Purple's claims under the Lanham Act. Accordingly, the Lanham Act does not give Purple a right to attorney fees or nontaxable costs. Moreover, even if fees and costs were available under the Act, they would only be available against ReST, not against PatienTech or Mr. Golden. Finally, because Purple did not prevail against Mr. Golden, Mr. Golden is not liable for taxable costs.

Dated this 5th day of November, 2024

ANDERSON & KARRENBERG

*/s/ Stephen P. Horvat*
Stephen P. Horvat
Joseph W. Moxon
*Attorneys for Defendants Responsive Surface Technology, LLC, PatienTech, LLC, and Robert Golden*