James E. Magleby (7247)
 magleby@mcpc.law
Edgar Cataxinos (7162)
 cataxinos@mcpc.law
Adam Alba (13128)
 alba@mcpc.law
Yevgen Kovalov (16297)
 kovalov@mcpc.law
**MAGLEBY CATAXINOS, PC**
141 W. Pierpont Avenue
Salt Lake City, Utah 84101-3605
Telephone: 801.359.9000

Attorneys for Plaintiff Purple Innovation, LLC

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **PURPLE INNOVATION, LLC,** <br><br> Claimant, <br><br> v. <br><br> **RESPONSIVE SURFACE TECHNOLOGY, LLC, PATIENTECH, LLC, and ROBERT GOLDEN,** <br><br> Defendants, Counterclaim Plaintiffs, and Third-Party Plaintiffs, <br><br> v. <br><br> **PURPLE INNOVATION, LLC, GARY DICAMILLO, ADAM GRAY, JOSEPH MEGIBOW, TERRY PEARCE, TONY PEARCE, and JOHN DOE NOS. 1-4,** <br><br> Counterclaim Defendant and Third-Party Defendants. | **REPLY IN SUPPORT OF MOTION FOR COSTS AND ATTORNEY FEES** <br><br><br><br><br><br><br><br><br><br> Civil No.: 2:20-cv-708 <br><br> Consolidated No. 2:20-cv-727 <br><br> Honorable Robert J. Shelby <br><br> Magistrate Judge Cecilia M. Romero |

Plaintiff Purple Innovation, LLC ("Claimant" or "Purple") through counsel MAGLEBY CATAXINOS, PC, submits this Reply in Support of Motion for Costs and Attorney Fees.

## INTRODUCTION

First, Defendants (collectively "ReST") do not dispute that Purple is entitled to taxable costs as against Responsive Surface Technology, LLC and PatienTech, LLC. Accordingly, Purple's costs of $2,1855.05, and the judgment should be augmented to reflect those costs. Second, contrary to ReST's arguments, there are several facts that make this an exceptional case under the Lanham Act for the award of fees, including the nature of ReST's infringement and its litigation conduct. For these reasons, and as described more fully below, attorney fees are proper under the Lanham Act.

## I.   THIS IS AN EXCEPTIONAL CASE UNDER THE LANHAM ACT

ReST first argues that Purple has not shown that this is an exceptional[1] case under the Lanham Act. This argument fails. This case is exceptional because of ReST's infringing conduct, and because of its litigation conduct. *Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1245 (10th Cir. 2021) (describing an "exceptional case" as one that "stands out from others with respect to the substantive strength of a

---

[1] The Arbitrator did not make a finding that the case was "exceptional" under the Lanham Act, but only because he found that the AAA Rules gave him authority to award Purple its fees. [*See* 2024-03-08 Final Award at 14 ("Because I find that the AAA Rules authorize an award of attorneys' fees, I find that it is not necessary to address Purple's alternative argument that it is entitled to a fee award because this is an 'exceptional case' under the Lanham Act. I express no view on whether this case is 'exceptional' … under the Lanham Act.")].

2

party's litigating position … or the unreasonable manner in which the case was litigated.") (cleaned up).  Each factor is addressed below.

### A. ReST's Infringing Conduct Makes This an Exceptional Case

ReST argues that Purple has not demonstrated that ReST's infringement meets the standard required for a fee award under the Lanham Act.  [Opposition at 4].  Not so.

Regarding Purple's trademark claim, the Arbitrator found that even though ReST considered the contractual relationship terminated in August of 2020, and even though ReST had ceased the sale of the "ReST + Purple Bed" in September of 2020, ReST nevertheless "continued to use Purple's trademarks on its website to promote the ReST + Purple Bed from October until December 13, 2020," the date of this Court's temporary restraining order.  [2023-12-15 Interim Award at 38].  Further, ReST continued to use Purple's trademarks in its promotional materials, including a Black Friday email blast that explicitly marketed a ReST+ Purple collaborative product, **even though ReST knew that negotiations with Purple for the grid had broken down**.  [*See id.* at 41].  The Arbitrator said this about ReST's "bait and switch" conduct:

> Given that ReST did not begin advertising its ReST Bed with ReST GelGrid on its website until mid-December 2020, it is reasonable to infer that all sales before that date resulted from customer orders for the ReST + Purple Bed that were switched to orders for the ReST Bed with ReST GelGrid. ReST has not disputed that this is the only logical explanation of how it could sell products that it was not even advertising.

[*Id.* at 40].

Courts have held that "bait-and-switch" conduct by an infringer supports the finding of an "exceptional case" under the Lanham Act.  *See Pennzoil-Quaker State Co. v. Smith*, 2008 WL 4107159, *34 (W.D. Penn. September 2, 2008) (holding that

defendant's "false advertising through a 'bait-and-switch' operation" supported a finding of exceptional circumstances to award fees); *see also Plan P2 Promotions v. Wright Brothers, Inc.*, No. 16-CV-2795, 2017 WL 1838943, *11 (S.D. Cal. May 8, 2017) (holding that allegations of a "bait and switch" advertising campaign is enough to allege an exceptional case under the Lanham Act at the pleading stage).

ReST's trade dress violations were also knowing and egregious. As the Arbitrator observed, ReST's Marketing Director testified that he "knew that the Purple bed had a purple-colored grid and used similar images to promote the ReST + Purple bed because '[i]t was the only thing that differentiated it from the other product we were trying to sell.' [2023-12-15 Interim Award at 50]. Further, ReST's General Manager "admitted that he asked a company that sources components from China **to identify the exact purple pantone that Purple used**, so that ReST could obtain an alternative gel grid **with the same purple pantone**." [*Id.* (emphasis added)].

Courts have found that conduct similar to this supports a finding of an "exceptional case." *See Jason Scott Collection, Inc. v. Trendily Furn., LLC.*, 68 F.4th 1203, 1224 (9th Cir. 2023) (affirming district court's award of fees for an "exceptional case" of trade dress infringement where the defendant made furniture that was nearly an "exact match" of the plaintiff's furniture in "look, color, size, and detail"); *see also Moroccanoil, Inc. v. Allstate Beauty Prod., Inc.*, 847 F.Supp.2d 1197, 1205 (C.D. Cal. 2012) (awarding attorney fees under Section 1117(a) where defendant made counterfeit products that were identical in size, shape, and color, among other things).

Here, ReST's infringement conduct meets the threshold for an "exceptional case" under Section 1117(a), and the Court should award Purple its fees incurred in the litigation before this Court

**B.     ReST's Litigation Conduct Makes This an Exceptional Case.**

Even apart from its infringement, ReST's litigation conduct makes this an exceptional case under the Lanham Act. ReST argues that its admitted litigation misconduct does not make this an exceptional case because that conduct "was only relevant for ReST's claim for breach of the Verbal Supply Agreement." [Opposition at 5]. Even assuming that is true, ReST's argument fails.

First, ReST does not offer any legal authority for this proposition. In fact, courts do not parse litigation conduct so finely when determining whether to award attorney fees under Section 1117(a). Rather, courts look to the "totality of the circumstances," including "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence". *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 n.6 (2014).

Second, misconduct associated with the Verbal Supply Agreement is not the only factor supporting a finding of an "exceptional case." When faced with substantial evidence of Purple's claims in late 2020, including through Purple's pre-litigation communications and Purple's early pleadings, ReST doubled down on its positions, and then responded to Purple's claims with counterclaims alleging an absurd $50,000,000 in damages. As a public company, Purple had obligations to report these ludicrous claims

5

and to shareholders, and it was only through years of effort and expense that Purple was able to whittle away at the alleged damages and ultimately defeat them. This is precisely the type of litigation conduct that makes an "exceptional case" under the Lanham Act. *See e.g.*, *John Bean Tech. Corp. v. BGSE Group, LLC*, No. 1:17-ccv-142, 2023 WL 6164322 (D. Utah, September 21, 2023) (concluding that case was exceptional under the Lanham Act due, in part, to defendants' determination to "contentiously litigate it to the very end," even in the face of clear evidence).

Thus, independent of its infringement conduct, ReST's litigation conduct makes this an "exceptional case" under the Lanham Act.

### C. Apportionment is Impossible

ReST argues that even if this is an exceptional case under the Lanham Act, an award of fees and costs would have to be limited because the claims under the Lanham Act "played only a minor part in the parties' litigation." [Opposition at 5]. This is not correct.

Though district courts may reduce a fee award in an exceptional case for work done litigating non-Lanham Act claims, apportionment is not required if the Lanham Act claims and the non-Lanham Act claims are so intertwined that it is impossible to differentiate between work done on claims. *See e.g.*, *AAMCO Transmissions, Inc. v. Graham*, 1990 WL 118050 (E.D. Pa. 1990) (holding that where the non-Lanham Act claims are so intermingled with the Lanham Act claims that "it is impossible to separate the work done on each claim," the court may refuse to deduct any amount from the total attorney's fee); *Yankee Candle Co., Inc. v. Bridgewater Candle Co., LLC*, 140 F. Supp.

6

2d 111 (D. Mass. 2001), judgment aff'd, 259 F.3d 25 (1st Cir. 2001) (holding that, other than a 10% deduction for a temporarily successful tortuous interference claim, the trade dress infringement claims centered around the same nucleus of alleged facts, making further segregation of federal from state claims impossible); *Contractual Obligation Productions, LLC v. AMC Networks, Inc.*, 546 F. Supp. 2d 120, 131–132 (S.D. N.Y. 2008) (awarding attorney fees to prevailing defendant on both Lanham Act and "substantially similar" and "closely intermingled" California state law claims.); *Nightingale Home Healthcare, Inc. v. Anodyne Therapy*, LLC, 626 F.3d 958, 966 (7th Cir. 2010) (awarding attorney fees to prevailing defendant on both Lanham Act and state law claims where the work performed in defending against both claims "could not be separated.").

      Here, Purple's claims were inextricably intertwined so as to make apportionment impossible.  For example, though Purple brought a claim for breach of contract, the Arbitrator found that any license for ReST to (temporarily) use ReST's trademarks and trade dress *arose from the contract* between the parties.  [*See* Interim Award at 37]. Further, the scope of ReST's "implied license" to use the intellectual property was deeply factual and heavily contested throughout the litigation, and that scope was based almost entirely on whether – and when – the contract between the parties had been terminated.  [*See id.*].  Thus, nearly every obligation and duty between the parties – if not all of them – has a nexus in the contract, and the parties' conduct as it relates to the contract was the basis for the litigation.  Segregating the work done as between all the claims that arose from that nexus would be impossible.

## CONCLUSION

For the foregoing reasons, Purple requests that the Court grant Purple's motion for attorney fees and nontaxable costs for the work done before this Court, and augment the judgment accordingly.

DATED this 26th day of November 2024.

**MAGLEBY CATAXINOS, PC**

/s/ Adam Alba
James E. Magleby
Adam Alba
Yevgen Kovalov

*Attorneys for Claimant Purple Innovation, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that I am employed by the law firm of MAGLEBY CATAXINOS & GREENWOOD, PC, 141 W. Pierpont Avenue, Salt Lake City, Utah 84101, and that a true and correct copy of the foregoing **REPLY IN SUPPORT OF MOTION FOR COSTS AND ATTORNEY FEES** was delivered to the following this 26th day of November 2024, by electronic mail to:

Stephen P. Horvat
  shorvat@aklawfirm.com
Jacob W. Nelson
  jnelson@aklawfirm.com
**ANDERSON & KARRENBERG**
50 W. Broadway, Suite 600
Salt Lake City, Utah 84101

Attorneys for Responsive Surface Technology, LLC; Patientech, LLC; and Robert Golden

/s/ H. Evan Gibson