IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| PURPLE INNOVATION, LLC,<br><br>    Plaintiff,<br><br>v.<br><br>RESPONSIVE SURFACE TECHNOLOGY, LLC; PATIENTECH, LLC; and ROBERT GOLDEN,<br><br>    Defendants. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:20-cv-00708-RJS<br><br>Chief Judge Robert J. Shelby |

Before the court is Plaintiff Purple Innovation, LLC's (Purple's) Motion for Costs and Attorney Fees against Defendants Responsive Surface Technology, LLC (ReST), PatienTech, LLC, and Robert Golden (collectively, Defendants).[1] Also before the court is Purple's Bill of Costs.[2] For the reasons stated below, the court GRANTS IN PART Purple's Motion and GRANTS Purple's requested Bill of Costs.

### BACKGROUND

In October 2020, Purple sued Defendants asserting claims related to their alleged breach of contract and misuse of Purple's intellectual property.[3] Thereafter, the parties submitted to a ten-day merits arbitration hearing in the summer of 2023.[4] At the hearing, Purple pursued breach

---

[1] Dkt. 252, *Purple's Motion for Costs and Attorney Fees* (*Motion*).

[2] Dkt. 251, *Bill of Costs*.

[3] *See* Dkt. 1, *Complaint and Demand for Jury Trial*.

[4] Dkt. 203-5, *Interim Award on Liability and Damages* (*Interim Award*) ¶ 33.

1

of contract claims and various claims under the Lanham Act.[5] Defendants pursued several counterclaims.[6]

On March 8, 2024, the arbitrator issued an Award resolving the parties' claims and counterclaims.[7] The arbitrator found ReST and PatienTech jointly and severally liable to Purple for breach of contract in the principal amount of $1,324,301.00, plus attorney fees and costs for the arbitration as well as post-award interest.[8] The arbitrator also found ReST individually liable on Purple's Lanham Act claims in the principal amount of $664,482.00, plus post-award interest.[9] However, the arbitrator also found Purple liable to ReST for breach of contract in the principal amount of $5,670.32, reducing ReST's net liability for the Lanham Act claims to $658,811.68.[10] The arbitrator denied all other claims and counterclaims, including Purple's claims against Robert Golden.[11] This court thereafter entered judgment consistent with the Award.[12]

The arbitrator declined to consider the issue of Purple's entitlement to attorney fees and costs for the pre-arbitration litigation conducted before this court.[13] Purple now moves to recover those attorney fees and costs.[14] The Motion is fully briefed and ripe for decision.[15]

---

[5] *Id.* ¶¶ 32, 133.

[6] *Id.* ¶ 31.

[7] *See* Dkt. 203-8, *Final Award*.

[8] *Id.* ¶ 89–90.

[9] *Id.* ¶ 91.

[10] *Id.* ¶¶ 33, 91.

[11] *Id.* ¶ 92.

[12] *See* Dkt. 248, *Judgment in a Civil Case*.

[13] *Final Award* ¶ 66.

[14] *Motion* at 2.

[15] *See* Dkt. 256, *Memorandum Opposing Motion for Attorney Fees and Costs* (*Opposition*); Dkt. 260, *Reply in Support of Motion for Costs and Attorney Fees* (*Reply*).

## ANALYSIS

Purple seeks recovery of (1) its attorney fees and non-taxable costs under the Lanham Act and (2) its taxable costs under Federal Rule of Civil Procedure 54.[16] The Court addresses each request in turn.

### I. Purple Is Entitled to Attorney Fees and Non-Taxable Costs from ReST Under the Lanham Act.

When considering a request for attorney fees, the court applies the American Rule, in which "[e]ach litigant pays his own attorney's fees, win or lose, unless a statute or contract provides otherwise."[17] The Lanham Act provides, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party."[18]

The court first considers whether Purple is the prevailing party under the Lanham Act. It then determines whether this case is "exceptional." Finally, the court concludes by analyzing the reasonableness of the requested fee award.

#### A. Prevailing Party

Under the Lanham Act, the "prevailing party" is the "party in whose favor judgment is rendered, regardless of the amount of damages awarded."[19] The court must have "awarded some relief" to the party such that the court "materially altered" the parties' legal relationship.[20]

---

[16] *Motion* at 2.

[17] *Baker Botts L.L.P. v. ASARCO LLC*, 576 U.S. 121, 126 (2015) (quoting *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 252–53 (2010)).

[18] 15 U.S.C. § 1117(a).

[19] *Xlear, Inc. v. Focus Nutrition, LLC*, 893 F.3d 1227, 1236 (10th Cir. 2018) (quoting *Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Hum. Res.*, 532 U.S. 598, 603 (2001)).

[20] *Id.* at 1236–37.

Defendants do not dispute Purple is the prevailing party under the Lanham Act with respect to ReST,[21] and the court agrees.[22] The court therefore concludes Purple is the prevailing party under the Lanham Act with respect to ReST and now turns to whether this case is "exceptional."

### B. Exceptionality

"District courts may determine whether a case is 'exceptional' in the case-by-case exercise of their discretion, considering the totality of the circumstances."[23] "[A]n 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated."[24] The court considers factors such as a case's lack of foundation, bad faith, and "the unusually vexatious and oppressive manner" in which the case is prosecuted.[25] Other relevant factors include "frivolousness, motivation, objective unreasonableness . . . and the need . . . to advance considerations of compensation and

---

[21] *Opposition* at 5.

[22] Defendants argue "[t]here is no basis for a fee or nontaxable cost award against PatienTech or Robert Golden" because "Purple did not prevail on its Lanham Act claims against either PatienTech or Robert Golden." *Opposition* at 6. Purple does not specifically address whether it is the prevailing party with respect to PatienTech on its Lanham Act claims, *see generally Motion*, nor does it contest Defendants' argument in reply, *see generally Reply*. The court therefore finds that, for the purpose of the Lanham Act analysis, Purple is the prevailing party only with respect to ReST. *See Tulsa Litho Co. v. Tile & Decorative Surfaces Mag. Pub., Inc.*, 69 F.3d 1041, 1043 (10th Cir. 1995) (explaining the court may award attorney fees and costs "on the basis of the separate judgments obtained, not the overall trial result").

[23] *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 572 U.S. 545, 554 (2014).

[24] *Id.* (alteration in original).

[25] *See King v. PA Consulting Grp., Inc.*, 485 F.3d 577, 584 (10th Cir. 2007) (quoting *Nat'l Ass'n of Pro. Baseball Leagues, Inc. v. Very Minor Leagues, Inc.*, 223 F.3d 1143, 1146 (10th Cir. 2000)); *see also Derma Pen, LLC v. 4EverYoung Ltd.*, 999 F.3d 1240, 1243–46 (10th Cir. 2021) (extending *Octane Fitness* to the Lanham Act context).

deterrence."[26]  Actions such as "willfully deceiving consumers, failing to produce pertinent evidence, and abusing the discovery process" also support an exceptionality finding.[27]

Purple argues this case is exceptional for six reasons: ReST (1) "engage[d] in discovery abuse"; (2) "engaged in fraud on the arbitration forum and parties by i) forging evidence; ii) giving false deposition testimony; and iii) successfully tricking the Arbitrator in giving ReST relief based upon the forged evidence and fraud"; (3) "destroyed or spoliated evidence, or manufactured evidence"; (4) "absurdly inflated" its claimed damages; (5) "engaged in egregious bait-and-switch conduct"; and (6) "copied Purple's trade dress (and then falsely claimed to the Arbitrator that it had not done so in the face of multiple, compelling internal emails indicating otherwise)."[28]

Defendants counter by arguing (1) "the Arbitrator declined to award enhanced damages on Purple's IP claims"; (2) "the Arbitrator found that ReST did have an implied license to use the Purple trademarks through a significant portion of the pre-TRO period"; (3) Purple provided no evidence "suggesting that ReST actually created a likelihood of confusion" when it displayed the Purple Grid on its website; and (4) the forged email "had nothing to do with the Lanham Act claims."[29]

First, the court considers the substantive strength of Purple's case.  The court agrees with Purple that Defendants' infringing conduct supports an exceptionality finding.  Purple provided substantial evidence that Defendants engaged in a so-called "bait-and-switch" operation, which

---

[26] *Octane Fitness*, 572 U.S. at 554 n.6 (quoting *Fogerty v. Fantasy, Inc.*, 510 U.S. 517, 534 n.19 (1994)).

[27] *Vitamins Online, Inc. v. HeartWise, Inc*, No. 2:13-cv-00982-DAK, 2020 WL 6581050, at *25 (D. Utah Nov. 10, 2020), *aff'd and remanded sub nom. Vitamins Online, Inc. v. Heartwise, Inc.*, 71 F.4th 1222 (10th Cir. 2023).

[28] *Motion* at 9–10.

[29] *Opposition* at 4–5.

5

supports an exceptionality finding.[30]  Defendants did not dispute before the arbitrator that customers bought the "ReST + Purple Bed," but Defendants substituted their orders with the "ReST Bed with ReST GelGrid."[31]  Defendants counter by arguing no evidence of actual confusion exists, and they posit the arbitrator found they had "implied license to use the Purple trademarks through a significant portion of the pre-TRO period."[32]  But these arguments are not availing because they do not refute the existence of the "bait-and-switch" conduct.  Defendants' argument that the arbitrator declined to award enhanced damages also does not move the needle in their favor because a denial of enhanced damages does not preclude an award of attorney fees.[33]  For these reasons, the court finds the substantive strength of Purple's case supports an exceptionality finding.

The court next considers Defendants' manner of litigation.  The court notes Defendants' litigation misconduct occurred before the arbitrator, not this court.  However, the exceptionality inquiry extends to the totality of the circumstances, and this court need not consider only conduct that occurred before it when making its finding.[34]  Here, Defendants produced and relied on a forged email to advance their case before the arbitrator.[35]  Such conduct—which Defendants do not dispute occurred[36]—is as the arbitrator described: "egregious and deliberate misconduct."[37]

---

[30] *See, e.g.*, *Pennzoil-Quaker State Co. v. Smith*, No. 2:05-cv-1505, 2008 WL 4107159, at *34 (W.D. Pa. Sept. 2, 2008).

[31] *Interim Award on Liability and Damages* ¶ 158.

[32] *Opposition* at 4.

[33] *See, e.g.*, *Vitamins Online*, 2020 WL 6581050, at *24–25.

[34] *See, e.g.*, *Dropbox, Inc. v. Thru Inc.*, No. 15-cv-01741, 2017 WL 914273, at *3 (N.D. Cal. Mar. 8, 2017), *aff'd*, 728 F. App'x 717 (9th Cir. 2018) (considering conduct that occurred prior to the litigation).

[35] Dkt. 254-3, *Order on Purple's Motion for Sanctions and Respondents' Motion to Withdraw Counterclaims and Allegations* (*Sanction Order*) ¶ 19.

[36] *Opposition* at 5 n.2.

[37] *Sanction Order* ¶ 19.

It evidences objective unreasonableness, which the court finds necessary to deter. Defendants' misconduct before the arbitrator therefore supports an exceptionality finding.[38]

The court also agrees with Purple that Defendants' initial demand of $50 million in damages was unreasonable,[39] an argument to which Defendants offer no response. The arbitrator discussed why Defendants' initial demand lacked a reasonable basis:

> [Defendants] provided no plausible basis for [their] exorbitant demand. Indeed, [Defendants] withdrew many of their claims and reduced their damage demand to about $8.4 million before the merits hearing in August 2023. Further, the merits hearing showed that most of Defendants' alleged damages were based on unsupported speculation by [Defendant] Robert Golden, the principal of both ReST and PatienTech. [Defendants] recovered only about $5,000 in damages, which is nearly 10,000 times less than their initial demand.[40]

Pursuing this damages sum without factual support is objectively unreasonable and likely increased the fees incurred by the parties.[41] The court therefore concludes Defendants' manner of litigation also supports a finding of exceptionality.

Considering the totality of the circumstances, the court finds this case is exceptional because of the substantive strength of Purple's case and Defendants' manner of litigation. The court will therefore award reasonable attorney fees to Purple under the Lanham Act.

### C. The Lodestar

Having concluded this case is exceptional, the court now considers whether Purple's requested fees are reasonable.

---

[38] Defendants' argument that the forged email "had nothing to do with the Lanham Act claims," *Opposition* at 5, is not persuasive because the court's obligation is to consider the totality of the circumstances.

[39] *Motion* at 9; *Final Award* ¶ 69.

[40] *Final Award* ¶ 69.

[41] *Id.*

District courts in the Tenth Circuit use the "lodestar" approach to determine the reasonableness of a request for attorney fees. To calculate the lodestar, the court multiplies 1) counsel's hours reasonably spent on the litigation by 2) a reasonable hourly rate.[42] Under this approach, the party requesting the fees—Purple—has the burden "to prove and establish the reasonableness of each dollar, each hour, above zero."[43] Purple must also provide evidence supporting the hours worked and the claimed rate.[44] Where this is found lacking, "the district court may reduce the award accordingly."[45]

### 1. Reasonable Hours

In assessing the reasonableness of counsel's claimed hours, the court considers whether counsel has provided adequate billing records, exercised billing judgment, and spent a reasonable number of hours on each task.[46]

The fee applicant must submit to the court "meticulous, contemporaneous time records that reveal, for each lawyer for whom fees are sought, all hours for which compensation is requested and how those hours were allotted to specific tasks."[47] Purple's counsel from Magleby & Cataxinos, PC, submitted detailed time records and billing statements covering the period from September 2020 to September 2024.[48] During this four-year period, counsel's records show they spent roughly nine hundred hours litigating this case—not including hours expended

---

[42] *See United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1233–34 (10th Cir. 2000); *Derma Pen, LLC v. 4EverYoung Ltd.*, No. 2:13-cv-00729-DN, 2019 WL 2929525, at *2 (D. Utah July 8, 2019), *aff'd*, 999 F.3d 1240 (10th Cir. 2021); *see also John Bean Techs. Corp. v. B GSE Grp., LLC*, No. 1:17-cv-00142-RJS, 2023 WL 6164322, at *17 (D. Utah Sept. 21, 2023).

[43] *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986).

[44] *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

[45] *Id.*

[46] *Webb v. Cnty. of Stanislaus*, No. 2:21-MC-00696-JNP-JCB, 2022 WL 1288857, at *4 (D. Utah Apr. 29, 2022).

[47] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1250 (10th Cir. 1998).

[48] *See* Dkt. 254-5, *Declaration of James Magleby in Support of Motion for Costs and Attorney Fees* (*Declaration*).

on the arbitration.⁴⁹  Additionally, attorney James E. Magleby provides further context on counsel's representation during the relevant period, supported by the aforementioned billing records.⁵⁰  Defendants do not raise any specific challenges to the billing entries or any general concerns with the records' adequacy.⁵¹  Accordingly, the court determines the hours are supported by adequate billing records.

Next, the court must ensure Purple's counsel properly "exercised billing judgment."⁵² "Billing judgment consists of winnowing the hours actually expended down to the hours reasonably expended."⁵³  In doing so, the prevailing party's counsel "should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary."⁵⁴

Purple does not address whether its counsel exercised billing judgment beyond claiming the hours counsel worked on the matter were reasonable given the case's complexity.⁵⁵  Counsel gives no indication of any reduction in hours billed, which leads the court to conclude counsel's reductions, if any, were likely minimal.  The court therefore finds Purple's counsel failed to exercise billing judgment.⁵⁶

---

⁴⁹ *Id.* at 104–11.

⁵⁰ *Id.* at 2–9.

⁵¹ *See generally Opposition*.

⁵² *Case*, 157 F.3d at 1250 (internal quotation marks omitted).

⁵³ *Id.*

⁵⁴ *Hensley*, 461 U.S. at 434.

⁵⁵ *Declaration* at 8–9.

⁵⁶ The court notes Defendants do not point to any records where counsel's billing judgment fell short and do not ask the court to examine Purple's fee request on this basis.

When, as here, "a party's attorneys do not exercise proper billing judgment, the court is obligated to exclude unreasonable hours from the fee request."[57] It approaches this inquiry "much as a senior partner in a private law firm would review the reports of subordinate attorneys when billing clients"[58]—that is, by removing "unnecessary, irrelevant, and duplicative hours."[59] Because the volume of records makes it "practically impossible" for the court to "identify and justify each disallowed hour,"[60] the court may use a "general reduction of hours" to arrive at a reasonable number.[61] Here, the court discerns two categories of potentially unnecessary or duplicative hours that must be excluded from Purple's attorney fees award.

First, the court reduces counsel's requested fee award to account for the unreasonable proportion of hours billed by senior attorneys at the firm. Of course, law firms are "at liberty to decide how to staff cases and utilize attorney time," but that alone "does not render the corresponding billing reasonable."[62] On the contrary, "there is work that may be ably done by an associate, such as research, compiling documents, and drafting motions, the value of which is not enhanced merely because it is done by a senior partner."[63] While there are certainly situations that call for the expertise of seasoned counsel, these tasks are a normal part of pre-trial litigation,

---

[57] *Utah Physicians for a Healthy Env't, Inc. v. Diesel Power Gear, LLC*, No. 2:17-cv-00032-RJS, 2021 WL 254268, at *11 (D. Utah Jan. 26, 2021) (citing *Malloy v. Monahan*, 73 F.3d 1012, 1018 (10th Cir. 1996)).

[58] *Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998) (quoting *Ramos v. Lamm,* 713 F.2d 546, 555 (10th Cir. 1983)).

[59] *Case*, 157 F.3d at 1250 (quoting *Carter v. Sedgwick County, Kan.,* 36 F.3d 952, 956 (10th Cir. 1994)).

[60] *Id.* (quoting *Mares,* 801 F.2d at 1202).

[61] *Id.*

[62] *Charbonneau v. Mortg. Lenders of Am. L.L.C.*, No. 2:18-cv-02062, 2021 WL 4772939, at *6 (D. Kan. Oct. 13, 2021).

[63] *Am. Petroleum Inst. v. EPA*, 72 F.3d 907, 916 (D.C. Cir. 1996).

where "associates [should] shoulder much of the work, under the active supervision of partners."[64]

Here, two senior attorneys, Mr. Magleby and Christine T. Greenwood, charged roughly half of the total hours billed to Purple,[65] performing a substantial amount of work that would have been reasonable for more junior attorneys to handle.[66] While "it is hard to argue with success,"[67] it would be unreasonable to burden Defendants with the full cost of Purple's top-heavy approach. The court therefore reduces counsel's bill by five percent.[68]

The court is also concerned that Purple's counsel may have inadvertently included some hours related to fees incurred at arbitration in the fee request. For example, Adam Alba billed for "drafting [the] statement of claims for arbitration,"[69] and Mr. Magleby billed for review of an "e-mail regarding scheduling conference, timing, location of arbitration."[70] While the court must remove duplicative hours from its fee award, very few of the billing entries mention arbitration. But to ensure Defendants are not forced to pay for the same work twice, the court therefore reduces counsel's bill by another five percent.[71]

---

[64] *Beastie Boys v. Monster Energy Co.*, 112 F. Supp. 3d 31, 51 (S.D.N.Y. 2015).

[65] *See Declaration* at 104–11.

[66] *See, e.g.*, *id.* at 26 (entry of Mr. Magleby billing 7.0 hours for "drafting and revisions to injunction motion, including document review, research"); *id.* at 25 (entry of Ms. Greenwood billing 8.1 hours for "research and document review in connection with [motion for temporary restraining order and preliminary injunction]").

[67] *See Flying J Inc. v. Comdata Network, Inc.*, No. 1:96-cv-066-BSJ, 2007 WL 3550342, at *20 (D. Utah Nov. 15, 2007), *aff'd*, 322 F. App'x 610 (10th Cir. 2009).

[68] *See Charbonneau*, 2021 WL 4772939, at *6 (collecting cases where courts reduced awards to account for "top-heavy" bills).

[69] *Declaration* at 75.

[70] *Id.* at 83.

[71] *See, e.g.*, *Let's Go Aero, Inc. v. Forcome Co.*, No. 23-cv-00045-RMR, 2024 WL 4068758, at *4 (D. Colo. Sept. 5, 2024) (reducing fee by ten percent for duplicative billing entries).

Having satisfied its obligation to exclude unreasonable hours from the fee request, the court next turns to the factors set forth in *Case v. Unified Sch. Dist. No. 233*[72] and *Johnson v. Georgia Highway Exp., Inc.*[73] to determine whether the resulting award is reasonable or warrants further adjustment.

First, the *Case* factors support the fees sought by Purple. While some elements of the case were straightforward, there were also many complex legal and factual disputes. The parties pursued a variety of methods to resolve the case, including litigation, arbitration, and mediation. Defendants maneuvered by bringing counterclaims for excessive damages and moving to compel arbitration, which required Purple's counsel to adapt their strategy and respond at a rapid tempo. The court also concludes the adjustments discussed above sufficiently guard against the potential for duplication of services.

The *Johnson* factors lend further support to the reasonableness of Purple's fee request. While the court need not discuss every *Johnson* factor,[74] several are particularly relevant here. As documented by counsel's meticulous billing records, counsel have spent extensive time and labor on the case over the last four years. And Purple's attorneys—many with decades of experience—proved to be capable advocates on behalf of their client; their attention to detail enabled them to uncover Defendants' misconduct at arbitration and achieve a high degree of

---

[72] 157 F.3d at 1250 (providing four factors to analyze in the reasonableness inquiry: (1) "the complexity of the case"; (2) "the number of reasonable strategies pursued"; (3) "the responses necessitated by the maneuvering of the other side"; and (4) "the potential duplication of services").

[73] 488 F.2d 714, 717–19 (5th Cir. 1974) (providing twelve factors to analyze in the reasonableness inquiry: (1) "the time and labor required"; (2) "the novelty and difficulty of the questions"; (3) "the skill requisite to perform the legal service properly"; (4) "the preclusion of other employment by the attorney due to acceptance of the case"; (5) "the customary fee"; (6) "whether the fee is fixed or contingent"; (7) "time limitations"; (8) "the amount involved and the results obtained"; (9) "the experience, reputation, and ability of the attorney"; (10) "the 'undesirability' of the case"; (11) "the nature and length of the professional relationship with the client"; and (12) "awards in similar cases"); *see also Gottlieb v. Barry*, 43 F.3d 474, 482 (10th Cir. 1994) (requiring district courts to consider the twelve *Johnson* factors in statutory fee cases).

[74] *See Uselton v. Com. Lovelace Motor Freight, Inc.*, 9 F.3d 849, 854 (10th Cir. 1993).

success on Purple's substantive claims, all for a discounted rate.[75] Having considered the rest of the *Johnson* factors, the court concludes these factors either support the reasonableness of Purple's requested fees or have little bearing on the present case. The court therefore declines to further reduce Purple's fee award.

### 2. Reasonable Rates

The court next reviews the reasonableness of Purple's claimed hourly rates. As the fee applicant, Purple has the burden to prove "the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation."[76] In contrast to the broad discretion generally afforded to district courts in assessing attorney fees, the Tenth Circuit cautions district courts not to "ignore[] the parties' market evidence and set[] an attorney's hourly rate using the rates [they] consistently grant[]."[77] Moreover, courts may not use their "own knowledge to establish the appropriate rate unless the evidence of prevailing market rates . . . is inadequate."[78]

In this case, counsel charged Purple between $195 and $585 per hour for its services.[79] The relevant community for determining the reasonableness of counsel's requested fee is the Salt Lake City, Utah legal market, where Purple filed suit.[80] In support of its fee request, counsel makes the conclusory argument that the firm charges reasonable, market rates "as demonstrated

---

[75] *See Declaration* at 8.

[76] *See Malloy*, 73 F.3d at 1018 (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)).

[77] *Case*, 157 F.3d at 1255 (internal quotation marks and citation omitted).

[78] *United Phosphorus*, 205 F.3d at 1234; *see also Case*, 157 F.3d at 1257 ("Only if the district court does not have before it adequate evidence of prevailing market rates may the court, in its discretion, use other relevant factors, including its own knowledge, to establish the rate.").

[79] *See Declaration* at 7.

[80] *See Ramos*, 713 F.2d at 555 (stating the relevant market consists of "the area in which the litigation occurs" or "the area in which the court sits").

by the fact that the firm's clients hire the firm and its lawyers for these rates, and they pay them," which begs the question.[81] That said, counsel represents his familiarity with the market rate because he has practiced in Utah for almost thirty years at various firms.[82] He also describes how Purple received a near thirty-percent discount as compared to the firm's new clients.[83] And counsel's fee request is commensurate with similar requests granted by this court in recent years.[84] In sum, the court finds Purple's counsel charged reasonable hourly rates based on the "skill, experience, and reputation" they brought to a complicated case.[85]

### 3. Calculation of the Lodestar

The court now returns to its calculation of the lodestar. Purple requests $354,875.93 in attorney fees.[86] For the reasons stated above, the court reduces Purple's requested attorney fees by ten percent ($35,487.59): five percent for allocating excessive hours to senior attorneys and five percent for including some billing records related to the arbitration in its request.

While the lodestar is presumptively reasonable,[87] a court may further reduce it when a plaintiff has achieved only limited success on his claims.[88] In the alternative, when a plaintiff's claims "'involve a common core of facts or will be based on related legal theories,' the fee

---

[81] *Declaration* at 7–8.

[82] *Id.* at 7.

[83] *Id.* at 8.

[84] *See Martin v. SGT, Inc.*, No. 2:19-cv-00289-RJS, 2023 WL 3585326, at *16 (D. Utah May 22, 2023) (approving rates between $190 and $695 per hour); *John Bean Techs. Corp.*, 2023 WL 6164322, at *25 (approving rates between $265.50 and $643.50 per hour).

[85] *Blum*, 465 U.S. at 895 n.11; *see also Case*, 157 F.3d at 1257 ("The quality of the lawyer's performance in the case should also be considered.").

[86] *Motion* at 6.

[87] *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010).

[88] *Jane L. v. Bangerter*, 61 F.3d 1505, 1511 (10th Cir. 1995) (quoting *Hensley*, 461 U.S. at 435–36).

applicant may claim all hours reasonably necessary to litigate those claims."[89] If a plaintiff has achieved a significant result in the case, the Tenth Circuit instructs that it is "legally incorrect" for the court to reduce a fee request based on a plaintiff's "partial success" on "interrelated claims."[90]

Defendants argue "any fee award would have to be strictly limited" because Purple only prevailed on its intellectual property claims, which "account for a small portion of the overall case."[91] Purple counters that "apportionment is impossible" because its claims are "inextricably intertwined."[92] While its breach of contract claim was unsuccessful, Purple argues "the Arbitrator found that any license for ReST to (temporarily) use ReST's trademarks and trade dress arose from the contract between the parties."[93] In addition, "the scope of ReST's 'implied license' to use the intellectual property . . . was based almost entirely on whether – and when – the contract between the parties had been terminated."[94]

The court finds Purple's successful and unsuccessful claims raised overlapping factual issues. For example, the issue of when the contract was terminated influenced the extent to which Purple could recover damages on its Lanham Act claims.[95] The court therefore concludes that reducing Purple's attorney fees based on its partial success would be "legally incorrect," and the court declines to do so.

---

[89] *Atlas Biologicals, Inc. v. Kutrubes*, No. 15-cv-00355, 2020 WL 3893566, at *4 (D. Colo. July 10, 2020) (quoting *Hensley*, 461 U.S. at 435 (1983)), *aff'd*, No. 19-1404, 2022 WL 2840484 (10th Cir. July 21, 2022).

[90] *Robinson*, 160 F.3d at 1284.

[91] *Opposition* at 5.

[92] *Motion* at 6–7 (cleaned up).

[93] *Id.* at 7 (emphasis omitted); *see also Interim Award* ¶ 146.

[94] *Motion* at 7.

[95] *See also Final Award* ¶ 68 (arbitrator's statement discussing how the claims overlapped).

Having reduced counsel's bill by ten percent ($35,487.59), the court calculates the lodestar is $319,388.34. Finding no reason to further reduce the fee award, the court therefore awards $319,388.34 in attorney fees to Purple from ReST.

### D. Non-Taxable Costs

In addition to attorney fees, Purple seeks its non-taxable costs of $47,160.83.[96] These expenses consist of overhead, expert fees, and payments to a discovery vendor.[97]

As part of an award of attorney fees, the court may award "incidental and necessary expenses incurred in furnishing effective and competent representation."[98] Courts have cautioned such awards should be limited to expenses that are: (1) necessary, (2) reasonable, and (3) those "typically and customarily charged by law firms to their clients."[99]

As before, Purple has the burden of demonstrating it is entitled to non-taxable costs.[100] The court finds it may award expert fees and payments to a discovery vendor because they are necessary, reasonable, and the type of expenses expected to be charged by a law firm to a client.[101] However, the court finds Purple has not met its burden with respect to its request for overhead fees.[102] Accordingly, the court reduces Purple's non-taxable cost award by $11,926.53. The court therefore awards Purple $35,234.30 in non-taxable costs from ReST.

---

[96] *Id.*

[97] *Declaration* at 111–12.

[98] *Storagecraft Tech. Corp. v. Kirby*, No. 2:08-cv-00921-DN, 2012 WL 4467520, at *1 (D. Utah Sept. 27, 2012) (quoting *Brown v. Gray*, 227 F.3d 1278, 1297 (10th Cir. 2000)); *see also Univ. of Kan. v. Sinks*, No. 06-2341, 2009 WL 3191707, at *14 n.73 (D. Kan. Sept. 28, 2009) (collecting cases granting non-taxable costs as part of an attorney fee award under the Lanham Act).

[99] *Storagecraft*, 2012 WL 4467520, at *6.

[100] *Klein-Becker USA, LLC v. Englert*, No. 2:06-cv-378-TS, 2011 WL 147893, at *12 (D. Utah Jan. 18, 2011) (quoting *In re Williams Sec. Litig.-WCG Subclass*, 558 F.3d 1144, 1148 (10th Cir. 2009)), *aff'd*, 711 F.3d 1153 (10th Cir. 2013), and *aff'd*, 711 F.3d 1153 (10th Cir. 2013).

[101] *See Dropbox*, 2017 WL 914273, at *6.

[102] *See Univ. of Kan.*, 2009 WL 3191707, at *14 (finding overhead is not a compensable non-taxable cost).

## II. Purple Is Entitled to Taxable Costs from ReST and PatienTech.

Purple also seeks the taxable costs set forth in its Bill of Costs.[103] When considering a request for costs, Federal Rule of Civil Procedure 54(d)(1) provides that "costs—other than attorney's fees—should be allowed to the prevailing party."[104] This Rule applies only to taxable costs, the "relatively minor, incidental expenses" listed in 28 U.S.C. § 1920.[105] "Usually the litigant in whose favor judgment is rendered is the prevailing party for purposes of Rule 54(d)(1)."[106]

Defendants do not contest awarding taxable costs to Purple except with respect to Defendant Golden.[107] The court finds Purple is the prevailing party under Rule 54 with respect to ReST because it entered judgment in favor of Purple.[108] The court also finds Purple is the prevailing party with respect to PatienTech under Rule 54 because the Award held PatienTech liable to Purple for breach of contract and the court entered judgment against PatienTech. Purple is therefore entitled to its taxable costs of $2,185.05 from ReST and PatienTech.

---

[103] *See Bill of Costs*.

[104] Fed. R. Civ. P. 54(d)(1).

[105] *Valdez v. Macdonald*, 66 F.4th 796, 837 (10th Cir. 2023).

[106] *Barber v. T.D. Williamson, Inc.*, 254 F.3d 1223, 1234 (cleaned up).

[107] Defendants contend an award of taxable costs against Defendant Golden is not appropriate because he is the prevailing party with respect to Purple's claims against him. *See Opposition* at 6. As evidence, Defendants note the Award did not hold Defendant Golden liable as an individual on any claim, and this court entered judgment in favor of Defendant Golden. *Id.* at 3, 6. Because the "taxing of costs pursuant to Rule 54(d)(1) rests in the sound judicial discretion of the trial court," *Phillip M. Adams & Assocs., L.L.C. v. Sony Elecs. Inc.*, No. 1:05-cv-64-TS, 2013 WL 5964288, at *1 (D. Utah Nov. 7, 2013) (quoting *Allison v. Bank One–Denver*, 289 F.3d 1223, 1248 (10th Cir. 2002)), and "the general rule [is] that attorney fees and costs in multi-party cases . . . are awarded to different parties on the basis of the separate judgments obtained, not the overall trial result," *Tulsa Litho Co.*, 69 F.3d at 1043, Defendant Golden is not liable on the court's award of taxable costs to Purple.

[108] *See supra* § I(A).

## CONCLUSION

For the reasons discussed above, the court GRANTS IN PART Purple's Motion for Costs and Attorney Fees[109] and GRANTS its requested Bill of Costs.[110] The court awards Purple (1) attorney fees of $319,388.34 from ReST; (2) non-taxable costs of $35,234.30 from ReST; and (3) taxable costs of $2,185.05 jointly and severally from ReST and PatienTech.

SO ORDERED this 24th day of February, 2025.

BY THE COURT:

ROBERT J. SHELBY
United States Chief District Judge

---

[109] Dkt. 252.

[110] Dkt. 251.